Martin R. Galbut, Esq. (#002943)
Michaile J. Berg, Esq. (#027166)
GALBUT & GALBUT, P.C.
2425 East Camelback Road, Suite 1020
Phoenix, Arizona 85016
Telephone: (602) 955-1455
Facsimile: (602) 955-1585
docket@galbutlaw.com

Kevin M. Downey, Esq. (D.C. Bar No. #438547)
Ellen E. Oberwetter, Esq. (D.C. Bar No. #480431)
Patrick J. Houlihan, Esq. (D.C. Bar No. #502396)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kdowney@wc.com
eoberwetter@wc.com
phoulihan@wc.com
Admitted *Pro Hac Vice*

*Attorneys for Greenberg Traurig, LLP*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Robert Facciola, *et al.*, | ) | Case No.: 2:10-cv-01025-MHM |
| | ) | |
| | ) | **GREENBERG TRAURIG LLP'S** |
| Plaintiffs, | ) | **REPLY MEMORANDUM IN** |
| | ) | **SUPPORT OF ITS MOTION TO** |
| vs. | ) | **DISMISS COMPLAINT PURSUANT** |
| | ) | **TO RULES 12(b)(6) AND 9(b)** |
| Greenberg Traurig LLP, *et al.*, | ) | |
| | ) | (Assigned to Hon. Mary H. Murguia) |
| Defendants. | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |

# **TABLE OF CONTENTS**

ARGUMENT ....................................................................................................................1

I.    The Radical Bunny Investors Have Not Pleaded Facts To Show Any Duty
      from GT to Them, and Their Claims Must Be Dismissed. .......................................2

II.   Plaintiffs Have Not Stated A Claim for Securities Fraud. ........................................4

      A.    *Grand v. Nacchio* Did Not Eliminate Section 44-2003(A)'s Restriction
            on Private Civil Liability, and Plaintiffs' Pleaded Facts Do Not Show
            Entitlement to Civil Liability Relief Against GT Under That Test. ..............5

      B.    Even if Plaintiffs Could Meet Section 44-2003(A), Count One Still
            Fails. .........................................................................................................9

      C.    Plaintiffs' Securities Fraud Claim Separately Fails Under Rule 9(b) and
            A.R.S. Section 44-2082's Heightened Pleading Standards. ......................11

            1.    Plaintiffs Have Failed To Plead False Statements. ...........................11

            2.    Plaintiffs Have Failed To Plead Scienter. ........................................12

III.  Plaintiffs Do Not Claim Control Person Liability Against GT. .............................14

IV.   Count Three Fails To State a Claim for Aiding and Abetting Securities Fraud. .....14

V.    Count Four Fails To State a Claim for Aiding and Abetting Breach of
      Fiduciary Duty. .....................................................................................................17

VI.   Plaintiffs' Negligent Misrepresentation Claim Should Be Dismissed. .................19

      A.    Plaintiffs Have Failed To Plead Facts Supporting the Existence of a
            Duty from GT to Them. ............................................................................19

      B.    Plaintiffs Have Failed To Plead Facts Showing Reliance. .........................21

VII.  Plaintiffs' Claim for Primary Violation of Arizona's Investment Management
      Act ("IMA") Fails. ...............................................................................................22

VIII. Plaintiffs' Count Seven Fails to State a Cognizable Cause of Action. ..................23

CONCLUSION ...............................................................................................................23

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

*Anixter v. Home-Stake Production Co.*, 77 F.3d 1215 (10th Cir. 1996)..............................7

4

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................13, 17, 21, 23

5

*Castaneda v. Saxon Mortg. Servs., Inc.*, 2010 WL 726903 (E.D.Cal. Feb. 26, 2010) ......17

6

*Central Bank of Denver, N.A v. First Interstate Bank of Denver*, 51 U.S. 164 (1994) .....23

7

*Clark v. Feder Semo & Bard, P.C.*, 634 F. Supp. 2d 99 (D.D.C. 2009)...........................19

8

*FDIC v. O'Melveny & Myers*, 969 F.2d 744 (9th Cir. 1992) ........................2, 8, 14, 20, 21

9

*Horne v. U.S. Dep't of Educ.*, 2009 WL 775432 (D. Ariz. Mar. 23, 2009).........................2

10

*In re American Continental Corp. /Lincoln Savings & Loan Securities Litigation*, 794
F. Supp. 1424 (D. Ariz. 1992) ........................................................................10, 18, 19

11

*ING Bank, FSB v. Mata*, 2009 WL 4672797 (D. Ariz. Dec. 3, 2009)...............................18

12

*Kovarik v. FoxHollow Techs., Inc. (In re FoxHollow Techs., Inc. Sec. Litig.*), 359 F.
App'x 802 (9th Cir. 2009)...............................................................................................12

13

14

*McGann v. Ernst & Young*, 95 F.3d 821 (9th Cir. 1996).................................................23

15

*Nat'l Retail Dev. Partners I v. Maness (In re Mortgages Ltd.)*, 405 B.R. 669 (Bankr.
D. Ariz. 2009).................................................................................................................17

16

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001)............................................................12

17

*Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194 (9th Cir. 1998)....................................2

18

*SEC v. Fehn*, 97 F.3d 1276 (9th Cir. 1996) ...............................................................10, 15

19

*SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980)..................................................................4

20

*Stransky v. Cummins Engine Co.*, 51 F.3d 1329 (7th Cir. 1995).....................................12

21

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998)..............................................7

22

*Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194 (11th Cir. 2001)..........................................7

23

**STATE CASES**

24

*Aaron v. Fromkin*, 994 P.2d 1039 (Ariz. Ct. App. 2000) .................................................10

25

*Barnes v. Vozack*, 550 P.2d 1070 (Ariz. 1976)...............................................................23

26

*Bullard v. Garvin*, 401 P.2d 417 (Ariz. Ct. App. 1965)..................................................22

27

*Capitol Indem. Corp. v. Fleming*, 58 P.3d 965 (Ariz. Ct. App. 2002)..............................19

28

*Chalpin v. Snyder*, 207 P.3d 666 (Ariz. Ct. App. 2008) ....................................20

*E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 79 P.3d 86 (Ariz. Ct. App. 2003) ........10

*Grand v. Nacchio*, 236 P.3d 398 (Ariz. 2010) ............................................ passim

*Johnson v. Nychyk*, 517 P.2d 1079 (Ariz. Ct. App. 1974) ..................................17

*Oster v. Kirschner*, 905 N.Y.S.2d 69 (App. Div. 2010) ................................8, 16

*Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 24 P.3d 593 (Ariz. 2001)...............20

*PLM Tax Certificate Program 1991-92, L.P. v. Schweikert*, 162 P.3d 1267 (Ariz. Ct. App. 2007) ..................................................................................21

*Siporin v. Carrington*, 23 P.3d 92 (Ariz Ct. App. 2001) ..................................10

*Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317 (Ariz. Ct. App. 1996)..............................................................................5, 6, 7, 8

*State v. Baumann*, 610 P.2d 38 (Ariz. 1980).......................................................10

*State v. Super. Court (Davis)*, 599 P.2d 777 (Ariz. 1979) ..........................15, 16

*Trimble v. American Savings Life Insurance Co.*, 733 P.2d 1131 (Ariz. Ct. App. 1986)..............................................................................10

*W. Techs., Inc. v. Sverdrup & Parcel, Inc.*, 739 P.2d 1318 (Ariz. Ct. App. 1986)............21

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12 (Ariz. 2002) ..............................................18

# OTHER AUTHORITIES

A.R.S. § 44-1991(A) (2010) ...............................................................5, 9, 10

A.R.S. § 44-2003(A) (2010) .................................................................... passim

