**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Facciola, et al. individually and on behalf of all other similarly situated,<br><br>  Plaintiff,<br><br>vs.<br><br>Greenberg Traurig, LLP, a New York limited liability partnership, et al.,<br><br>  Defendant. | No. CV 10-1025-PHX-MHM<br><br>**ORDER** |

The Court has before it Defendants Michael M. Denning, Donna J. Denning, Todd S. Brown, and Cynthia D. Brown's ("Denning Defendants") Motion to Dismiss (Doc. 81), as well as Defendants Tom Hirsch, Diane Rose Hirsch, Howard Evan Walder, Berta Friedman Walder, Harish P. Shah and Madhavi H. Shah's ("Hirsch Defendants") Motion to Dismiss and Joinder to Greenberg Traurig LLP's Motion to Dismiss Complaint. (Doc. 83) The Court has reviewed the Lead Plaintiffs' responses to both the motions, as well as the Defendants' replies. The Court has also reviewed the Motion to Dismiss filed by Defendant Greenberg Traurig, LLP ("Greenberg Traurig"), which was joined in part by the Defendants, as well as the response to the Greenberg Traurig motion by the lead Plaintiffs, as well as Greenberg Traurig's reply. In addition, the Court has also reviewed the complaint. Although the Denning and Hirsch Defendants incorporate and join a number of arguments made in the Greenberg Traurig Motion, this Order only resolves the

Denning and Hirsch motions to dismiss. Having determined that oral argument is unnecessary the Court issues the following order.

**I.     Background**

**A.     General Allegations Regarding Mortgages Limited and Radical Bunny**

This case arises from the collapse of real estate lender Mortgages Ltd. following the economic downturn in 2007 and 2008 and also involves Mortgages Ltd.'s relationship with a company called Radical Bunny. According to the complaint, Mortgages Ltd. was a private mortgage lender based in Arizona engaged in making high-interest secured loans to real estate developers. To finance these loans, Mortgages Ltd. raised money from private investors in exchange for fractional interests in the secured promissory notes signed by real estate developers who borrowed money from Mortgages Ltd. Mortgages Ltd. sold securities to investors through a brokerage firm called Mortgages Ltd. Securities, LLC. Plaintiffs also allege that Mortgages Ltd. formed a relationship with a company called Radical Bunny and that starting in 1999, the latter brought together investors to invest in various real estate projects, including pass-through interests in loans originated by Mortgages Ltd.     According to the complaint, in 2005 Mortgages Ltd. CEO Scott Coles proposed to Radical Bunny that it loan money directly to Mortgages Ltd. instead of investing in particular pass through real estate assets. The complaint alleges that this arrangement gave Mortgages Ltd. access to an unsecured line of credit and that Radical Bunny made a number of loans to Mortgages Ltd. The Plaintiffs claim that from that point, Mortgages Ltd. and Radical Bunny were engaged in a joint venture and common enterprise. The complaint also stresses that despite this change in the relationship between Mortgages Ltd. and Radical Bunny, Radical Bunny continued to sell Mortgages Ltd. securities to investors, representing to them that they were investing in Mortgages Ltd. notes and deeds of trust, when in fact they were only investing in Radical Bunny.

The complaint also asserts that once Mortgages Ltd. began to spiral into insolvency, the Mortgages Ltd. began to abandon its traditionally conservative

- 2 -

underwriting practices. The complaint asserts that Mortgages Ltd. was only able to survive because it borrowed funds from its investors, including funds that the Defendants knew had been and were being raised through Radical Bunny in an unlawful and fraudulent manner.

### B. Allegations Regarding the Denning Defendants

The Plaintiffs allege that the Denning Defendants were part of the management team at Mortgages Ltd. The complaint alleges that these Defendants saw the financial excesses at Mortgages Ltd. and the allegedly illegal fundraising at Radical Bunny, but did nothing to warn investors. Rather, according to the complaint, the Denning Defendants assisted in preparing the private offering memoranda ("POMs") through which investor funds were solicited. The complaint alleges that the Denning Defendants knew that the POMs were false and misleading – that they did not disclose the true state of Mortgages Ltd.'s finances and the risk of the investments -- but took no steps to correct them.

