MORGAN, LEWIS & BOCKIUS LLP
ROBERT E. GOODING, JR. (*admitted pro hac vice*)
rgooding@morganlewis.com
SCOTT B. GARNER (*admitted pro hac vice*)
sgarner@morganlewis.com
SHAWN M. KENNEDY (*admitted pro hac vice*)
skennedy@morganlewis.com
5 Park Plaza, Suite 1750
Irvine, CA  92614
Tel:  949.399.7000
Fax:  949.399.7001

STEPTOE & JOHNSON LLP
FRANCIS J. BURKE, JR. (SBN 010570)
fburke@steptoe.com
MICHELLA A. KRAS (SBN 022324)
mkras@steptoe.com
Collier Center
201 East Washington Street
16th Floor
Phoenix, Arizona  85004
Telephone:  602.257.5200
Facsimile:  602.257.5299

Attorneys for Defendant Quarles & Brady LLP

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ROBERT FACCIOLA, *et al.*,<br><br>             Plaintiffs,<br><br>       vs.<br><br>GREENBERG TRAURIG, LLP, a New York limited liability partnership, *et al.*,<br><br>             Defendants. | Case No. 2:10-cv-01025-FJM<br><br>**QUARLES & BRADY LLP'S OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................... 1

    A. Brief Factual Background ......................................................................... 1

    B. Relevant Procedural History ...................................................................... 4

III. PLAINTIFFS' PROPOSED AMENDMENT WOULD BE FUTILE. ................... 5

    A. Plaintiffs' Proposed Amended Section 44-2003(A) Claim Suffers from the Same Deficiencies as the Same Claim Alleged in Their Original Complaint. ..................................................................................... 6

    B. Plaintiffs' Proposed Amended Claim for Aiding and Abetting Securities Fraud Does Not Cure the Deficiencies this Court Already Found as a Matter of Law ........................................................................... 11

IV. CONCLUSION .................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 7, 8

*Easter v. Am. West Fin.*,
  381 F.3d 948 (9th Cir. 2004) ........................................................................ 10

*Grand v. Nacchio*,
  222 Ariz. 498, 217 P.3d 1203 (Ct. App. 2009) .............................................. 6

*In re Am. Cont'l Corp.*,
  794 F. Supp. 1424 (D. Ariz. 1992) ............................................................... 12

*Lewis v. Casey*,
  518 U.S. 343 (1981) ............................................................................... 10, 11

*Moore v. Kanter*,
  No. CV-10-0652, 2011 U.S. Dist. LEXIS 22559
  (D. Ariz. Mar. 4, 2011) .................................................................................. 5

*Newport v. Dell Inc.*,
  No. CIV 08-096, 2008 U.S. Dist. LEXIS 83292
  (D. Ariz. Oct. 17, 2008) ............................................................................... 10

*Nunes v. Ashcroft*,
  375 F.3d 805 (9th Cir. 2003) ......................................................................... 5

*Robinson v. Bank of New York Mellon*,
  No. CV 10-1829, 2011 U.S. Dist. LEXIS 26722
  (D. Ariz. Mar. 4, 2011) .................................................................................. 5

*Standard Chartered PLC v. Price Waterhouse*,
  190 Ariz. 6, 945 P.2d 317 (Ct. App. 1996) .................................................... 6

*Stern v. Charles Schwab & Co.*,
  No. CV-09-1229-PHX-DGC, 2010 U.S. Dist. LEXIS 38395
  (D. Ariz. Mar. 24, 2010) .............................................................................. 11

*Townsend v. Univ. of Alaska*,
  543 F.3d 478 (9th Cir. 2008),
  *cert. denied*, 129 S. Ct. 1907 (2009) ............................................................ 5

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons*,
  201 Ariz. 474, 38 P.3d 12, (2002) ................................................................ 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

**Other Authorities**

A.R.S. § 44-2003(A) ................................................................................................. passim

Fed. R. Civ. P. Rule 9(b) ..................................................................................................... 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

iii

DB2/ 22544911.4

## I. INTRODUCTION

Plaintiffs mistakenly believe they can cure the many legal deficiencies in their original 121-page complaint by adding another 54 pages of what essentially are the same allegations. But quantity does not equal quality. Most of Plaintiffs' purported "new" allegations are just rehashes of their original allegations, spun in a slightly different light. Plaintiffs still do not – and cannot – plead the required elements of inducement or participation to state a claim for primary statutory liability under A.R.S. § 44-2003(A) or substantial assistance or knowledge to state a claim for aiding and abetting securities fraud. Plaintiffs' proposed first amended complaint would fail as a matter of law for the same reasons its original complaint failed, as this Court held in its June 9, 2011 Order. Hence, Plaintiffs' proposed amendment would be futile.