A.R.S. § 44-2082 (2010) .................................................................5, 11, 13

ABA Comm. on Ethics & Prof. Responsibility, Conflicts of Interest in the Corporate Family Context, Formal Op. 95-390 (1995)...................................................3

Restatement (Third) of the Law Governing Lawyers § 51(3) (2000)..............................19

Robert J. Haft, 2A Venture Capital and Small Business Financing 14:141 (West 2010)..............................................................................21

1          <u>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

2          Plaintiffs contend that Greenberg Traurig, LLP ("GT"), former outside counsel to

3   Mortgages Ltd., should be liable to them for their real estate losses for failing to stop, report,

4   or disclose the allegedly unlawful conduct of its client, Mortgages Ltd., or Radical Bunny,

5   the two companies through which Plaintiffs made investments.  Plaintiffs' Response Brief

6   ("Response") falls short of showing that they have any legal entitlement to proceed against

7   an outside counsel like GT on these claims.  For the reasons set forth in GT's Motion to

8   Dismiss and, as discussed below, Plaintiffs' Complaint fails to state a claim against GT.

9                                    <u>**ARGUMENT**</u>

10         Plaintiffs' response to GT's Motion to Dismiss fails to rebut the arguments put forth

11  by GT on the law and makes clear the absence of adequately pleaded facts.

12         First, the Radical Bunny plaintiffs supply no compelling response as to how GT

13  could be found to owe a duty to them.  Plaintiffs have not even demonstrated that GT owed

14  a duty to Radical Bunny itself, much less to its investors.  The Radical Bunny investor

15  claims against GT are thus woefully deficient and should be dismissed.

16         Second, Plaintiffs have not provided any controlling authority that attorneys in the

17  role that GT served here—outside counsel to an issuer of securities—should be liable to

18  those allegedly harmed by the counsel's client without some showing that the attorneys

19  participated in their client's wrongful acts.  Plaintiffs do not allege facts showing that GT

20  knowingly and substantially participated or assisted in the alleged fraudulent scheme

21  orchestrated by Scott Coles and the Radical Bunny principals.  GT rendered professional

22  services to Mortgages Ltd, which does not serve as a basis for securities law liability under

23  Arizona law.  Further, extensive authority holds that counsel for a securities issuer does not

24  typically owe a duty to investors.

25         Apart from these legal deficiencies (among others), Plaintiffs' Response reveals

26  glaring deficiencies in their pleading of specific facts to support their fraud claims,

27  particularly with respect to the allegedly false statements at issue and scienter.  For example,

28  Plaintiffs assert in their Response that GT "knew" that Mortgages Ltd. was "dependent" on

receiving money from Radical Bunny, Resp. at 2 (citing Compl. ¶¶ 202-204), but the cited paragraphs say nothing about GT's knowledge of that supposed fact—only that the POMs did not disclose it.  Plaintiffs, signaling awareness of the gaps in their pleaded facts, suggest that GT should be strictly liable for alleged facts it did not know.  Citing a Ninth Circuit legal malpractice case that relies on California law, Plaintiffs assert that "[i]t is no answer to argue that Kant and Greenberg were unaware of the undisclosed facts."  *See* Resp. at 17 (citing *FDIC v. O'Melveny & Myers*, 969 F.2d 744 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994)).  This argument is stunning.  *Of course* it is an answer to any fraud claim requiring proof of scienter that the falsity of an alleged statement was not known to the defendant, and Plaintiffs may not avoid pleading relevant facts by suggesting otherwise.

Plaintiffs also make various references to facts they do not plead in their Complaint but that they can plead "if needed."  *See, e.g.*, Resp. at 18 n.7; Resp. at 26.  This strategy does not affect the viability of the Complaint as pleaded.  *See Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (on a Rule 12(b)(6) motion, the court may not look beyond the complaint to a plaintiff's moving papers); *Horne v. U.S. Dep't of Educ.*, 2009 WL 775432, at *5 (D. Ariz. Mar. 23, 2009) (Murguia, J.) (same).

Plaintiffs' claims should be dismissed.

## I.    The Radical Bunny Investors Have Not Pleaded Facts To Show Any Duty from GT to Them, and Their Claims Must Be Dismissed.

The Radical Bunny investors do not allege any facts to support the existence of a duty from GT to them.  As set forth in GT's opening brief, a lawyer typically does not owe duties to third parties other than its client.  Mot. to Dismiss at 32-34.  Moreover, the Radical Bunny plaintiffs have offered no facts showing that GT participated in selling securities to them.  Plaintiffs assert several theories in their Response to try to get around these fundamental defects.  None is persuasive.

First, Plaintiffs argue in their Response that Radical Bunny "retained" GT as its counsel.  This assertion is conclusory and there are no pleaded facts to support it.  Instead, the pleaded facts are that GT was counsel to Mortgages Ltd., Compl. ¶ 17, and that Radical

Bunny retained separate counsel, Quarles & Brady.  *See id.* ¶ 141.  None of the pleaded facts supports any inference that GT viewed Radical Bunny as its client, or that Radical Bunny viewed GT as its counsel, and Plaintiffs do not allege the basic facts as to when or how such a relationship was formed.  And, of course, even if Radical Bunny had been a client of GT (which it was not), that still does not demonstrate why GT owed its *investors* any duties, as discussed *infra*, at 10, 19-21.

Plaintiffs also contend that GT had a duty to the Radical Bunny investors because GT allegedly drafted a POM for Radical Bunny.  Resp. at 18.  But Plaintiffs affirmatively allege that the POM was never completed or used.  *Id.*; Compl. ¶ 172.  This fact does not "miss[] the point," Resp. at 18, as Plaintiffs suggest.  Wholly apart from whether creating a draft document that is never finalized or used can be part of a fraudulent scheme (a questionable proposition at best), the existence of such a document certainly cannot be the source of a *duty* from the author to a plaintiff who never received it.

Plaintiffs repeat their conclusory assertion that GT owed a duty to Radical Bunny's investors because "Radical Bunny and Mortgages Ltd. were acting as co-promoters under a joint venture to raise money for Mortgages Ltd."  *Id.* at 19.  But Plaintiffs do not attempt to explain how their Complaint pleads facts to show the elements of a joint venture under the cases cited by Defendant, much less that GT was aware of such a relationship.  *See* Mot. to Dismiss at 15-16.  And regardless of whether Plaintiffs could plead a joint venture, they have cited no law that outside counsel to one member of a joint venture automatically owes duties to the other member of the joint venture[1]—much less to its investors.  The joint venture theory could not suffice to show a duty, even if repleaded.

The Radical Bunny plaintiffs also assert that GT participated in or induced the sale of securities to them because Mortgages Ltd. and Radical Bunny had "integrated offerings."

---

[1]  The American Bar Association has issued a formal ethics opinion that counsel for a corporation is not presumed to be counsel for an affiliate of the corporation.  ABA Comm. on Ethics & Prof. Responsibility, Conflicts of Interest in the Corporate Family Context, Formal Op. 95-390 (1995).

*See* Resp. at 18.  If this theory is confusing, it is because Plaintiffs offer no authority or explanation as to how the theory gives rise to a duty under the Arizona securities fraud statutes or the common law.  There is no allegation that offering materials on which GT advised Mortgages Ltd. were used with Radical Bunny investors, no allegation that anyone at GT intended those offering materials to be so used, and no allegation that anyone at GT even knew what form of securities Radical Bunny sold to its investors.  Whether or not Mortgages Ltd.'s offerings could be deemed to be "integrated" with Radical Bunny's offerings simply does not answer the question of whether GT can be said to have participated in or induced those investors to purchase Radical Bunny securities.[2]

Because Plaintiffs fail to allege facts showing GT had any duty to Radical Bunny investors or any involvement in any sale of securities to them, and for the further reasons set forth below, the claims of the Radical Bunny investors against GT should be dismissed.