### C. Allegations Regarding the Hirsch Defendants.

The Plaintiffs allege that the Hirsch Defendants had management roles at Radical Bunny and that they solicited investors for Mortgages Ltd. through those roles. The complaint asserts that the investments were a form of mortgage-backed security, but that these securities were unregistered and sold without a registration exemption. The complaint also asserts that the Hirsch Defendants offered and sold the securities although they were not licensed to do so. Furthermore, the Plaintiffs claim that the Hirsch Defendants sold these investments through false and misleading representations and omissions in offering materials and at investor meetings. According to the Plaintiffs, the Hirsch Defendants told Radical Bunny investors that they were investing in Mortgages Ltd. notes secured by an interest in certain Mortgages Ltd. deeds of trust and other assets. The Complaint alleges that the Hirsch Defendants did not disclose that there was no security agreement giving Radical Bunny investors any such security interest.

## II. The Complaint

Plaintiffs filed their complaint on May 11, 2010. The Plaintiffs Robert Facciola,

the Robert Maurice Facciola Trust, Honeylou C. Reznik, The Morris Reznik and Honeylou C. Reznik Trust, Jewel Box Loan Company, Inc., Jewel Box, Inc., H-M Investments, LLC, Fred C. Hagel and Jacqueline M. Hagel Revocable Living Trust, and Judith A. Baker filed the complaint individually and on behalf of all others similar situated. The Complaint asserts that Plaintiffs Facciola and Reznik sue on behalf of all persons who purchased or held investments issued by Mortgages Ltd. or the limited liability companies it managed between September 2005 and June 2008. The Complaint also states that Plaintiffs Hagel and Baker sue on behalf of all persons who purchased or held investments issued by Radical Bunny, LLC between September 2005 and June 2008.

The complaint names a number of Defendants, including individuals and corporations that were involved in counseling and managing Mortgages Ltd. and Radical Bunny. These include the two companies' legal counsel, Greenberg Traurig, LLP and Quarles and Brady, LLP; their auditors CBIZ, Inc., CBIZ MHM, LLC, and Mayer Hoffman McCann, PC. The complaint also names as defendants members of the senior management of the two companies, including Michael M Denning, who was president of Mortgages Ltd. and prior to that, the president of Mortgages Ltd. Securities LLC, along with his spouse Donna J. Denning; Todd S. Brown, who was allegedly Senior Vice President of Operations at Mortgages Limited, along with his wife, Cynthia D. Brown; Christopher Oslon, who was CFO and Vice President of Mortgages Ltd. and CFO of Mortgages ltd. Securities LLC prior to that, along with his wife Rachel L. Schwartz-Olson; Jeffrey A. Newman, who was President of Mortgages Ltd. Securities LLC and a Vice President of Mortgages Ltd., along with his wife Kathleen N. Newman; Tom Hirsch, who was a managing member of Radical Bunny, along with his wife Diane Rose Hirsch; Berta Friedman Walder and her husband Howard Evan Walder, who were managing members of Radical Bunny; Harish P. Shah, who was a managing member of Radical Bunny and his wife, Madhavi H. Shah.

The Complaint asserts eight counts, including numerous claims against the Denning and Hirsch Defendants: 1) Primary Statutory Liability Under A.R.S § 44-

- 4 -

1  2003(A), Arizona's Securities Fraud Statute; the Plaintiffs specifically allege that
2  Mortgages Ltd. and Radical Bunny through a joint venture violated A.R.S. §§ 44-
3  1991(A)(1) (2)and (3), that both the Denning and Hirsch Defendants violated A.R.S. §44-
4  1991(A)(1)(2) and (3) and A.R.S. §44-2003(A); 2) Statutory Control Liability for the
5  alleged Mortgages Ltd./ Radical Bunny frauds against both the Denning and Hirsch
6  Defendants under A.R.S. § 44-1999(B); 3) Aiding and Abetting the Mortgages
7  Ltd./Radical Bunny Statutory Securities Fraud against the Denning and Hirsch
8  Defendants; 4)Aiding and Abetting the Mortgages Ltd./Radical Bunny Breach of
9  Fiduciary Duties against both the Denning and Hirsch Defendants.
10    The complaint also includes claims for: 5) Negligent Misrepresentation and
11 Nondisclosure; 6) Primary Statutory Liability Under A.R.S. § 44-3241; 7) Aiding and
12 Abetting Violations of A.R.S. § 44-3241; 8) Common -Law Secondary Liability.  These
13 last four claims do not appear to name the Denning and Hirsch Defendants.