Accordingly, as more fully discussed below, Plaintiffs' motion for leave to amend should be denied.

## II. BACKGROUND

### A. Brief Factual Background

As alleged by Plaintiffs in their original complaint, defendant Quarles & Brady LLP ("Quarles") was retained by Radical Bunny, LLC ("RB") in February 2007 to advise it in connection with its fundraising activities and loans to Mortgages Ltd. ("ML") and, specifically, to assist it in becoming compliant with the securities laws. Original Complaint (doc. 1) ("Compl."), ¶ 149. Since 1999, RB (originally through a predecessor entity called Horizon Partners) had been raising money from investors, which it then loaned to ML in exchange for pass-through interests in various deeds of trust issued to ML by ML's construction borrowers. *Id.* at ¶ 59. Beginning in 2005, however, RB's business model changed. Rather than invest in ML's deeds of trust through pass-through interests, RB instead began raising money from investors in order to make unsecured loans to ML, with RB retaining the spread between what ML paid RB and what RB paid its investors. *Id.* at ¶¶ 60-61.

By the time RB first contacted Quarles in January 2007, RB already had raised

$140 million for ML from 700 investors. *Id.* at ¶¶ 145, 147. Moreover, as alleged by Plaintiffs, since at least 2005, ML "was insolvent and on the path to bankruptcy," and ML's and RB's entire operation had become a Ponzi scheme. *Id.* at ¶¶ 5, 9. Prior to contacting Quarles, RB had been advised by, among others, ML's lawyer from Greenberg Traurig, Robert Kant, that the manner in which RB was raising money likely was in violation of securities laws. *Id.* at ¶ 137.

Upon being retained by RB, Quarles identified two issues that needed to be addressed: (1) whether RB was selling unregistered securities and, if so, whether there was an applicable exemption under state and federal securities law; and (2) whether the loans that RB was representing to investors as fully collateralized by ML's assets in fact were secured. *Id.* at ¶¶ 146-49, 151-52. By May 2007, Quarles had concluded – and so advised RB – that RB was selling unregistered securities and that no exemption applied (*id.* at ¶¶ 152, 254), and that, notwithstanding its contrary representations to investors, RB and its investors did not have a perfected security interest in ML's assets. *Id.* at ¶¶ 252, 278. As Quarles partner Chris Hoffmann later testified before the SEC, he told RB's principals that they had to stop selling securities, and further advised them to disclose their violations to the SEC and the Arizona Securities Division and to retain criminal and civil counsel to deal with past violations. *Id.* at ¶¶ 21, 153, 254. RB's principals told Hoffmann that they did not want to disclose their past violations, but that they wanted to become compliant with the securities laws going forward. *Id.* at ¶¶ 22, 154.

Consistent with the focus on making RB compliant going forward, Quarles attorney Robert Bornhoft spent the next several months trying to negotiate a deal with ML that would provide RB and its investors with a security interest in ML's assets. *Id.* at ¶¶ 252, 279-83. Ultimately, Bornhoft was unsuccessful. In fact, as alleged in the Complaint, ML's then-president, Michael Denning, stated that there was "'[n]ot a snowball's chance in you know where' that [ML] would grant the security interest belatedly sought by [RB].'" *Id.* at ¶ 282.

At the same time Bornhoft was trying to obtain a security interest in ML's assets

for RB, Quarles attorneys Chris Hoffmann and Gary Shullaw were beginning to put together draft documents that could be used in future offerings once certain prerequisites were met, including RB's obtaining a valid and perfected security interest in ML's assets. *Id.* at ¶¶ 180-81. Among the documents Quarles prepared and forwarded to RB were draft interim risk disclosures as well as a draft document entitled "Investor Subscription Procedures," a "process summary," and "flow charts." *Id.* at ¶¶ 180, 259, 340.