## II.    Plaintiffs Have Not Stated A Claim for Securities Fraud.

Under established Arizona law, a defendant who does not sell securities, does not have a financial stake in or partake in the sale, and does not directly solicit investors or promote the sale is not considered to have "made, participated in, or induced" the sale such that private civil liability for securities fraud can attach under A.R.S. § 44-2003(A) (2010).  *See Grand v. Nacchio*, 236 P.3d 398, 401 (Ariz. 2010).  Contrary to Plaintiffs' suggestion, the Arizona Supreme Court's recent decision in *Nacchio* did not eliminate section 44-2003(A)'s test for who may be held civilly liable for state securities fraud.  Resp. at 3-5.  Both the plain language of the statute and Arizona cases interpreting it create civil liability

---

[2]   The only case Plaintiffs cite in support of their integration theory, *see* Resp. at 19, does not extend to the facts alleged by Plaintiffs.  In *SEC v. Murphy*, 626 F.2d 633, 644 (9th Cir. 1980), the court held that the company that sponsored the sale of limited partnership interests in cable television systems, operated the systems governing return of investments, and managed the partnerships, was the "issuer" for the limited "purposes of determining the availability of [the] private offering exemption."  The court cautioned against extending the label of "issuer" to any company or entity whose health may be material to investors, as Plaintiffs here seek to do in arguing that Mortgages Ltd. should be considered the "issuer" of the securities sold by Radical Bunny.  *Id.*

only for certain conduct committed by those who "made, participated in, or induced" the fraudulent securities sales, as described in section 44-2003(A).  Further, *Nacchio* did not change the scope of securities liability for an outside professional of an issuer performing services in the ordinary course, which remains subject to the statute's safe harbor provision. Mot. to Dismiss at 9; Resp. at 9-11.  In addition to these overriding defects, Plaintiffs' securities fraud claim suffers from other legal deficiencies, as outlined below.  Resp. at 11-14.  And finally, all of Plaintiffs' securities law claims fail the heightened pleading standards of A.R.S. § 44-2082 and Rule 9(b).

A.   ***Grand v. Nacchio* Did Not Eliminate Section 44-2003(A)'s Restriction on Private Civil Liability, and Plaintiffs' Pleaded Facts Do Not Show Entitlement to Civil Liability Relief Against GT Under That Test.**

Plaintiffs argue that under *Nacchio*, 236 P.3d 398, they may state a claim for securities fraud without pleading facts to show that GT made, participated in, or induced the fraudulent sale of securities under section 44-2003(A).  Resp. at 3, 5.  In other words, Plaintiffs would have this Court believe that section 44-2003(A) is now irrelevant.  *Nacchio* could not have been more clearly to the contrary.  In *Nacchio*, the court *affirmed* the dismissal of the plaintiff's securities fraud claim for failure to allege facts satisfying section 44-2003(A).  236 P.3d at 403.  Had the court determined that a plaintiff need not comply with section 44-2003(A), as Plaintiffs suggest, it would not have upheld the dismissal for failure to meet section 44-2003(A).  Further, if Plaintiffs' interpretation were correct, the court would have had to overrule *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317 (Ariz. Ct. App. 1996)—an Arizona Court of Appeals case deciding whether a party could be civilly liable under section 44-2003(A)—which it did not do.

The dicta Plaintiffs rely on to argue that the *Nacchio* court eliminated section 44-2003(A)'s restriction on civil liability, *see* Resp. at 3-4, notes that "courts are not ordinarily required to parse whether a person violating section 44-1991(A)(3) should be separately characterized under section 44-2003(A) as having 'made,' 'participated in,' or 'induced' the unlawful purchase or sale." *Nacchio*, 236 P.3d at 401.  This observation simply reflects that these phrases might overlap, and that a court need not categorize which phrase applies.  The

1    court neither held nor suggested that a party may be civilly liable in the absence of facts to

2    show it had one or more of these relationships to the transaction at issue—and the court's

3    actual holding made undeniably clear that a plaintiff must plead that the defendant's role

4    falls within at least one of these categories.

5        Because Plaintiffs have not alleged facts showing GT made, participated in, or

6    induced the fraudulent sale of securities to Mortgages Ltd. or Radical Bunny investors, they

7    cannot assert a securities fraud claim against GT.  In their opposition, Plaintiffs assert for

8    the first time that GT "made" the fraudulent sale of securities.  Resp. at 8.  Plaintiffs'

9    Complaint does not make this allegation even in conclusory fashion.  In any event, Plaintiffs

10   provide no Arizona authority construing "make" to extend to defendants who do not

11   actually sell securities and, in *Nacchio*, the Arizona Supreme Court rejected precisely that

12   argument.  236 P.3d at 402 n.1 (because defendants did not sell the stock to the plaintiff,

13   they could not be considered to have "made" the sale).

14       Plaintiffs' arguments as to why GT "participated in" or "induced" the fraudulent sale

15   of securities under section 44-2003(A) also have been rejected before.  *Standard Chartered*

16   *PLC*, 945 P.2d 317, is directly on point.  In *Standard Chartered*, a banking corporation and

17   two of its subsidiaries brought a securities fraud action against Price Waterhouse, an

18   accounting firm, alleging that they would not have purchased the bank but for Price

19   Waterhouse's negligent audit and approval of misleading financial statements.  945 P.2d at

20   323.  The court held that Price Waterhouse did not participate in or induce the unlawful sale

21   within the meaning of section 44-2003(A).  Relying on the dictionary's definition of

22   "participate" as "to take part in something" or "to have a part or share in something," the

23   court held that because Price Waterhouse did not partake in or have a financial stake in the

24   sale of the bank's stock, it did not participate in that sale.  *Id.* at 332 (quotation marks

25   omitted).[3]  The Court construed "induce" to mean "persuade" and "prevail," and rejected

---

[3]  GT is aware that Plaintiffs have argued application of a Ninth Circuit test called the
"substantial participation" test in responding to Quarles and Brady's motion to dismiss.  *See*

(Footnote Cont'd on Following Page)

plaintiffs' argument that Price Waterhouse had induced the sale of the bank through its audit and financial statements. *Id.* at 332-33 (quotation marks omitted). "[M]erely provid[ing] information that contributes to a buyer or seller's decision to close the deal" is not "inducement" of the fraudulent sale; inducement liability requires direct promotion or solicitation by the defendant. *Id.*

Plaintiffs' argument that *Nacchio* "replace[d] *Standard Chartered's* narrowing interpretation with a sweeping interpretation," Resp. at 4, does not survive scrutiny under any reading of *Nacchio*. *Nacchio* upheld and adopted *Standard Chartered's* definition of "participate" and "induce," holding that the defendants had not participated in the sale where they did not take part in or have a share in the fraudulent stock purchases, and noting in dicta that the defendants' active and direct encouragement to plaintiffs to buy the stocks would qualify as "inducement." 236 P.3d at 402-03. Further, *Nacchio*'s use of the word "sweeping" referred to the securities statute's "sweeping" rescissionary remedy—not sweeping liability. *Id.* at 401. Thus, the rule after *Nacchio* is as it was before: secondary actors like GT who have no financial stake in the sale, and who do not directly communicate with investors or otherwise promote or solicit the sale, have not "participated in or induced" the fraudulent sale under section 44-2003(A).[4]

---

(Footnote Cont'd From Previous Page)

Plaintiffs' Opposition to Quarles & Brady's Motion to Dismiss at 17. That test has been heavily criticized, *see, e.g., Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1205-06 (11th Cir. 2001); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 174-75 (2d Cir. 1998); *Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1226 n.10 (10th Cir. 1996), and it is unlikely that the Arizona Supreme Court would apply it. GT does not believe it is necessary to reach this question in ruling on the motions to dismiss, but were the Court inclined to address this issue in its ruling, GT requests the opportunity to provide further briefing.