14 **III.    Motions to Dismiss**

15    On August 17, 2010, Defendant Greenberg Traurig lodged a motion to dismiss,
16 which it eventually filed on September 21, 2010.  On August 19, 2010, the Denning
17 Defendants and the Hirsch Defendants filed motions to dismiss. The motions make a
18 number of arguments and also join parts of the lodged Greenberg Traurig motion to
19 dismiss.  They seek dismissal of Plaintiffs' claims for Primary Liability under Arizona's
20 Securities Fraud Statute, Statutory Control Liability, Aiding and Abetting Statutory
21 Securities Fraud and Aiding and Abetting Breach of Fiduciary Duties.  The Plaintiffs filed
22 responses to both motions to dismiss and the Defendants filed responses.  The arguments
23 in the briefs are discussed in greater detail below.

24

25 **IV.    Legal Standard**

26    In evaluating a motion to dismiss, "all well-pleaded allegations of material fact are
27 taken as true and construed in a light most favorable to the nonmoving party." <u>Wyler</u>
28 <u>Summit Partnership v. Turner Broad. Sys. Inc.</u>, 135 F.3d 658, 661 (9th Cir. 1998).

1 However, "the court [is not] required to accept as true allegations that are merely
2 conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v.
3 Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  Likewise, "a formulaic
4 recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1965.

5       In addition, Fed.R.Civ.P. 9(b) requires that "[i]n alleging fraud or mistake, a party
6 must state with particularity the circumstances constituting fraud or mistake."  The
7 requirement to plead fraud with particularity ensures that the accused party has sufficient
8 notice of the specific misconduct that is allegedly fraudulent "so that they can defend
9 against the charge and not just deny that they have done anything wrong."  Bly-Magee v.
10 California, 236 F.3d 1014, 1019 (9th Cir. 2001).  It also protects the accused's reputation
11 from harm and minimizes costly fishing expeditions.  Id. at 1018.

12       "While statements of the time, place and nature of the alleged fraudulent activities
13 are sufficient, mere conclusory allegations of fraud are insufficient."  Moore v. Kayport
14 Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).  Plaintiffs' allegations of fraud
15 must be specific enough to "give the defendant notice of the particular misconduct which
16 is alleged to constitute the fraud charged so that they can defend against the charge and
17 not just deny that they have done anything wrong."  Semegen v. Weidner, 780 F.2d 727,
18 731 (9th Cir. 1985).  Thus, Plaintiffs' "[a]verments of fraud must be accompanied by "'the
19 who, what, when, where, and how'" of the misconduct charged."  Vess, 317 F.3d at 1106
20 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)); Neubronner v. Milken, 6
21 F.3d 666, 671 (9th Cir. 1993) ("The complaint must specify such facts as the times, dates,
22 places, benefits received, and other details of the alleged fraudulent activity.").

23       However, "[m]alice, intent, knowledge, and other conditions of a person's mind
24 may be alleged generally."  Fed.R.Civ.P. 9(b).  In addition, Plaintiffs need not "allege, in
25 detail, all facts supporting each and every instance of [fraud] over a multi-year period."
26 U.S. ex rel. Lee v. Smithkline Beecham, Inc., 245 F.3d 1048, 1051 (9th Cir. 2001) (citing
27 Cooper, 137 F.3d at 627).

28 **V.**    **Discussion**

- 6 -

**A.     The Securities Fraud Allegations**

**1.     Defendants' Claims that Plaintiffs' Failed to Plead Securities Fraud with Requisite Particularity**

The Denning and Hirsch Defendants both argue that the Plaintiffs have failed to plead securities fraud with requisite particularity. As previously noted, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiffs' allegations of fraud must be specific enough to "give the defendant notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Thus, Plaintiffs' "[a]verments of fraud must be accompanied by "'the who, what, when, where, and how'" of the misconduct charged." Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). Both sets of Defendants argue that the Plaintiffs' complaint fails to meet the standard under Rule 9(b).

Having reviewed the complaint, however, the Court finds that the Plaintiffs have pleaded securities fraud with the requisite particularly. The lengthy complaint spends approximately 24 pages detailing the alleged fraud at Mortgages Ltd. and Radical Bunny, and the roles of the Denning and Hirsch Defendants therein. The Complaint also clearly lays out allegations that Mortgages Ltd. and Radical Bunny were from 2005 until the collapse of Mortages Ltd., operating a joint venture, whereby Radical Bunny was lending money to Mortgages Ltd. to maintain an illusion that it had not financial problems, while continuing to sell investments purported to be backed by Mortgages Ltd. deeds of trust and that Radical Bunny made money from both the interest generated from the loans as well as the continued investments of radical bunny investors. These are specific factual allegations, restricted to a particular time period, regarding alleged misrepresentations in POMs, offering documents as well as investor meetings. The Plaintiffs allege that the Denning and Hirsch Defendants either participated in creating the POMs and offering documents or spoke at investor meetings. The complaint is clear that in the case of Radical Bunny and the Hirsch Defendants, the alleged misrepresentations include that