On August 13, 2007, ML, RB, and their respective attorneys (Greenberg Traurig and Quarles) held an all-hands meeting to discuss re-structuring their relationship to bring RB into compliance with the securities laws. *Id.* at ¶¶ 161-64. Plaintiffs alleged in the original complaint that "the primary subject at the August 13 meeting" was "Radical Bunny's . . . ongoing sales." *Id.* at ¶ 185. As alleged by Plaintiffs in their original complaint, at the meeting the parties "went through the numbers, including in particular the fact that RB's loans to ML had by then increased to about $160 million" from $140 million in January 2007. *Id.* at ¶ 162. To drive his point home about the need for RB to become compliant with the securities laws, Greenberg Traurig lawyer Robert Kant told RB principal Tom Hirsch, "'[t]hey put people in jail for this.'" *Id.* at ¶ 161. The end result of the August 13, 2007 meeting was that the parties agreed that Kant would draft a private offering memorandum ("POM") for RB. *Id.* at ¶ 164. That POM, however, was never completed. *Id.* at ¶ 172.

On June 3, 2008, the day after ML's CEO, Scott Coles, committed suicide, Hirsch contacted Bornhoft about representing RB in connection with an expected "run on the bank" by investors. *Id.* at ¶ 292. During a June 9, 2008 call between Quarles and the RB principals, Hirsch "acknowledged that RB had continued to sell securities on behalf of ML since the time Quarles began representing RB more than a year earlier." *Id.* at ¶ 294. The day after that call, on June 10, 2008, Quarles sent a formal termination letter to RB. *Id.* at ¶ 295.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

3

DB2/ 22544911.4

### B.     Relevant Procedural History

Plaintiffs filed their original complaint on May 11, 2010, alleging claims against Quarles, Greenberg, Mayer Hoffmann, and CBIZ, as well as against a number of RB and ML principals, officers, and employees.  Against Quarles, Plaintiffs alleged claims for (1) Primary Statutory Liability under A.R.S. § 44-2003(A), (2) Aiding and Abetting Statutory Securities Fraud, (3) Aiding and Abetting Breach of Fiduciary Duties, (4) Negligent Misrepresentation and Nondisclosure, (5) Primary Statutory Liability under A.R.S. § 44-3241, and (6) Aiding and Abetting Violations of A.R.S. § 44-3241.

Quarles filed a Rule 12(b)(6) motion to dismiss each of these claims on August 19, 2010.  (Doc. 78.)  With respect to the claim for Primary Statutory Liability under A.R.S. § 44-2003(A), Quarles argued that Plaintiffs failed to allege facts that would allow the Court to "draw [a] reasonable inference" that Quarles had participated in RB's ongoing securities law violations.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Similarly, with respect to Plaintiffs' claim for Aiding and Abetting Securities Fraud, Quarles argued that Plaintiffs had not sufficiently pleaded the elements of knowledge and substantial assistance.[1]

In response to Quarles' motion, Plaintiffs pointed the Court to those of its allegations in the complaint which they believed met the pleading requirements to establish participation (for liability under A.R.S. § 2003(A)) and knowledge and substantial assistance (for liability for aiding and abetting securities fraud).  Response to Motion to Dismiss (Doc. 94).  Plaintiffs also argued that:

> To any extent the Court concludes that more detail specific as to Quarles is required, Lead Plaintiffs respectfully request leave to amend consistent with the illustrative narrative submitted as Exhibit A.  *See Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (leave to amend is to be allowed with extreme liberality); [*Teamsters Local 617 Pension and Welfare Funds v.] Apollo Group[, Inc.]*, 633 F. Supp. 2d [763,] 831-32 [(D.C. Ariz. 2009)] (same); *Wojtunik* [*v. Kealy*], 394 F. Supp. 2d [1149,] 1173

---

[1] Quarles also presented arguments against Plaintiffs' other claims, but, as explained below, those claims are not at issue in the instant motion.

[(D.C. Ariz. 2005)] (same).

*Id.* at 29:1-6 & Ex. A. Plaintiffs attached to their Response a 33-page document entitled "Additional Factual Detail for the Claims against Quarles," in which they detailed additional facts they proposed to add to any first amended complaint that might be necessitated by the Court's ruling on Quarles' motion to dismiss. (Doc. 94-1.)