[4] Plaintiffs characterize the *Nacchio* trial court order as "concluding that the defendants' involvement in preparing the IPO prospectus was participation in [the plaintiff's] purchases." Resp. at 6. Apparently the defendants in that case did not challenge the argument that they had participated in the IPO purchases, and so the issue was not before either the trial court or the Arizona Supreme Court. *See* Ex. C. to Resp. at 6-7. Further, the fact pattern present in *Nacchio* would not answer the question of "participation" by GT, because the defendants in *Nacchio* were not outside professionals, but rather the corporation, its CEO, and the CEO of its affiliate. *See Nacchio*, 236 P.3d at 399-400.

To further argue that GT's preparation of POMs subjects it to direct liability for inducing an unlawful sale under section 44-2003(A), Plaintiffs rely on a Ninth Circuit decision applying California law to a legal malpractice claim and a New York Court of Appeals decision upholding an aiding-and-abetting securities fraud claim under New York law. *See* Resp. at 7 (citing *FDIC v. O'Melveny & Myers*, 969 F.2d 744 (9th Cir. 1992), and *Oster v. Kirschner*, 905 N.Y.S.2d 69 (App. Div. 2010)). These cases do not even address claims for direct liability for securities fraud—much less do they interpret the Arizona securities laws. *See Standard Chartered*, 945 P.2d at 329 (rejecting parties' citation to federal cases interpreting federal statutes where "there is no counterpart . . . to the participation-or-inducement standard" of the Arizona statute). Further, the statement in *O'Melveny & Myers* that POMs are "designed to induce outside investors" was not a holding, 969 F.2d at 746, and does not answer the question of when an individual's connection to a securities transaction renders it an "inducer." It cannot be the case that a lawyer's legal assistance in preparing a POM automatically qualifies as "inducement," because otherwise the safe harbor provision of the Arizona securities laws—which excludes from the scope of civil liability professional services rendered in the ordinary course— would be rendered meaningless.[5]

Plaintiff's proposed interpretation of section 44-2003(A)'s safe harbor provision fares no better. Plaintiffs argue that the safe harbor provision is inapplicable to GT because "Kant acted beyond the ordinary course by knowingly assisting his clients' crimes and frauds," and, as Plaintiffs see it, their mere invocation of the word "fraud" proves that the

---

[5] Plaintiffs' argument that GT committed "inducement by omission," Resp. at 7, is unconvincing. The passage from *Nacchio* upon which Plaintiffs rely states that "through their acts and omissions, the defendants encouraged the [plaintiff] to buy stock from others in the aftermarket." 236 P.3d at 403. The language noting that inducement may take the form of "acts and omissions" does not change the fact that inducement requires direct solicitation or encouragement. In *Nacchio*, the complaint alleged that the defendants communicated directly with the plaintiff. *See Grand. v. Nacchio*, 217 P.3d 1203, 1206 (Ariz. Ct. App. 2009). There are no such allegations here against GT.

conduct was "by definition beyond the pale of ordinary professional services."  Resp. at 9-10.  A more tenable reading of the safe harbor provision is that conduct that is consistent with the provision of legal services is not participation in the fraudulent sale of securities; that is, to have participated in the sale of securities, the attorney must have acted outside his or her role as an attorney.  *See Nacchio*, 236 P.3d at 402-03 ("We ordinarily do not construe statutes so as to render portions of them superfluous.").  Ohio courts have interpreted a similar safe harbor provision in this way.  *See* Mot. to Dismiss. at 10 n.5.  Here, there is no allegation that GT's conduct extended beyond the provision of legal services, and so GT falls within the statutory safe harbor and cannot be held liable under a participation theory.

Indeed, Plaintiffs' examples of conduct supposedly outside of the ordinary course, Resp. at 10-11, fall flat when stripped of sinister rhetoric.  Plaintiffs allege that:  (i) Bob Kant engaged in legal work to prepare a template POM for Radical Bunny, which was passed on to Radical Bunny's attorneys and never finalized; (ii) Kant advised his client that Radical Bunny had a securities compliance problem due to its failure to register as a securities dealer; (iii) GT provided legal advice to Mortgages Ltd. on an improper firing of an employee in March and April of 2008, *after* the last POM on which Plaintiffs claim to have relied was issued; and (iv) GT provided legal advice on the structure of a new "VTL" Fund so that Mortgages Ltd. could raise additional investor funds, and that the Fund's structure violated other agreements.  Resp. at 10-11.  None of this alleged conduct qualifies as anything other than professional legal services.

For all of the foregoing reasons, Plaintiffs have not adequately alleged GT made, participated in, or induced the fraudulent sale of securities under section 44-2003(A), and Count One must be dismissed.

## B.    Even if Plaintiffs Could Meet Section 44-2003(A), Count One Still Fails.

In addition to failing to allege facts showing that GT made, participated in, or induced the fraudulent sale of securities under section 44-2003(A), Plaintiffs fail to allege facts showing that GT committed securities fraud under section 44-1991(A), which prohibits a person from "employ[ing]" a scheme to defraud, "mak[ing]" a fraudulent misstatement or

omission, or "engag[ing]" in any transaction or course of business that operated as a fraud. A.R.S. § 44-1991(A) (2010); *see* GT's Motion to Dismiss at 11-12.[6]

The Arizona decisions cited by Plaintiffs do not support the extension of primary securities fraud liability under section 44-1991(A) to secondary actors such as GT. *State v. Baumann*, 610 P.2d 38, 45-46 (Ariz. 1980), *E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 79 P.3d 86, 90-91 (Ariz. Ct. App. 2003), and *Siporin v. Carrington*, 23 P.3d 92, 93 (Ariz Ct. App. 2001), cited in Plaintiffs' Resp. at 12, are not on point.  The defendants in those cases were actual sellers of securities or corporate officers, and the decisions address other provisions of the ASA, not the scope of liability under section 44-1991(A).  Likewise, *Aaron v. Fromkin*, 994 P.2d 1039 (Ariz. Ct. App. 2000), and *Trimble v. American Savings Life Insurance Co.*, 733 P.2d 1131 (Ariz. Ct. App. 1986), cited in Plaintiffs' Resp. at 13, do not support the proposition that a law firm can be liable for statements issued by its client which it allegedly reviewed or assisted in drafting.   In both *Aaron* and *Trimble*, the defendants were the offerors of the securities, not outside professionals, and the securities fraud claims were directed at statements made by them directly to the investors.  *See Aaron*, 994 P.2d at 1040-41; *Trimble*, 733 P.2d at 1133.[7]

Accordingly, Plaintiffs have not stated a claim against GT under section 44-1991(A).

---

[6]  Plaintiffs mischaracterize GT's argument at p. 12-13 of its opening brief.  GT does not contend that "a duty to disclose does not exist under subsections (a) and (c) of Rule 10b-5," as Plaintiffs' suggest, Resp. at 13, but rather that there is no liability for fraudulent schemes or fraudulent courses of business under subsections (a) and (c) where the allegations are based exclusively on misstatements and omissions, which are covered by subsection (b). *See* Mot. to Dismiss at 12-13.   Because Plaintiffs' allegations against GT are based principally on misstatements or omission in the POMs, they cannot state a claim under § 44-1991(A)(1) (fraudulent schemes) or (3) (fraudulent courses of business).