1 Radical Bunny was licensed to sell securities, when it was not, and that the investments
2 were mortgaged-back securities, when in reality they were not. The complaint is also
3 clear or sufficient in alleging that the misrepresentations in the case of Mortgages Ltd.
4 involved the omission of material information including the risk level of the investments
5 and the financial state of Mortgages Ltd. These detailed allegations meet the level of
6 particularity required by Rule 9(b) as they "give the defendant[s] notice of the particular
7 misconduct which is alleged to constitute the fraud charged so that they can defend
8 against the charge and not just deny that they have done anything wrong." Semegen v.
9 Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

10 The Hirsch Defendants also specifically argue that there are insufficient allegations
11 that the Plaintiffs had any contact with the Defendants or anyone at Radical Bunny to
12 support fraud allegations. The Court disagrees. As an initial matter, direct contact with
13 the Defendants is not necessary to support allegations under Arizona's fraud statute.
14 Barnes v. Vozack, 113 Ariz. 269, 274, 550 P.2d 1075 (1976). Moreover, the Plaintiffs
15 have alleged in part that each of the Hirsch Defendants participated in preparing Radical
16 Bunny Offering Documents and that these offering documents represented to Plaintiffs
17 Hagel, Backer and other investors that the their investment was collateralized by the
18 beneficial interest under various deeds of trust held by Mortgages Ltd. Even if some
19 contact needed to be alleged, these allegations would be sufficient to support fraud
20 allegations against the Hirsch Defendants.

21 The Denning Defendants also make a related argument that the Plaintiffs have
22 engaged in impermissible shotgun or puzzle pleading, in which the individual counts
23 broadly incorporate the Plaintiffs' entire 120-page complaint, so that they are required to
24 comb through the complaint and determine which allegations correspond to the alleged
25 claims. This type of pleading, they argue, fails to comport with the particularity
26 requirements of rule 9(b). They cite a number of cases, including In re Metropolitan Sec.
27 Litig., 532 F. Supp.2d 1260, 1269 (E.D. Wash. 2007), In re GlenFed, 42 F.3d 1541, 1554
28 (9th Cir. 1994) and Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279-80 (11th

1  Cir. 2006), and others, which hold in part, that merely incorporating the allegations of a
2  long, rambling and confusing complaint is not sufficient for purposes of 9(b).  The
3  complaint in this case, while long, is neither rambling nor confusing.  As stated above, the
4  allegations against the Hirsch and Denning Defendants are fairly straight forwar, clear
5  and are detailed in approximately 24 pages.  Therefore, although this complaint does bear
6  some elements of puzzle or shotgun pleading, the Court does not find the complaint so
7  unruly that it is difficult for the Denning and Hirsch Defendants to determine which
8  allegations support which claims or to properly formulate an answer to the complaint.
9  Accordingly, the motion to dismiss on this basis is denied.

**2. Defendants' Claim that Plaintiffs Failed to Adequately Allege Participation in or Inducement of the Fraudulent Sale of Securities under A.R.S. § 44-2003(A)**

12    The Denning Defendants argue that the Plaintiffs have not adequately alleged they
13  participated in or induced the fraudulent sale of securities under A.R.S. **§** 44-2003(A)**.**
14  The Hirsch Defendants similarly argue that the Plaintiffs have not particularized the
15  individual conduct of each of the Hirsch Defendants from which they can infer
16  participation in or inducement of fraud. Section 44-2003(A) broadly authorizes actions
17  against "any person...who made, participated in or induced the unlawful sale or purchase"
18  of securities. A.R.S. § 44-2003(A).  This statute, intended as a remedial measure for the
19  protection of the public, is to be liberally construed.   See Grand v. Nacchio, 225 Ariz.
20  171, 236 P.3d 398, 401-402 (2010).