On June 9, 2011, the Court issued an Order granting Quarles' motion to dismiss in its entirety. (Doc. 200.) Plaintiffs filed their Motion for Leave To File First Amended Complaint ("Motion for Leave") (doc. 216) on July 1, 2011.

### III. PLAINTIFFS' PROPOSED AMENDMENT WOULD BE FUTILE.

Although courts apply a presumption in favor of granting leave to amend, the presumption can be defeated by a showing that amendment would be futile. *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003) ("Futility alone can justify the denial of a motion for leave to amend."); *Robinson v. Bank of New York Mellon*, No. CV 10-1829, 2011 U.S. Dist. LEXIS 26722, at *3-4 (D. Ariz. Mar. 4, 2011) (finding that a "proposed amendment is futile if it would not withstand a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P.") (citing *Townsend v. Univ. of Alaska*, 543 F.3d 478, 486 n.6 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1907 (2009)); *see also Moore v. Kanter*, No. CV-10-0652, 2011 U.S. Dist. LEXIS 22559, *1-2 (D. Ariz. Mar. 4, 2011) (denying motion for reconsideration of order dismissing part of a complaint and denying leave to amend because proposed amendment did not resolve deficiencies of prior complaint and would be futile). Here, Plaintiffs' proposed first amended complaint ("FAC") (doc. 217) adds nothing to the analysis this Court already made in granting Quarles' motion to dismiss; accordingly, the amendment would be futile.

Plaintiffs seek leave to amend only two of its previously dismissed claims – Primary Statutory Liability under A.R.S. § 44-2003(A) and Aiding and Abetting Statutory

Securities Fraud.[2]

### A. Plaintiffs' Proposed Amended Section 44-2003(A) Claim Suffers from the Same Deficiencies as the Same Claim Alleged in Their Original Complaint.

The Arizona Securities Act, A.R.S. § 44-1991(A), makes it unlawful for a person, in connection with the sale or purchase of securities, to do any of the following:

> (1) Employ any device, scheme or artifice to defraud.
>
> (2) Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.
>
> (3) Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

A.R.S. § 44-1991(A). Section 44-2003(A) extends civil liability under Section 44-1991(A) to persons "who made, participated in or induced the unlawful sale or purchase." A.R.S. § 44-2003(A).

In its June 9, 2011 Order, the Court stated the standards for determining "participation" and "inducement":

> To "participate in" means "to take part in something" or "have a part or share in something." Grand v. Nacchio, 222 Ariz. 498, 500-01, 217 P.3d 1203, 1205-06 (Ct. App. 2009) (Grand I) (quoting Standard Chartered PLC v. Price Waterhouse, 190 Ariz. 6, 21, 945 P.2d 317, 332 (Ct. App. 1996)). "Participation" under A.R.S. § 44-2003(A) requires something more than activities that are merely "tangentially related to and concurrent with [an]ongoing sale." Standard Chartered, 190 Ariz. at 21, 945 P.2d at 332.
>
> "Induce" under the Act means to "persuade" or "prevail." Id. However, the statute is not so broad as to encompass "any outsider to a securities transaction – no matter how remote from the transaction – who provided information that foreseeably contributed to, and thereby *influenced*, a buyer or seller's decision to engage in the transaction." Id. (emphasis in original). Instead, some "purposeful persuasive effort" is required. Id. at 22, 945 P.2d at 333.

---

[2] Plaintiffs re-plead their other claims against Quarles "solely to preserve their rights to appeal [the Court's June 9, 2011] ruling." *E.g.*, FAC at ¶ 594. Thus, Quarles does not address those other claims here.

June 9, 2011 Order at 4:16-27. The Court also stated, "Claims arising under § 44-1991(A) must also satisfy § 44-2082(A) and (B), which contain a heightened pleading standard similar to Rule 9(b), Fed. R. Civ. P." *Id* at 4:28-5:1.

In analyzing Plaintiffs' allegations against Quarles, the Court found that Plaintiffs had not sufficiently alleged Quarles' inducement of or participation in RB's securities fraud. First, concerning inducement, the Court held, "[t]here is no allegation that Quarles ever met or communicated with any RB or ML investor, or that any document prepared by Quarles was ever finalized, provided to, or relied upon by investors in deciding to purchase securities. Accordingly, Plaintiffs have not sufficiently alleged that Quarles 'induced' a securities transaction." *Id.* at 10:13-17. In their Motion for Leave, Plaintiffs do not specifically address the inducement prong, except insofar as they argue that Quarles prepared documents that RB *may* have given to new investors. As discussed below in connection with the "participation" element, Plaintiffs have not moved the ball – or, in the words of the Supreme Court, have not "nudge[d their] claims across the line from conceivable to plausible" (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)) – by their proposed new allegations.