[7]  Plaintiffs also rely on *In re American Continental Corp. /Lincoln Savings & Loan Securities Litigation*, 794 F. Supp. 1424 (D. Ariz. 1992), to support their assertion of a duty. That case, involving California law, confirms the distinction between this case and one where direct liability may be found.  There, the allegations against the law firm rested on direct communication from the firm to investors in the form of a legal opinion letter. Plaintiffs also rely on *SEC v. Fehn*, 97 F.3d 1276 (9th Cir. 1996), but that case involved aiding and abetting securities fraud and is discussed further below.

**C.     Plaintiffs' Securities Fraud Claim Separately Fails Under Rule 9(b) and A.R.S. Section 44-2082's Heightened Pleading Standards.**

For the reasons set forth in GT's Motion to Dismiss at 16-19, Plaintiffs have failed to plead their securities fraud claim with the particularly required by section 44-2082(A) and Rule 9(b).  Plaintiffs ignore the requirement that they identify:  (1) specific false statements and the reasons why they were false; and (2) specific facts demonstrating scienter—or knowledge of falsity by GT.  Instead, Plaintiffs mistake lengthy string cites to the Complaint and legally conclusory allegations for specificity, and fail to tie their arguments to specific statements in the Complaint.[8]

**1.     Plaintiffs Have Failed To Plead False Statements.**

First, Plaintiffs have failed to identify statements made to them that were false—or, alternatively, why alleged omissions rendered misleading statements that were actually made to them.  Mot. to Dismiss at 17.  Plaintiffs assert generally that "[b]y representing that Risk Factors were being disclosed without disclosing these risks, the representation of Risk-Factor disclosure was a misrepresentation."  Resp. at 17.  It is ironic that in a Complaint about supposed omissions, Plaintiffs fail to note that the very "Risk Factor" paragraph they cite states in part:  "Prospective investors should realize, however, that factors other than those set forth below may ultimately affect their investment interests."  Ex. 2 to Mot. to Dismiss at 10.  As a matter of law, Plaintiffs cannot contend that the POMs were false on the theory that they purported to disclose all risks.  Plaintiffs also argue that the POMs were misleading because they identified as a risk that "[l]oans are subject to a risk of default."  Resp. at 17.  Plaintiffs allege that this disclosure was false because certain loans from prior offerings were, in fact, *in default*.  This is an astonishing argument.  That a disclosed risk has come to pass in connection with investments previously made hardly proves the falsity

---

[8]  For example, Plaintiffs assert in their Response that  GT "knew" that Mortgages Ltd. was "dependent" on receiving money from Radical Bunny, Resp. at 2 (citing Compl. ¶¶ 202-204), but the cited paragraphs say nothing about GT's awareness of that supposed fact—only that the POMs did not disclose it.

of the disclosure.[9]  Plaintiffs make no argument (and their Complaint contains no allegation) that the POMs either discussed or contained a false statement about Mortgages Ltd.'s financial condition.  Accordingly, such a theory cannot serve as a basis for liability.

In the absence of any actually false statements, Plaintiffs argue that GT should be liable for failure to advise Mortgages Ltd. to amend existing POMs when it allegedly learned of loan defaults in January 2008.  Resp. at 17.  Plaintiffs do not cite any authority for this proposition.  There is no duty to update or amend prior statements of historical fact that were true at the time the statements were made.  *See Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1332 n.3 (7th Cir. 1995) ("[T]hat circumstances subsequently change cannot render an historical statement false or misleading."); *see also Ronconi v. Larkin*, 253 F.3d 423, 430 n.12 (9th Cir. 2001) ("Fraud by hindsight is not actionable." (brackets and quotation marks omitted)).  Arizona courts have not recognized a duty to update offering documents containing forward-looking statements or projections, and such a theory likely would be inapplicable here, as Plaintiffs do not point to any forward-looking statements or projections.  *See Kovarik v. FoxHollow Techs., Inc. (In re FoxHollow Techs., Inc. Sec. Litig.*), 359 F. App'x 802, 804-05 (9th Cir. 2009) (courts recognizing a duty to update have limited it to forward-looking statements; declining to decide the "novel question of law" of whether there is a duty to update because no forward-looking statements were alleged).

A close review of Plaintiffs' Response reveals that they identify *not a single statement* in the POMs that was false or rendered misleading by an omission when made, much less with the particularity required.  Their claims should be dismissed.

**2.   Plaintiffs Have Failed To Plead Scienter.**

Second, and independently, Plaintiffs have failed to identify facts showing knowledge of falsity by GT that could suffice to demonstrate scienter, which is required for

---

[9]  Plaintiffs concede, in any event, that this alleged falsehood pertains at most to the small number of offerings that occurred after January of 2008.  Resp. at 17.  To the extent that the Court finds that any Plaintiffs may survive dismissal based on this allegation, it should be limited to those offerings.

12

fraudulent scheme and fraudulent course of business claims under section 44-1991(A)(1) and (3).[10]

Plaintiffs' theory with respect to Radical Bunny is, in short, that Radical Bunny lent money to Mortgages Ltd., and GT identified a securities compliance problem at Radical Bunny and urged it to correct its issues.  Even in their briefing, Plaintiffs still have not identified under what law Mortgages Ltd. would have exposure for the securities compliance problems of a third party—much less that GT knew there was such exposure or a "contingent liability."  Mot. to Dismiss at 20.  The assertion that there was a "contingent liability" is a conclusion of law, and Plaintiffs may not rest on such assertions to satisfy even Rule 8(a), much less Rule 9(b).  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plaintiffs continue to invoke the phrase "joint venture," without any allegation that GT ever believed the relationship between Mortgages Ltd. and Radical Bunny so qualified, and, as noted in the Motion to Dismiss, at 4-5 & 15, their allegations that Radical Bunny was a lender to Mortgages Ltd. are not consistent with this theory.  Plaintiffs also have failed to plead any facts with respect to what GT knew about Mortgages Ltd.'s receipt of funds from Radical Bunny.[11]  Instead, Plaintiffs assert baldly that "[n]o reasonable attorney . . . could believe that an issuer's ongoing receipt of crime proceeds need not be disclosed," Resp. at 25—a sentence loaded with conclusions and based on inferences that do not cure the absence of pleaded facts.

---

[10]  Plaintiffs do not respond directly to GT's argument that they have not met § 44-2082(B)'s heightened pleading requirement for claims requiring proof of scienter.  *See* Resp. at 20-21.  Instead, Plaintiffs note that § 44-2003(B)'s proportionate liability scheme imposes joint and several liability on defendants who act "knowingly or recklessly."  Resp. at 21.  The notion that the proportionate liability scheme eliminated § 44-2082(B)'s heightened pleading requirement without expressly saying so it outlandish, and should be rejected.

[11]  Plaintiffs' citation to cases involving an entity's improper failure to disclose criminal history or background issues are not on point.  None of those cases suggests that there is a duty to disclose alleged securities compliance issues of a *third-party* entity.  Resp. at 25 nn. 12, 13.

1    Plaintiffs also have not alleged facts sufficient to show that GT knew of problems

2   with Mortgages Ltd.'s financial health such that Mortgages Ltd. was engaged in a fraud.

3   Plaintiffs allege (1) that as of December 2007, Mortgages Ltd. was behind in paying its legal

4   bills to GT (a not unusual circumstance for a law firm); (2) that in January 2008 Mortgages

5   Ltd. was having trouble meeting its loan funding obligations; and (3) that by January 2008,

6   borrowers had defaulted on over $100 million in loans to Mortgages Ltd.   Putting aside

7   whether any of these allegations would indicate anything beyond a short term cash flow

8   issue, none of these allegations could support a finding of scienter, and certainly not with

9   respect to any offerings before January 2008.  To the extent that the Court finds that these

10   allegations could potentially state a claim, it could only be as to offerings made from

11   January 2008 onward, and Plaintiffs' claims based on offerings before that time period

12   should be dismissed.