21    The Plaintiffs allege that the Denning Defendants were managers and officers of
22  Mortgages Ltd. during the relevant time period, that they read and assisted in the
23  preparation of Mortgages Ltd. POMs provided to investors that are alleged to have been
24  misleading, while knowing that the POMs omitted information about the risk of the
25  investment and the financial state of Mortgages Ltd.. These allegations are sufficient
26  under the liberally construed A.R.S. §44-2003(A) to support a claim of participating or
27  inducing the lawful sale of securities at this early stage.
28    With regard to the Hirsch Defendants, the Plaintiffs allege that each of them made

- 9 -

1 investor presentations that misrepresented investments as loan participations
2 collateralized by beneficial interests in deeds of trust, that they were violating Arizona
3 and federal securities laws by selling investments without registering a securities
4 salespersons, that they knew about the improper activities of Radical Bunny and
5 Mortgages Ltd. but participated in preparing Radical Bunny offering documents
6 disclosing that the company was selling unregistered securities and by selling investments
7 for Mortgages Ltd. without registering as a securities dealer.  There are additional specific
8 allegations regarding Defendant Hirsch's dealing with Mortgages Ltd. and Mr. Coles,
9 however, even these allegations regarding all three Hirsch Defendants' misrepresentations
10 regarding the investments they were selling are, in light of the liberal construction to be
11 given A.R.S. § 44-2003(A), sufficient to support claims that the Hirsch Defendants
12 participated or induced the sale or purchase of securities at this stage.

### 3. Denning Defendants' Claim that Plaintiffs Failed to Plead A.R.S. § 44-1991(A)(1) Claims with Scienter

The Denning Defendants also attempt to join Greenberg and Traurig's argument that the Plaintiffs have failed to plead A.R.S. § 44-1991(A)(1) claims with scienter and in accordance with A.R.S. § 44-2882 (B).  Other than to state that they join Greenberg Traurig's motion on this point, however, the Denning Defendants (unlike Greenberg Traurig) offer no further elaboration on why the allegations against them are deficient in this regard.  The Denning Defendants, as alleged officers and at Mortgages Ltd,. are in a sufficiently different position from Greenberg Traurig, who served as counsel for Mortgages Ltd. and the allegations against them sufficiently different, that the mere joinder of Greenberg Traurig's motion is insufficient to dismiss the claims.   Without any analysis of the actual allegations from the Denning Defendants on this point, the Court finds that the Plaintiffs have sufficiently pleaded facts supporting the requisite scienter with regard to these Defendants.  The Plaintiffs alleged that the Denning Defendants were aware that the POMs produced by the company and distributed to investors did not include material information about the state of Mortgages Ltd.  Construing these

- 10 -

allegations in the light most favorable to the Plaintiffs, they are sufficient to support the inference that the Denning Defendants acted knowingly or recklessly in allowing materially misleading POMs to be distributed to investors. The Court will, therefore, deny the Denning Defendants' motion on this point.

### 4. Denning Defendants' Claims that A.R.S. § 44-1991(A)(1) and (3) Does not Extend Liability to Misleading Disclosures or Material Omissions

The Denning Defendants also join the portion of Greenberg Traurig's motion arguing that Plaintiffs have failed to state a claim under A.R.S. §44-1991(A). Once again, the Defendants do not specify which portion of this long section they join, nor do they provide their own analysis. The only aspect of Greeberg Traurig's argument that appears relevant to them, however, is Greenberg Traurig's claim that A.R.S. §44-1991 (A)(1) (targeting fraudulent schemes) and (3) (targeting fraudulent courses of business) do not extend liability for misleading disclosures or material of omission. To support this claim, Greenberg Traurig cites federal court decisions from the Second Circuit, interpreting the parallel federal securities fraud provision of Rule 10(b)-5 and concluding that the Rule does not apply to misleading disclosures or omissions.

In response, the Plaintiffs point to other federal authority indicating that the parallel portions of Rule 10b-5 do in fact apply to improper disclosure. See Affiliated UTE Citizens of Utah. v. U.S., 406 U.S. 128, 153 (1972); SEC v. Rogers, 790 F.2d 1450, 1459 (9th Cir. 1986). The Plaintiffs also point to general authority indicating that Arizona's securities laws are broader than federal laws, aiming at full disclosure and broad public protection. Most importantly, the Plaintiffs cite to an Arizona Court of Appeals decision indicating that the portions of the statute pertaining to scheme to defraud and course of business which operates as fraud or deceit does extend misleading omissions of material fact. See Trimble v. Am. Sav. Life Ins. Co., 152 Ariz. 548, 553, 733 P.2d 1131, 1136 (App. 1986) (quoting all three sections of §44-1991 including (1) and (3), and noting that defendant company violated the statute by implementing a

- 11 -

1 sophisticated scheme to defraud purchasers through improper accounting practices,
2 financial statements which greatly inflated the company's assets, and the use of stock
3 dividends to project the illusion of growth, which were omissions of material fact).
4 Accordingly, the Court will not dismiss the Plaintiffs' claims on this basis.