Plaintiffs contend that their proposed FAC sufficiently alleges Quarles' participation in RB's fraud by alleging that "Quarles prepared a misleading Interim Disclosure Statement for RB to use in making those unlawful sales." Motion for Leave at 8:9-10 (discussing proposed FAC at ¶¶ 328-47). But Plaintiffs' allegations about the Interim Disclosure Statement and other documents Quarles drafted were included in significant detail in the original complaint, and, thus, the proposed FAC adds very little.

In their original complaint, Plaintiffs alleged that Quarles attorneys prepared "interim risk-disclosure" language that was included in documents Quarles sent to RB in May 2007. Compl. at ¶ 259. As alleged, those documents were sent to RB with a "'process summary to be used for *new* investors.'" *Id.* (emphasis included in original complaint); *see also id.* at ¶ 180 (alleging that Quarles sent RB "a packet of materials 'to be used for new investors along with a flow chart of the process for your use'");

¶ 184 (alleging that Quarles attorney Shullaw forwarded to Quarles attorney Hoffmann "'materials currently being used' along with a 'summary of securities issues'");

¶ 265 (alleging that Quarles attorney Shullaw "reviewed 'new materials being used by Radical Bunny,'" and "discussed with Hoffmann . . . [RB's] 'new offering documents'"). Plaintiffs argued in their response to Quarles' motion to dismiss that Quarles' having drafted documents and language given to investors was sufficient to constitute Quarles' participation in RB's fraud. *See* Response to Motion to Dismiss at 13:4-6 ("Lead Plaintiffs' allegation that Quarles actually authored some misleading language used with Radical Bunny investors supplies a further, independent basis for primary liability under Section 1991. . . ."); *see also* Compl. at ¶¶ 180, 184, 265 (suggesting that references in Quarles attorney's timesheet to "new" materials "currently being used" demonstrates Quarles' knowledge that RB was immediately using documents with new investors).

In their Motion for Leave, Plaintiffs heavily rely on these same documents prepared by Quarles which contain the interim risk disclosure language. Motion for Leave at 8:8-9:13 (citing FAC at ¶¶ 328-47).[3] But these allegations simply are not new, and were before the Court when the Court issued its June 9, 2011 Order. The only "new" allegation is the reference to a fax cover sheet from Quarles attorney Chris Hoffmann transmitting one of the previously discussed documents. Motion for Leave at 9:3-6 (citing FAC at ¶¶ 329, 339). That fax cover sheet, however, adds nothing. Indeed, the "interim" language included in the fax cover sheet is the same "interim" language included in allegations in the original complaint. *See, e.g.,* Compl. at ¶ 259. The only other "new" document discussed in the motion for leave is a fax cover sheet from Quarles attorney

---

[3] Plaintiffs note in their motion that they attach some of these documents to their proposed FAC. Motion for Leave at 8:5-8. The documents they attach, however, are the same documents that, while not attached to the original complaint, nonetheless were described in it. *See, e.g.,* Compl. at ¶¶ 180, 259-60. Now that the Court can review the actual documents, it is even more clear that the only "plausible" (as opposed to "conceivable" or "possible") (*see Twombly*, 550 U.S. at 556-57) inference about these documents is that they intended were to be used only *after* RB had a compliant securities offering, which would have included a perfected security interest in ML's assets. *See, e.g.,* Ex H to FAC.

Shullaw attaching "a process summary to be used with new investors." Motion for Leave at 9:7-8 (quoting FAC at ¶ 334). But Plaintiffs alleged in the original complaint that Shullaw's billing records reflect that he prepared a "'process sheet to be given to investors'" and "a packet of materials 'to be used for new investors along with a flow chart of the process for your use.'" Compl. at ¶ 180. Accordingly, Plaintiffs' supposed "new" allegations are not new at all.