13    Seemingly aware of the deficiencies in their scienter pleading, Plaintiffs rely on a

14   single case *O'Melveny & Myers*, 969 F.2d 744, to make the baseless argument that scienter

15   is irrelevant to their fraud claims.  Resp. at 17 ("It is no answer to argue that Kant and

16   Greenberg were unaware of the undisclosed facts.).  Scienter matters, and it must be pleaded

17   with specificity under section 44-2082(B)—not ignored on a theory that a lawyer has a duty

18   to investigate.  *O'Melveny & Myers* does not remotely say otherwise.  That case was a legal

19   malpractice case, and has no bearing on fraud or the presence of sufficient facts to

20   demonstrate scienter.  As discussed *infra*, at 20-21, *O'Melveny & Myers* is not a binding or

21   persuasive authority even on Plaintiffs' negligent misrepresentation claim—but it certainly

22   cannot salvage their pleading of facts to show securities fraud.

23   **III.    Plaintiffs Do Not Claim Control Person Liability Against GT.**

24    Plaintiffs confirm in their Response that they "do not assert control-liability against

25   Greenberg."  Resp. at 3.  Therefore, Count Two should be dismissed as to GT.

26   **IV.    Count Three Fails To State a Claim for Aiding and Abetting Securities Fraud.**

27    For the reasons outlined in GT's opening brief, it is likely that the Arizona Supreme

28   Court would follow the United States Supreme Court's rejection of private civil liability for

14

1    aiding and abetting securities fraud.  *See* Mot. to Dismiss at 22-25.  Plaintiffs' arguments to
2    the contrary are unconvincing.

3         First, Plaintiffs' interpretation of the legislature's 1996 statement of intent as leaving
4    "intact" *State v. Superior Court (Davis)*, 599 P.2d 777 (Ariz. 1979), *overruled on other*
5    *grounds by State v. Gunnison*, 618 P.2d 604, 607 (Ariz. 1980), *see* Resp. at 21, is at odds
6    with the Arizona Supreme Court's reading of that legislative statement.  In *Nacchio*, 236
7    P.3d at 404, the court noted that the 1996 Amendments "expressly left open" the question of
8    whether aiding-and-abetting liability still exists under the ASA, not that they affirmed or
9    otherwise left intact *State v. Superior Court*.

10        Second, Plaintiffs do not directly refute GT's argument that there can be no aiding
11   and abetting liability because the statutory text provides a private cause of action against
12   those who make, participate in, or induce the fraudulent sale of securities, and not those who
13   aid and abet the sale.  *See* Mot. to Dismiss at 24-25.  Instead, Plaintiffs argue that the words
14   "make, participate, or induce the unlawful sale" encompass aiding and abetting liability.
15   Resp. at 22-23.  Even if the Court were to accept Plaintiffs' interpretation of section 44-
16   2003(A), Plaintiffs' aiding and abetting claim fails for the same reasons its primary
17   securities fraud claim fails:  Plaintiffs have not alleged facts showing that GT made,
18   participated in, or induced the fraudulent sale of securities.  *See supra* at 6-9; *see also* Mot.
19   to Dismiss at 8-11.

20        Third, Plaintiffs' reliance on Arizona Corporation Commission ("ACC")
21   enforcement proceedings, *see* Resp. at 23, is misplaced.  The availability of aiding and
22   abetting liability in ACC enforcement actions does not mean that there is still *private* civil
23   liability for aiding and abetting securities fraud under the Arizona Securities Act.  Indeed,
24   under the federal securities laws, the SEC has the authority to bring injunctive actions for
25   aiding and abetting securities fraud, even though there is no private civil liability for aiding
26   and abetting securities fraud.  *See SEC v. Fehn*, 97 F.3d 1276, 1287 (9th Cir. 1996).

27        Finally, even assuming there is still a cause of action under Arizona law for aiding
28   and abetting securities fraud, Plaintiffs have failed to state a claim.  Plaintiffs acknowledge

that the test followed in *State v. Superior Court* and quoted in *Nacchio* sets forth the elements required to allege a claim for aiding and abetting securities fraud.  Resp. at 24.  But Plaintiffs do not reply to GT's argument that under that test, and the cases interpreting it, Plaintiffs have not met the requirement that they show GT had a conscious intent to assist the primary violator and that GT provided a necessary contribution to the underlying scheme.[12]  For example, Plaintiffs do not point to any allegations showing the GT benefitted from the alleged fraud or cover-up.  *See* Mot. to Dismiss at 26-27.

Plaintiffs' cited case, *Oster v. Kirschner*, 905 N.Y.S.2d 69 (App. Div. 2010)), is not to the contrary.  In *Oster*, the court upheld an aiding and abetting securities fraud claim against the defendant attorneys where they "did not seriously dispute" that they had *actual* knowledge that "the company was being run by convicted felons, one of whom was banned from the securities industry," but did not disclose that fact in the offering documents they drafted.  905 N.Y.S.2d at 72-73.  As noted in GT's opening brief, and as set out in Part II.C.2, *supra*, Plaintiffs do not allege facts showing that GT had actual knowledge of criminal conduct of Mortgages Ltd.

Plaintiffs also rely on the ethics rules governing attorneys, *see* Resp. at 31, but, as GT noted in its opening brief, Arizona law is clear that (1) the rules do not create a duty as a matter of law, and (2) an alleged violation of the rules does not give rise to a private cause of action for those allegedly harmed by it.  *See* Mot. to Dismiss at 33 n.18.  These rules do not bear on the question of aiding and abetting liability.

---

[12] In their opposition brief, Plaintiffs assert that "it is only as to the claim for aiding and abetting fiduciary breaches (not aiding and abetting securities violations) that Greenberg argues substantial assistance is not pleaded."  Resp. at 27-28.  "Substantial assistance" is an element of aiding and abetting breach of fiduciary duty, not aiding and abetting securities fraud as the tort was defined by the Arizona Supreme Court in *State v. Superior Court*, 599 P.2d 777, 784 (Ariz. 1979), *overruled on other grounds by State v. Gunnison*, 618 P.2d 604, 607 (Ariz. 1980).  In any case, GT argued in its brief that Plaintiffs had failed to satisfy the analog to the "substantial assistance" element in the aiding and abetting securities fraud context—that GT made a "necessary contribution to the underlying scheme."  Mot to Dismiss at 25-26.

16

Count Three should be dismissed for failure to state a claim.

## V.   Count Four Fails To State a Claim for Aiding and Abetting Breach of Fiduciary Duty.

Plaintiffs do not address the deficiencies pointed out in GT's Motion to Dismiss: *i.e.*, that they have not pleaded facts to show: (1) that Mortgages Ltd. and Radical Bunny owed a fiduciary duty to investors of which they were in breach; (2) that GT knew they were in breach; and (3) that GT provided "substantial assistance" to Mortgage Ltd. or Radical Bunny in breaching their supposed fiduciary duties to their investors. *See* Mot. to Dismiss at 30-31.   Instead, Plaintiffs confusingly spend many pages combining a discussion of aiding and abetting securities fraud and aiding and abetting a breach of fiduciary duty, *see* Resp. 21-31.  But those are different causes of action, with different elements, and Plaintiffs fail to engage the elements of their fiduciary duty claim.