**B.     Denning Defendants' Claim that Plaintiffs Failed to State a Claim for Control Person Liability**

7    The Denning Defendants also argue that the Plaintiffs have failed to state a claim
8 for control person liability and that this claim should be dismissed.  The Arizona
9 Securities Act attaches vicarious or secondary liability to "controlling persons" as it does
10 to a person or entity that commits a primary violation of §§ 44-1991 or 1992. A.R.S. §44-
11 1999(B).  Section 44-1999(B) imposes presumptive liability for "[e]very person who,
12 directly or indirectly controls any person liable for a violation of §§ 44-1991 or 44-
13 1992..."  Like other portions of the Arizona Securities Act, this section should be
14 "liberally construed to effect its remedial purpose of protecting the public interest."
15 Eastern Vanguard Forex Ltd., 206 Ariz. 399, 411, 79 P.3d 86, 97 (App. 2003).   Arizona
16 courts have held that controlling person need not have actually participated in the specific
17 action upon which the securities violation is based.  Eastern Vanguard, 206 Ariz. at 412,
18 79 P.3d at 99.

19    The Denning Defendants argue that because the Plaintiffs have failed to state a
20 claim under A.R.S. §44-1991, and control person liability is predicated on a primary
21 violation of Arizona securities laws, this claim must fail.   As the Court has already
22 indicated, however, the Plaintiffs have stated a claim under A.R.S. §44-1991.  Even if the
23 Plaintiffs had failed to provide sufficient allegations to support fraud claims against these
24 specific Plaintiffs, however, that would not mean that they failed to state a claim for
25 control person liability for a fraud committed by Mortgages Ltd.  The Plaintiffs allege
26 that Mortgages Ltd. provided investors with information about investments in the form of
27 POMs that were materially misleading and omitted information that was material to
28 investors.  Alleging that the Denning Defendants have control person liability over this

alleged fraud committed by Mortgages Ltd. would not require the Plaintiffs to properly allege that the Denning Defendants are also primarily responsible for the fraud. On the contrary, the purpose of controlling person liability is "to impose accountability on those actors who had the authority to control primary violators but were not legally liable under extant legal principles." Eastern Vanguard, 206 Ariz. at 412, 79 P.3d at 99.

The Denning Defendants also argue that the Plaintiffs must show that the alleged controlling person had the legal power, individually or as part of a control group to control the activities of the primary violator. As an initial matter, titles can be sufficient to allege control person liability under the Arizona statute since "control liability may be premised on the power to control and does not require actual participation in the wrongful conduct." Id. (finding that individuals could be liable as "control persons" based on their status as sole shareholders and officers and directors of company). Moreover, the Denning Defendants are incorrect in stating that the Plaintiffs have only alleged in a conclusory fashion that they controlled the primary violators. The fraud that the Plaintiffs allege was committed by Mortgages Ltd. took place in the form of materially misleading information that was provided to investors, including through POMs. They have also alleged not only that the Denning Defendants had the ability to prevent the material omissions, but that they participated in creating and reviewing the POMs. These allegations are sufficient support claims of control person liability pursuant to A.R.S. 44-1991.

### C. Defendants' Claims that Aiding and Abetting Securities Fraud Is not a Cognizable Claim under Arizona Law

Both the Hirsch and Denning Defendants argue that aiding and abetting securities fraud is not a cognizable claim under Arizona law. They join in Greenberg Traurig's argument on this point. The Defendants stress that there is good reason to conclude that if faced with the issue today, the Arizona Supreme Court would rule that there is no claim for aiding and abetting a violation of §44-1991. In support of this argument, the Defendants point to the fact that the United States Supreme Court has held that the federal

- 13 -

1 anti-fraud securities statutes do not allow for aiding and abetting liability.  See Central
2 Bank of Denver, N.A. v. First Interstate Bank of Denver, 511 U.S. 164, 177-78 (1994).
3 They also stress that both the Arizona legislature and Supreme Court have indicated that
4 in interpreting the state securities statute, courts may (or should)  use federal or other
5 courts' interpretation of substantially similar provisions.  See State v. Gunnison, 618 P.2d
6 604, 606-607 (Ariz. 1980).  The Arizona Supreme Court has also explicitly recognized
7 that A.R.S 44-19991 is almost identical to the anti-fraud provision in the federal securities
8 statutes.   Therefore, the Denning and Hirsch Defendants conclude that this Court should
9 read the statute not to provide for aiding and abetting liability.