The only other allegations suggesting that Quarles prepared these documents for immediate use – rather than the more plausible explanation that it prepared them for use with a *future* securities compliant program – are statements supposedly made by RB principals Tom Hirsch and Bunny Walder to the effect that they were told by Quarles to start using them right away (FAC at ¶ 344) and an allegation that "[RB] provided the Interim Disclosure Statement to 139 [RB] new investors who collectively invested $20 million in [RB]." *Id.* at ¶ 348. There are several reasons why these allegations do not sufficiently move the ball for RB.

First, as discussed above, Plaintiffs heavily emphasized in their original complaint that the documents drafted by Quarles were to be used immediately with new investors or, in fact, already were being used. *See, e.g.,* Compl. at ¶¶ 180, 184, 265. Thus, these "new" allegations are merely more of the same.

Second, Plaintiffs' new apparent reliance on statements allegedly made by Tom Hirsch and Bunny Walder should be put in proper context: in their original complaint, the same Plaintiffs accused both of these individuals of securities fraud. Indeed, Judge Susan Bolton has now found, in an action filed by the SEC, that these same individuals (and their cohorts) committed securities fraud, and did so with scienter.[4] April 12, 2011 Order

---

[4] Although the Court is to take Plaintiffs' allegations as true for the purposes of a motion to dismiss (and, consequently, a motion for leave to amend), here Plaintiffs do not actually allege that Quarles attorneys told any of the RB principals that they could start using the interim risk disclosures immediately. Rather, they only allege that Bunny Walder so testified. FAC at ¶ 344. Thus, all this Court would have to take as true is that Walder testified to the SEC that she was told she could start using the disclosures immediately – not that Quarles actually told her that. Similarly, this Court need not take as true the

and April 27, 2011 Final Judgment (Request for Judicial Notice, filed concurrently herewith, Exs. 1, 2).

Third, even if true, Plaintiffs' allegations that Quarles intended the language it drafted to be used with *new* investors does not save these Plaintiffs' claims. Neither of the two RB named plaintiffs – Fred Hagel or Judith Baker – were *new* investors in 2007, when Quarles allegedly drafted the risk disclosure language for *new* investors. In fact, as shown through documents attached to both the original complaint and the proposed FAC, Hagel began investing at least by 2006, and Baker began investing at least by 2005. *See* Compl. at Exs. D, E; FAC at Exs. D, E. Thus, as alleged by Plaintiffs, neither Hagel nor Baker was shown any of the documents or language allegedly drafted by Quarles. That certain putative (unnamed) class members may have been *new* investors who allegedly were shown the documents or language cannot save Plaintiffs' complaint.[5] *See Lewis v. Casey*, 518 U.S. 343, 357 (1981) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (quotation omitted); *Easter v. Am. West Fin.*, 381 F.3d 948, 961 (9th Cir. 2004) ("To satisfy the traceability requirement, a class action plaintiff must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."); *Newport v. Dell Inc.*, No. CIV 08-096, 2008 U.S. Dist. LEXIS 83292, at *3-4 (D. Ariz. Oct. 17, 2008) ("[A] named plaintiff[] . . . [in] a class action 'must allege and show that [she] personally [has] been injured, not that injury has

---

statements quoted from a RB memo, which are cited in the FAC at ¶ 339. Plaintiffs never actually adopt those statements as their own allegations.

[5] Plaintiffs also argue in their motion that "the FAC alleges that virtually *all* those who invested through RB did so through new investments or reinvestment decisions that were likewise made after Quarles' May 2, 2007, decision to assist RB without disclosure of the internally acknowledged illegality of RB's earlier securities sales." Motion for Leave at 10:5-9 (citing FAC at ¶ 349). That some investors may have "reinvested" after May 2007 does not support the conclusion that Quarles participated in such reinvestment decisions. To the contrary, all of the allegations about documentation and language prepared by Quarles is directed to "new" investors, and not to old investors seeking to reinvest.

been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Lewis*, 518 U.S. at 357)).

For all of these reasons, Plaintiffs have not added any new allegations that meaningfully change the pleadings this Court already determined were insufficient as a matter of law to sustain a claim for violation of Section 44- 2003(A).[6]

### B. Plaintiffs' Proposed Amended Claim for Aiding and Abetting Securities Fraud Does Not Cure the Deficiencies this Court Already Found as a Matter of Law.