In response to GT's argument that the Complaint does not plead facts showing Plaintiffs entered into a fiduciary relationship with either Mortgages Ltd. or Radical Bunny, Plaintiffs simply restate their deficient conclusory allegations that Mortgages Ltd. and Radical Bunny were their "managers or agents."  Resp. at 31.  Those are conclusions of law, not well-pleaded facts, and must be rejected under *Iqbal*, 129 S. Ct. at 1949.  *See Castaneda v. Saxon Mortg. Servs., Inc.,* 2010 WL 726903, *6 (E.D.Cal. Feb. 26, 2010) (conclusory allegations of an agency relationship are insufficient to establish a fiduciary relationship under *Iqbal*).  They also cite *Johnson v. Nychyk*, 517 P.2d 1079, 1081 (Ariz. Ct. App. 1974), which held that "the promoters of a corporation stand in a fiduciary relationship to the stockholder investors."  That case does not support a finding of fiduciary duty here.  Unlike the plaintiffs in *Johnson*, Plaintiffs do not allege that they invested in Mortgages Ltd. itself, and therefore are not stockholders in Mortgages Ltd.  *See* GT Mot. to Dismiss at 8 n.3.  Rather, Plaintiffs purchased direct or indirect fractional interests in the secured promissory notes signed by real estate developers.  *See* Mot. to Dismiss at 3; *see also Nat'l Retail Dev. Partners I v. Maness (In re Mortgages Ltd.)*, 405 B.R. 669, 673 (Bankr. D. Ariz. 2009), *aff'd sub nom.*, *PDG Los Arcos, LLC v. Adams (In re Mortgages Ltd.)*, 427 B.R. 780 (D.

Ariz. 2010); *In re American Continental Corp. /Lincoln Savings & Loan Securities Litigation*, 794 F. Supp. 1424, 1438 (D. Ariz. 1992) (expressly distinguishing between fiduciary duties owed to corporate shareholders, as opposed to creditors).  Finally, Plaintiffs recite their alleged "dependence" on Mortgages Ltd.  Resp. at 32.  As stated in GT's Motion to Dismiss, assertions of dependence and reliance are insufficient to show a fiduciary relationship.  *See* Mot. to Dismiss at 28; *see also ING Bank, FSB v. Mata*, 2009 WL 4672797, *6 (D. Ariz. Dec. 3, 2009) (conclusory allegations of reliance on defendant's knowledge and expertise insufficient to plead a fiduciary relationship).[13]

To support their scienter argument, Plaintiffs rely on *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002).  *See* Resp. at 30.  *Wells Fargo* stands only for the proposition that a plaintiff may satisfy the knowledge element if it can show that the defendant knew the tortfeasor was committing a tort; a plaintiff does not have to show the defendant knew "all the details" or had "complete knowledge of the tort."  38 P.3d at 26 (quotation marks omitted).  Here, as stated in GT's opening brief, the Complaint does not allege facts showing GT knew or believed that Mortgages Ltd. or Radical Bunny were in breach of any fiduciary duty to Plaintiffs, or even that GT knew or believed that Mortgages Ltd. or Radical Bunny owed any fiduciary duty to Plaintiffs, and therefore does not meet the *Wells Fargo* test.

Further, Plaintiffs' authorities do not show that GT gave substantial assistance in the breach of any fiduciary duty.  Plaintiffs cite *In re American Continental*, 794 F. Supp. 1424, a case applying California law.  Resp. at 29.  Plaintiffs wholly fail to explain what that case has to do with their aiding and abetting breach of fiduciary duty claims, but presumably they cite it to support their "substantial assistance" argument.  *In re American Continental* sheds no light on that question in the context of a fiduciary duty tort, and its discussion of aiding

---

[13]  Plaintiffs also rely on their joint venture theory as the basis for their claim that Mortgages Ltd. and Radical Bunny owed them fiduciary duties, *see* Resp. at 32, but for the reasons stated in GT's Motion to Dismiss and *supra* at 3, Plaintiffs have failed to plead a joint venture.

and abetting liability relied heavily on the context of independent public accountants, who the court found might have particular disclosure obligations relating to their status as public accountants.   794 F. Supp. at 1442.   Moreover, the law firm in that case had issued an opinion letter, triggering different disclosure duties as a result of direct statements than are present here.  *See id.* at 1452.

Finally, Plaintiffs again confuse the analysis by relying on the rules of professional conduct as a basis for liability.  *See* Resp. at 30-31.  As discussed *supra*, at 16, these rules do not create private liability.  *See also* Mot. to Dismiss at 33 n.18.

## VI.   Plaintiffs' Negligent Misrepresentation Claim Should Be Dismissed.

## A.   Plaintiffs Have Failed To Plead Facts Supporting the Existence of a Duty from GT to Them.

Plaintiffs concede that claims for negligent misrepresentation are only actionable where the defendant owed a duty to the plaintiff.  Plaintiffs also concede that they were not clients of GT—and that attorneys generally owe a duty of care only to their clients—but contend that they have alleged facts falling within the "special circumstances" where an attorney may be found to owe a duty of care to a non-client.  Resp. at 35.  They have not.[14]

Plaintiffs rely on the Restatement in support of their theory that GT owed them a duty.  *See* Resp. at 15.  Section 51(3) provides that a lawyer may owe a duty to a non-client where "(a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient; (b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and (c) the absence of such a duty would make enforcement of those obligations to the client unlikely[.]"  Restatement (Third) of the Law Governing Lawyers § 51(3) (2000); *see also*

---

[14]   Courts routinely dismiss complaints against lawyers for a failure to adequately plead facts demonstrating a duty of care.  *See, e.g., Capitol Indem. Corp. v. Fleming*, 58 P.3d 965, 968 (Ariz. Ct. App. 2002) (affirming dismissal of plaintiff's negligence claim where complaint did not allege facts showing attorney owed plaintiff a duty of care); *see also Clark v. Feder Semo & Bard, P.C.*, 634 F. Supp. 2d 99, 107 (D.D.C. 2009) (declining to credit conclusory allegations that plaintiff was intended beneficiary of attorney's services).

1    *Paradigm Ins. Co. v. Langerman Law Offices*, *P.A.*, 24 P.3d 593, 600 (Ariz. 2001)

2    (following test from Restatement section 51(3)).

3         Rather than applying this test, Plaintiffs simply assert that GT may be liable to them

4    because "the interests of the issuers and its investors are aligned." Resp. at 35.  Plaintiffs

5    cite no authority for this proposition, which would be surprising to securities lawyers, whose

6    clients retain them to provide confidential advice on the content of their offering documents.

7    Securities issuers engage in transactions with investor counterparties, and their interests are

8    no more aligned than any parties to a business transaction. *See* Mot. to Dismiss at 14 (citing

9    cases holding counsel for a company has no duty to company's investors or shareholders).

10        Plaintiffs cite *Paradigm* in support of their general argument that GT owed a duty to

11   them.  But *Paradigm* lends no support to finding a "narrow exception" to the rule about an

12   attorney's duty here.  *Paradigm* involved the nature of the relationship between an attorney

13   hired by an insurer to represent its insured, and the insurer.  24 P.3d at 600.  The court held

14   that an attorney in that situation also had a duty to the insurer, noting the special relationship

15   "between the insurer and the counsel it assigns to represent its insured." *Id.* at 601.  None of

16   the factors relied upon by the court in *Paradigm* is present here:  (i) the interests of

17   Mortgages Ltd. and Plaintiffs were not aligned; (ii) the POMs advised prospective investors

18   to consult their own legal counsel, *see* Ex. 2 to GT's Mot. to Dismiss at 2; and (iii) GT's

19   duties to Mortgages Ltd. were for the benefit of Mortgages Ltd., not its investors.[15]

20        The overwhelming weight of authority in the issuer's counsel/investor context is that

21   lawyers do not owe duties to their client's investors.  *See* Mot. to Dismiss at 14, 32-33.