10 The problem with this argument, however, is that the Arizona Supreme Court has
11 previously ruled that there is a cause of action for aiding and abetting securities fraud
12 under the state statute.  See, State v. Superior Court, 599 P.2d 777, 784 (Ariz. 1979),
13 overruled on other grounds by State v. Gunnison, 618 P.2d 604, 607 (Ariz. 1980).  Given
14 this clear precedent, which neither the Arizona legislature nor the Arizona Supreme Court
15 has overturned, it would be improper for this Court to impose its own interpretation of the
16 statute.  See, West v. Am Tel. & Tel Co., 311 U.S. 223, 236 (1940) ("When [the highest
17 court of a state] has spoken, its pronouncement is to be accepted by federal courts as
18 defining state law unless it has later given clear and persuasive indication that its
19 pronouncement will be modified, limited or restricted."); Meusy v. Montgomery Ward
20 Life Ins. Co., 943 F.2d 1097, 1099 ( 9th Cir. 1991) ("We are bound to follow the
21 decisions of a state's highest court in interpreting that state's law.") see also., Wojtunik v.
22 Kealy, 394 F. Supp. 2d 1149, 1170 (D. Ariz. 2005) (noting that State v. Superior Court is
23 still prevailing law).  Accordingly, the Court will not dismiss this claim.

  **D.**  **Defendants' Claim that the Plaintiffs Have Failed to State a Claim for Aiding and Abetting Breach of Fiduciary Duty**

    **1.**  **Failure to Allege Existence of Fiduciary Duties**

The Hirsch and Denning Defendants both argue that the Plaintiffs have failed to adequately plead that either Mortgages Ltd. or Radical Bunny owed a fiduciary duty to

- 14 -

1 their investors, so that the claim for aiding and abetting breach of fiduciary duty should be
2 dismissed.  Both sets of Defendants join the Greenberg Traurig motion on this point.
3 	The Plaintiffs have alleged that Mortgages Ltd. and Radical Bunny were agents of
4 their investors as well as managers and promoters of their investments or alleged joint
5 venture.  The Plaintiffs have certainly alleged sufficient facts to support these general
6 assertions.  The Plaintiffs also assert that these various roles gave Mortgages Ltd. and
7 Radical Bunny fiduciary duties towards investors.  See, e.g., Johnson v. Nychyck, 21
8 Ariz. App. 186, 188, 517 P.2d 1079, 1081 (1974) ("[A] finding that the defendants were
9 promoters is a finding that they occupied a fiduciary relationship with the investors in the
10 venture."); SEC v. Rauscher Pierce Refsnes, Inc., 17 F. Supp.2d 985, 992 (D. Ariz. 1988)
11 ("The Arizona Supreme Court has held that a confidential relationship exists between a
12 client and his or her financial adviser when there is an imbalance of knowledge so that the
13 client relies heavily on the adviser for advice.")  Whether and to what extent Mortgages
14 Ltd. and Radical Bunny actually were agents, promoters and to what extent an imbalance
15 of knowledge existed such that investors relied heavily on Mortgages Ltd. and Radical
16 Bunny for advice are questions of fact.  See Schenks v. Earnardt Ford Sales Co., 9 Ariz.
17 App.555, 557, 454 P.2d, 873, 875 (App. 1969); see also Standard Chartered PLC v. Price
18 Waterhouse, 190 Ariz. 6, 945 P.2d 317 (App. 1996) ("the existence of a fiduciary duty is
19 generally a question of fact"); Gemstar Ltd. v. Ernst & Young, 185 Ariz. 493, 917 P.2d
20 222 (1996) (whether a confidential relationship exists is generally a question of fact").
21 Therefore, the Court will not dismiss this Count on this basis at this time.

22 	**2.	Failure to Allege Knowledge or Substantial Assistance**

23 	Claims of aiding and abetting abetting tortious conduct require proof of three
24 elements: 1) the primary tortfeasor must commit a tort that causes injury to the plaintiff;
25 2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of
26 duty; and 3) the defendant must substantially assist or encourage the primary tortfeasor in
27 the achievement of the breach.  Wells Fargo Bank v. Ariz. Laborers, Teamsters and
28 Cement Masons Local No. 395 Pension Trust Fund, 201 Ariz. 474, 485, 38 P.3d 12, 23