To plead a claim for aiding and abetting securities fraud, a plaintiff must plead three elements: (1) the primary actor (here, RB and its principals) committed securities fraud; (2) the defendant "knew" that the primary actor's conduct constituted securities fraud; and (3) the defendant "substantially assisted or encouraged" the primary actor's securities fraud. *Stern v. Charles Schwab & Co.*, No. CV-09-1229-PHX-DGC, 2010 U.S. Dist. LEXIS 38395, at *22 (D. Ariz. Mar. 24, 2010). Thus, it is not enough to allege knowledge, nor is it enough to allege substantial assistance; a plaintiff must allege both.

---

[6] The other allegations of "participation" in the proposed FAC are likewise just more of the same from the original complaint. For example:

- Plaintiffs allege in their proposed FAC that Quarles gave instruction to Hirsch regarding several semi-annual investor meetings, and even allowed Hirsch to use Quarles' name at the meetings. *See, e.g.* FAC at ¶ 336. Plaintiffs included similar allegations in their original complaint. *See, e.g.,* Compl. at ¶ 262 (alleging that Quarles knew about investor meetings, advised Hirsch how to conduct the meeting (including requiring admission tickets), and agreed that Hirsch could tell investors that RB had retained Quarles); *see also* Compl. at ¶ 264 (alleging that Quarles knew investors historically made purchase or reinvestment decisions at the investor meetings).

- Plaintiffs allege in their proposed FAC that Quarles knew that RB's loans were short term and that, rather than repay the principal, the loans were routinely rolled over into new loans. *See* FAC at ¶ 317. This allegation is not new. *See* Compl. at ¶ 249 (alleging that Hoffmann saw loan lists showing that ML never repaid any of RB's principal).

- Plaintiffs allege in their proposed FAC that Quarles participated in the "overall fraudulent scheme," and allowed the scheme to continue for at least a year longer than it would have without Quarles' involvement. FAC at ¶¶ 377-79. Plaintiffs alleged similar scheme participation in its original complaint. *See* Compl. at ¶¶ 196-97.

*Id.*

In discussing the "substantial assistance" element in its June 9, 2011 Order, this Court stated that, "[p]roof of substantial assistance requires a showing that Quarles' conduct was 'a substantial factor in causing the plaintiff's harm.'" June 9, 2011 Order at 16:3-4 (quoting *In re Am. Cont'l Corp.*, 794 F. Supp. 1424, 1434-35 (D. Ariz. 1992)). The Court concluded that "[t]he allegations in the Complaint do not show that Quarles' conduct was a substantial factor in causing Plaintiffs to purchase the securities, or that Quarles played any material role in the securities transactions. There is no allegation that any Plaintiff relied on any representation by Quarles in deciding to invest, or that any document prepared by Quarles was ever finalized or provided to any investor." *Id.* at 16:5-9.

As discussed above in connection with the "participation" element of Plaintiffs' Section 44-2003(A) claim, the "new" allegations that Plaintiffs seek to add do not cure these deficiencies already addressed by the Court. In particular, there are no significant new allegations suggesting that Quarles' conduct was a "substantial factor in causing Plaintiffs to purchase the securities." *See id.* at 16:6. Moreover, there still are no allegations that either of the two named RB Plaintiffs ever received or relied on ***any*** documents prepared by Quarles. Thus, Plaintiffs cannot meet the "substantial assistance" element.

In its June 9, 2011 Order, the Court also addressed the "knowledge" element of a claim for aiding and abetting securities fraud, stating:

> "[M]ere knowledge of suspicious activity is not enough." However, "[a] showing of actual and complete knowledge of the [fraud]" is not necessary to establish aiding and abetting liability. Wells Fargo [Bank v. Ariz. Laborers, Teamsters & Cement Masons, 201 Ariz. 474,] 488, 38 P.3d [12,] 26 [(2002)]. Instead, a "general awareness of the fraudulent scheme" is enough.

*Id.* at 15:3-8. The Court concluded that Plaintiffs' allegations about Quarles' presence at meetings and its receipt of reports referring to increases in the amount of outstanding loans from RB to ML, "while perhaps properly characterized as suspicious activity, is not

sufficient to show that Quarles knew that RB was continuing to sell securities." *Id.* at 15:25-16:1. Plaintiffs' proposed new allegations add little to this analysis.