22   Plaintiffs attempt to counter this line of authority by citing *O'Melveny* for the proposition

23   that GT had a "special duty . . . to investigate and detect misleading statements and

24   omissions in offering documents." Resp. at 35.  *O'Melveny & Myers* included dicta about a

---

27   [15] *Chalpin v. Snyder*, 207 P.3d 666 (Ariz. Ct. App. 2008), is not on point. *Chalpin* stands

28   only for the proposition that a lawyer is not immune from suit simply by virtue of being a
     lawyer, but does not address the scope of duties to third parties. *See id.* at 676-77.

1    lawyer's duty to investigate, but its *holding* involved the nature and scope of duties to a

2    *client* in the legal malpractice context—not third party investors.  969 F.2d at 752.  Further,

3    that federal court's statements about duties from lawyers to third parties under California

4    law are not binding here.  It is also worth noting, as the briefs to the Ninth Circuit make

5    clear, that the law firm in that case made the strategic choice not to contest that it owed

6    duties to individual investors, as opposed to its client, and so the precise nature of duties

7    owed by an attorney to a third party investor (if any) were not briefed for the court.  *See*

8    Robert J. Haft, 2A *Venture Capital and Small Business Financing* 14:141 (West 2010).

9    *O'Melveny & Meyers* was subsequently overturned by the United States Supreme Court on

10    other grounds, *see* 512 U.S. 79, and is therefore of questionable precedential value.  Finally,

11    Plaintiffs' reliance on the rules of professional conduct in support of their argument that GT

12    owed them a duty is misplaced given the clear Arizona authority holding that violations of

13    the ethical rules do not create a duty of care.  *See* Mot. to Dismiss. at 33 n.18.

14   **B.    Plaintiffs Have Failed To Plead Facts Showing Reliance.**

15         In addition to failing to allege facts showing GT owed them a duty, Plaintiffs fail to

16    allege facts showing reliance on the alleged misrepresentation or omissions in the POMs.

17    Under *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a Complaint must do more than recite the

18    elements of the cause of action.  *Id.* at 1949.  Here, the Complaint does not specify which

19    POM each of the Plaintiffs is alleged to have received, and further does not allege that any

20    of the Plaintiffs even read any POM or other document allegedly prepared by the GT

21    Defendants.  This deficiency is particularly telling in a case where half the plaintiffs were

22    not even direct investors in securities issued by Mortgages Ltd., and it is far from clear that

23    Plaintiffs can, consistent with Rule 11, allege that they received and read the POMs at issue.

24    Because Plaintiffs' allegation of "reliance" is the definition of conclusory, they cannot state

25    a claim for negligent misrepresentation.  *See PLM Tax Certificate Program 1991-92, L.P. v.

26    Schweikert*, 162 P.3d 1267, 1270 (Ariz. Ct. App. 2007) (negligent misrepresentation claims

27    require proof of reliance); *see also W. Techs., Inc. v. Sverdrup & Parcel, Inc.*, 739 P.2d

28    1318, 1320 (Ariz. Ct. App. 1986) (noting Arizona follows the "relatively restrictive view"

of negligent misrepresentation under which "the *party injured* must have relied on the information the defendant supplied"; affirming dismissal of negligent misrepresentation claim for failure to allege reliance (emphasis in original)).

For the foregoing reasons, Count Five should be dismissed.

## VII. Plaintiffs' Claim for Primary Violation of Arizona's Investment Management Act ("IMA") Fails.

Plaintiffs admit that they do not allege that GT provided direct investment services to Plaintiffs.  *See* Resp. at 37.  Nevertheless, Plaintiffs advocate that section 44-3241 of the IMA be read to impose civil and criminal liability on anyone who commits an act that falls within subparts (1)–(4), as long as someone else peripherally involved in the same transaction received investment advice.  To accept Plaintiffs' proffered interpretation would be to transform the sixteen-year-old IMA, which until now has never been interpreted by an Arizona court in a published opinion, into a catch-all liability statute, providing for broader liability than the ASA, in that it would not be limited to transactions involving the sale of securities.  Plaintiffs offer no precedent that supports such a massive extension of the IMA's scope.[16]  Moreover, Plaintiffs ignore the legislative history indicating the Arizona legislature intended to exclude practicing attorneys who are not in the business of providing investment advice from the reach of the IMA.  *See* Mot. to Dismiss at 35–36.

And, even assuming that GT could be held liable under the IMA, the Complaint lacks sufficient factual allegations supporting Plaintiffs' claims.  Plaintiffs assert in the Response that "[t]he Complaint describes the investment advisory services."  Resp. at 37.  But the Complaint paragraph Plaintiffs cite for this proposition says only that "investment advisory services were provided by salespersons who worked as managing directors through ML

---

[16]  *Bullard v. Garvin*, 401 P.2d 417 (Ariz. Ct. App. 1965), cited by Plaintiffs, is inapposite. Not only was *Bullard* decided almost thirty years before the passage of the IMA, but Plaintiffs do not provide any support for their assertion that the IMA and Arizona Securities Act are "related acts" that both must be interpreted broadly.  *See* Resp. at 37.

1   Securities."  Resp. at 37; Comp. ¶ 438.  Such threadbare and conclusory allegations do not

2   satisfy the pleading standard articulated in *Iqbal*, 129 S. Ct. at 1949, much less Rule 9(b).

3   **VIII.   Plaintiffs' Count Seven Fails to State a Cognizable Cause of Action.**

4        Plaintiffs concede that no Arizona court has recognized the existence of aiding and

5   abetting liability under the IMA.  *See* Mot. to Dismiss at 37–38.  But Plaintiffs argue that the

6   IMA should be read to provide for aiding and abetting liability based on inclusion of the

7   words "directly or indirectly" and "in connection with" in the statute.  The United States

8   Supreme Court has rejected precisely this argument.  *See Central Bank of Denver, N.A v.*

9   *First Interstate Bank of Denver*, 51 U.S. 164, 173-75 (1994) (phrases "directly or indirectly"

10  and "in connection with" in section 10(b) did not create aiding and abetting liability

11  (quotation marks omitted)).  The two cases cited by Plaintiffs—*Barnes v. Vozack*, 550 P.2d

12  1070 (Ariz. 1976), and *McGann v. Ernst & Young*, 95 F.3d 821 (9th Cir. 1996)—address the

13  effect of the "directly or indirectly" and "in connection with" language on the scope of

14  primary liability, not aiding and abetting liability, and thus undercut Plaintiffs'

15  interpretation.  Even if this claim existed, Plaintiffs concede that such a claim would require

16  an allegation that the aider and abettor (GT) *knowingly* assisted the primary violator

17  (Mortgages Ltd. Securities or Radical Bunny) in committing fraudulent advisory services.

18  *See* Resp. at 38–39.  Yet the Complaint does not include even a cursory allegation to this

19  effect, *see* Mot. to Dismiss at 39—a fact to which Plaintiffs have no response.

20       Plaintiffs' Count VII should be dismissed.

21                              **CONCLUSION**

22       For the reasons set forth above, and as stated in GT's opening brief, GT respectfully

23  requests that the Court dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(6) and 9(b).

24
25  RESPECTFULLY SUBMITTED this 11th day of October, 2010.

26                              **GALBUT & GALBUT, P.C.**

27                              By:/s/ Martin R. Galbut
                                     Martin R. Galbut, Esq.
28                                   Michaile J. Berg, Esq.

23

**WILLIAMS & CONNOLLY LLP**

By: /s/ Ellen E. Oberwetter
    Kevin M. Downey, Esq.
    Ellen E. Oberwetter, Esq.
    Patrick J. Houlihan, Esq.
    Attorneys for Defendant Greenberg Traurig

## NOTICE OF ELECTRONIC FILING

I hereby certify that on October 11, 2010, I electronically filed the foregoing with the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to all parties of record.

/s/ N. Sunshine Nye