1  (2002) (citing Gomez v. Hensley, 145 Ariz. 176, 178, 700 P.2d 874, 876 (App. 1984))
2  The Denning and Hirsch Defendants argue that the Plaintiffs have not alleged facts
3  supporting the second and third elements.  They argue that the Plaintiffs have failed to
4  assert that the Defendants either knew of any duty owed by Mortgages Ltd. or Radical
5  Bunny or that they knew that the companies' conduct violated any fiduciary duty owed to
6  the Plaintiffs.  The Defendants further claim that the Plaintiffs have not pled any facts
7  which demonstrate that each of the individual Defendants substantially assisted or
8  encouraged either Mortgages Ltd. or Radical Bunny in the achievement of the breach.
9        The Plaintiffs, however, do allege knowledge, albeit in a conclusory fashion.  In
10  any case, the Plaintiffs have alleged sufficient facts from which knowledge and
11  substantial assistance may be inferred.  Dawson v. Withycombe, 216 Ariz. 84, 163 P.3d
12  1034 (App. 2007) (knowledge may be inferred from the circumstances presented); Wells
13  Fargo Bank, 201 Ariz. 474, 38 P.3d 12 (2002) ("such knowledge may be inferred from
14  the circumstances").  The Plaintiffs assert, for example, that Mortgages Ltd. breached its
15  alleged fiduciary duties by disseminating false and misleading information to Mortgages
16  Ltd. and (Radical Bunny) investors about the financial state of the company and the
17  riskiness of its investments.  The Plaintiffs also allege that the Denning Defendants were
18  aware that the information being disseminated was false and that they were in a position
19  to control the contents of the POMs.  Those allegations are sufficient to support an
20  inference of knowledge as well as assistance, so that this claim can survive a motion to
21  dismiss.
22        With regard to the Hirsch Defendants, the allegations in the complaint are that they
23  had numerous indications that Mortgages Ltd. was not solvent and provided financing in
24  inconventional arrangements, knowing that this allowed Mortgages to maintain the
25  appearance of solvency, while simultaneously recruiting investors to invest in Mortgages
26  Ltd. through Radical Bunny and representing to investors that Mortgages Ltd. had never
27  missed a principal payment.  The Plaintiffs also allege that the Hirsch Defendants
28  misrepresented to Radical Bunny investors that they were investing in mortgaged back

securities, when in reality they were not. Again, the Plaintiffs' allegations are sufficient to support an inference of knowledge and substantial assistance adequate to survive a motion to dismiss. Wells Fargo, 201 Ariz. at 489, 38 P.3d at 27 ("[e]vidence of business strategies undertaken by [defendant] to prolong [the primary actors'] financial life," raised an inference that defendant Bank "knew of, and gave substantial assistance" to the primary violation); Woodward v. Metro bank of Dallas, 522, F.2d 84, 97 (5th Cir. 1975); Woods v. Bank of Fort Lauderdale, 765 F.2d 1004, 1012 (11th Cir. 1985) (knowing assistance can be inferred form atypical business actions; Neilson v. Union Bank of California, 290 F. Supp.2d 1101, 1120-21 (C.D. Cal. 2003).[1]

/ / /

---

[1] The Hirsch Defendants also join a portion of Greenberg Traurig's motion, which they claim argues that the Plaintiffs' claims for securities fraud, control person liability, aiding and abetting securities fraud and aiding and abetting breach of fiduciary duties are all dependent upon the assertion that Mortgages Ltd. and Radical Bunny operated as a joint venture. The Hirsch Defendants, however, appear to mischaracterize Greenberg Traurig's argument, which was only that the Plaintiffs' joint venture allegations do not save the fraud claims Greenberg Traurig claimed had not been adequately pled. In any event, the Court does not find that Plaintiffs' claims for securities fraud, control person liability, aiding and abetting securities fraud and aiding and abetting breach of fiduciary duties are entirely dependent upon their joint venture theory. The Plaintiffs allege that the Hirsch Defendants committed securities fraud in part by misrepresenting the nature of the investments sold to Radical Bunny investors. The Plaintiffs also allege in part that the Hirsch Defendants aided and abetted the securities fraud violations allegedly committed by Radical Bunny against Radical Bunny investors. The Plaintiffs also allege that the Hirsch Defendants aided and abetted both Radical Bunny's and Mortgages Ltd.'s alleged breaches of fiduciary duty. None of these theories of liability necessarily requires a joint venture between Radical Bunny and Mortgages Ltd. and the Hirsch Defendants have provided no authority indicating otherwise.

Accordingly,

**IT IS HEREBY ORDERED**, denying the Denning and Hirsch Defendants' Motions to Dismiss. (Docs. 81 and 83).

DATED this 31st day of March, 2011.

_____
Mary H. Murgula
United States District Judge