Plaintiffs argue in their Motion for Leave that the proposed FAC includes "detailed allegations" about statements made by ML officers at the August 13, 2007 meeting to the effect that RB was continuing to raise money. Motion for Leave at 9:14-20 (citing FAC at ¶¶ 352-53). But these allegations are hardly new. In their original complaint, Plaintiffs included detailed allegations about statements made at that same August 13, 2007 meeting, including an allegation that "the primary subject at the August 13 meeting" was "Radical Bunny's . . . ongoing sales." Compl. at ¶ 185; *see also id.* at ¶¶ 23, 161-63, 185 (all alleging discussions at August 13, 2007 meeting about RB's ongoing sales, including that ML's attorney, Robert Kant, made statements to the effect that, "'[t]hey put people in jail for this'"); Response to Quarles' Motion To Dismiss at 24:11-13 ("These allegations, including Quarles' attendance at the August 13, 2007 meeting in which Radical Bunny was told 'people are put in jail' for such conduct, sufficiently plead the knowledge element for aiding and abetting purposes."). All Plaintiffs propose to do in their FAC is to add additional details saying essentially the same thing.

Plaintiffs also include in their FAC a number of allegations about documentation Quarles received from RB showing increases in the amount of outstanding loans. *See, e.g.,* FAC at ¶ 319. Again, however, this is just more of the same that already was before the Court when it ruled on Quarles' motion to dismiss. *See, e.g.,* Compl. at ¶ 179.

Thus, just as with their proposed new allegations of participation and substantial assistance, Plaintiffs' supposed new allegations about knowledge are not "new" at all, but rather are just more of the same allegations (some with a slightly different spin) that this Court already considered in granting Quarles' motion to dismiss.[7]

---

[7] In addition to the specific proposed allegations discussed in Plaintiffs' motion for leave, the proposed FAC includes a number of other allegations intended to show Quarles' knowledge of ongoing securities violations. As with the allegations discussed above, these other allegations are merely repeats (sometimes with a new spin, but oftentimes not) of the allegations this Court already determined were not sufficient to meet the knowledge element of a claim for aiding and abetting securities fraud. For example:

## IV. CONCLUSION

Plaintiffs' proposed amendments do not cure the deficiencies already found by this Court and, thus, would be futile. Accordingly, Quarles respectfully requests that the Court deny Plaintiffs' motion.

Dated: July 18, 2011

MORGAN, LEWIS & BOCKIUS LLP
ROBERT E. GOODING, JR.
SCOTT B. GARNER
SHAWN M. KENNEDY

By /s/ Scott B. Garner
    Scott B. Garner
    Attorneys for Defendant Quarles & Brady LLP

---

- Plaintiffs propose to allege in their FAC that Quarles attorneys were told at their initial meeting with RB that the amount of outstanding loans was $140 million, and that that amount was increasing by $4-5 million per month. FAC at ¶ 311. Plaintiffs included a nearly identical allegation in their original complaint. Compl. at ¶ 145; *see also id.* at ¶ 179 (alleging Quarles attorney Robert Bornhoft's acknowledgment that the loan balance had increased from $140 million to $152 million).

- Plaintiffs also propose to allege in their FAC that Quarles concluded early in the relationship that RB was violating securities laws (FAC at ¶ 320) and did not want to make a rescission offer or disclose its past violations. *Id.* at ¶¶ 322, 327. In its original complaint, Plaintiffs made these same allegations. Compl. at ¶¶ 21, 22, 154, 255.

- Plaintiffs include in their proposed FAC an allegation that Quarles attorney Robert Moya was emailed a promissory note covering additional money that RB raised and loaned to ML. FAC at ¶ 364. This allegation is no different in kind from the many allegations in the original complaint purporting to show Quarles' knowledge of the increasing loan amount. *See, e.g.,* Compl. at ¶¶ 161-62, 179, 185.

- Plaintiffs include in their proposed FAC allegations that Quarles knew that RB's and its investors' investments were not secured. FAC at ¶ 322. Again, Plaintiffs made the same allegations in their original complaint. Compl. at ¶¶ 252, 278, 286.

- Plaintiffs propose to allege in the FAC that Quarles learned at the August 13, 2007 meeting that ML did not have sufficient loan participations to secure all of the indebtedness owed to RB. FAC at ¶ 356. This, too, already was alleged in the original complaint. Compl. at ¶¶ 162, 185.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


                /s/ Serap Karaman-Stothers
                Paralegal

DB2/ 22544911.4