**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Facciola, et al., | No. CV-10-1025-PHX-FJM |
| Plaintiffs, | **ORDER** |
| vs. | |
| Greenberg Traurig LLP, et al., | |
| Defendants. | |

Pending before the court is lead plaintiffs' motion for leave to file a first amended complaint (doc. 216), Quarles' response (doc. 231), Greenberg's response and request for clarification (doc. 232), Mayer Hoffman's response (doc. 233), plaintiffs' response to request for clarification (doc. 235), and plaintiffs' replies (doc. 243, 245).

On June 9, 2011, we granted in part and denied in part Greenberg's motion to dismiss, concluding that Mortgages Ltd. (ML) plaintiffs had stated a claim against Greenberg for violation of the Arizona Securities Act (ASA), A.R.S. § 44-1991(A), and for negligent misrepresentation, and that ML and Radical Bunny (RB) plaintiffs had stated a claim against Greenberg for aiding and abetting statutory securities fraud (doc. 200).[1] We also granted

---

[1] Pursuant to Greenberg's request (doc. 232), we clarify that our June 9, 2011 order denied Greenberg's motion to dismiss Count 3, aiding and abetting securities fraud, as to both the ML and RB plaintiffs' claims.

Quarles and Mayer Hoffman's motions to dismiss all claims asserted against them. Id. Plaintiffs now seek leave to amend their complaint in order to remedy the pleading deficiencies with respect to Count 1 (primary liability under the ASA) and Count 3 (aiding and abetting violation of the ASA).

The Arizona Securities Act, A.R.S. § 44-1991(A), makes it unlawful for a person, in connection with the sale or purchase of securities, to do any of the following:

> (1) Employ any device, scheme or artifice to defraud.
>
> (2) Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.
>
> (3) Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

A.R.S. § 44-1991(A). The Act extends private civil liability beyond the parties to the sale, but only to persons " who made, participated in or induced the unlawful sale or purchase." A.R.S. § 44-2003(A). To "participate in" means "to take part in something" or "have a part or share in something." Grand v. Nacchio, 222 Ariz. 498, 500-01, 217 P.3d 1203, 1205-06 (Ct. App. 2009). "Participation" requires something more than activities that are merely "tangentially related to and concurrent with [an] ongoing sale." Standard Chartered PLC v. Price Waterhouse, 190 Ariz. 6, 21, 945 P.2d 317, 332 (Ct. App. 1996).

"Induce" under the Act requires some "purposeful persuasive effort." Id. at 22, 945 P.2d at 333. The statute is not so broad, however, as to encompass "any outsider to a securities transaction . . . who provided information that foreseeably contributed to, and thereby *influenced*, a buyer or seller's decision to engage in the transaction." Id. (emphasis in original).

Claims arising under A.R.S. § 44-1991(A) must also satisfy § 44-2082(A) and (B), which require that a plaintiff "specify each alleged untrue statement or material omission and the reason or reasons why the statement or omission is misleading or the omission is material." A.R.S. § 44-2082(A). To the extent that scienter is an element of the offense, a complaint must also plead with particularity "facts giving rise to a strong inference that the

- 2 -

1  defendant acted with the required state of mind." Id. § 44-2082(B).

### A. Quarles

We dismissed plaintiffs' claims against Quarles for primary liability under the ASA and for aiding and abetting a violation of the Act. We held that plaintiffs had not sufficiently alleged Quarles' inducement of or participation in RB's securities fraud, in part because the original complaint failed to allege that "any document prepared by Quarles was ever finalized, provided to, or relied upon by investors in deciding to purchase securities." Order at 10. We also held that, although plaintiffs generally alleged that Quarles prepared documents for RB to "use in soliciting new investors," these allegations were insufficient to support a claim that Quarles knew that RB was continuing to sell securities illegally, as opposed to assisting RB to become compliant going forward.

Plaintiffs now propose to amend the complaint to add new allegations showing that Quarles did know that RB was continuing to sell securities unlawfully and towards that end Quarles prepared a misleading interim disclosure statement for RB's immediate use in ongoing unlawful sales.

Specifically, plaintiffs allege that Quarles drafted an interim disclosure statement–an offering document that contained false and misleading language, which was intended to be used with "new investors." According to plaintiffs, RB modified the format of the interim disclosure statement, provided the document to Quarles for review, and obtained Quarles' approval to use the document with new investors. First Amended Complaint (FAC) §§ 328-347.[2]  This offering document was not intended to, nor could it, "cure" RB's past misconduct. ¶¶ 327, 338. Instead, the interim disclosure statement itself constituted an unregistered sale of securities in violation of securities laws, ¶ 333, and was solely designed to allow RB to continue to sell securities unlawfully, ¶ 327. In a fax transmittal cover sheet, Quarles' lawyer Christian Hoffman "recommend[ed]" to RB that it provide the interim disclosure statement to new investors as "an interim step" pending the completion of a

---

[2] All ¶ symbols refer to the first amended complaint.

- 3 -

1  compliant private placement memorandum. ¶ 329. Two days later, Quarles' lawyer Gary
2  Shullaw faxed RB a process summary "to be used with new investors." ¶ 334. According
3  to plaintiffs, these documents were prepared by Quarles to help RB continue to sell
4  unregistered securities to new investors without disclosure of the earlier illegal securities
5  sales. ¶ 330.

6  The amended complaint also asserts a new allegation that RB principal, Bunny
7  Walder, testified before the SEC that Quarles had supplied the interim disclosure statement
8  and advised RB to begin using it "right away," rather than waiting for a compliant private
9  placement memorandum. ¶ 344. Quarles' effort to discredit Walder's veracity is not
10 relevant in this motion to amend. ¶ 348.

11 Finally, the amended complaint alleges that RB followed Quarles' advice and began
12 using the non-compliant interim disclosure statement with new investors beginning on June
13 28, 2007, ¶ 345, and that between June 2007 and May 2008, during Quarles' engagement,
14 RB provided the interim disclosure statement to 139 new investors who collectively invested
15 $20 million in RB.

16 We conclude that plaintiffs' new allegations are sufficient to plead a plausible claim
17 that Quarles knew that RB was continuing to sell illegal securities and that RB was using
18 Quarles-prepared documents to do so. These new allegations are sufficient to "nudge[]
19 [plaintiffs'] claims across the line from conceivable to plausible." Bell Atl. Corp. v.
20 Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). We therefore grant the RB
21 plaintiffs' motion to amend the complaint against Quarles with respect to Count 1. This
22 holding is limited to RB plaintiffs' claim only. There are insufficient allegations to show that
23 Quarles participated in or induced sales of unlawful securities to ML plaintiffs within the
24 meaning of A.R.S. § 44-1991(A).

25 We also conclude that the amended complaint adequately presents a claim by both ML
26 and RB plaintiffs against Quarles for aiding and abetting securities fraud. To establish aiding
27 and abetting, a plaintiff must plead (1) the primary actor committed securities fraud, (2) the
28 defendant "knew" that the primary actor's conduct constituted securities fraud, and (3) the

- 4 -

defendant "substantially assisted or encouraged" the primary actor's securities fraud. Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons, 201 Ariz. 474, 485, 38 P.3d 12, 23 (2002). In order to establish the knowledge prong of the aiding and abetting test, a plaintiff must satisfy a strict scienter standard. Id. "[M]ere knowledge of suspicious activity is not enough." Stern v. Charles Schwab & Co.., No. CV-09-1229-PHX-DGC, 2010 WL 1250732, at *9 (D. Ariz. Mar. 24, 2010) (quoting Dawson v. Withycombe, 216 Ariz. 84, 163 P.3d 1034 (Ct. App. 2007)). Plaintiffs must show that Quarles "knew" about or was "generally aware of the fraudulent scheme." Id. With respect to the "substantial assistance" prong, "the test is whether the assistance makes it 'easier' for the violation to occur, not whether the assistance was necessary." Wells Fargo Bank, 201 Ariz. at 489, 38 P.3d at 27.

The amended complaint sufficiently shows that Quarles had knowledge of both RB and ML's ongoing roles in the unlawful securities sales and provided substantial assistance by "making it easier" for both RB and ML to accomplish their alleged fraudulent goals. Plaintiffs' motion to amend the complaint with respect to the RB and ML plaintiffs' aiding and abetting claims against Quarles is granted.

In so holding, we reject Quarles' argument that the lead RB plaintiffs, Hagel and Baker, lack standing to assert the primary liability claim under § 44-1991(A), because neither Hagel nor Baker was a "new" investor in 2007, when Quarles allegedly drafted the interim disclosure statement for new investors.[3] Quarles does not argue that Hagel and Baker suffered no injury, but only that their injury did not arise from Quarles' interim disclosure statement. Quarles' argument regarding Hagel and Baker's injury is better resolved on plaintiffs' motion for class certification.

### B. Mayer Hoffman

Plaintiffs asserted in their original complaint that Mayer Hoffman violated the ASA by issuing materially misleading audit reports that it knew would be used to encourage

---

[3]Plaintiffs counter that plaintiff Baker made at least one entirely new purchase during the period RB used the Quarles interim disclosure statement. Reply at 9.

- 5 -

1  securities sales to ML and RB investors, thereby encouraging and taking part in primary
2  securities violations under A.R.S. § 44-1991(A). We granted Mayer Hoffman's motion to
3  dismiss, concluding that, even if Mayer Hoffman knew that ML attached the audit reports
4  to its private offering memoranda (POMs) to solicit new investors, the complaint failed to
5  sufficiently allege that Mayer Hoffman "participated in" or "induced" illegal securities sales.
6  We reasoned that, like the outside auditor in Standard Chartered, 190 Ariz. 21-22, 945 P.2d
7  at 332-33, Mayer Hoffman prepared routine audit reports independent of any securities
8  transactions. It had no active role in the sale of securities beyond the performance of its
9  professional services. Thus, we concluded that because there was no "purposeful, persuasive
10 effort" alleged, plaintiffs failed to state a claim for primary securities fraud liability against
11 Mayer Hoffman. Id.

12     Plaintiffs now seek leave to amend the complaint in an attempt to bolster their claims
13 against Mayer Hoffman, but the new allegations do not remedy the pleading deficiencies.
14 The amended allegations provide additional examples showing that Mayer Hoffman knew
15 that its audit reports would be "used to secure additional funding and to provide evidence of
16 financial stability," for the purpose of soliciting new investors. ¶ 469. The new allegations
17 state that Mayer Hoffman read the POMs and used the POMs as audit evidence. ¶¶ 472-73.
18 But an auditor does not "participate in" or "induce" sales for purposes of § 44-1991(A) even
19 if it knows that investors are relying on its audits. The outside auditor in Standard Chartered
20 was alleged to have made misrepresentations, not only in audit reports that it knew were
21 relied upon by parties to a securities transaction, but also in direct communications with those
22 parties. 190 Ariz. at 23, 945 P.2d at 334. Nevertheless, the court held that individuals "who
23 neither financially participate, nor promote or solicit the transaction, but merely provide
24 information that contributes to a buyer or seller's decision," are not liable for statutory
25 securities fraud. Id.

26     Even with the new allegations, Mayer Hoffman is not alleged to have had an active
27 role in the sale of securities beyond the performance of its professional services. There was
28 no "purposeful, persuasive effort" alleged on the part of Mayer Hoffman. For nearly a

- 6 -

1  decade, Mayer Hoffman was ML's general auditor and prepared audit reports independent
2  of any securities transactions. This collateral involvement falls within the safe harbor
3  protection of § 44-2003(A). Plaintiffs' motion to amend the complaint with regard to claims
4  against Mayer Hoffman for primary securities fraud liability is denied as futile.

5        For the same reasons, we reject plaintiffs' motion for leave to assert a new claim
6  against Mayer Hoffman for aiding and abetting securities fraud. Plaintiffs assert that Mayer
7  Hoffman acted with the requisite scienter in describing RB's notes as collateralized. Motion
8  for Leave at 6. But the amended complaint fails to assert that Mayer Hoffman knew that
9  RB's loans to ML were unsecured. It is not enough to allege that Mayer Hoffman's alleged
10 accounting standards violations as "deliberate[] or reckless[] avoid[ance]." ¶ 519. Under
11 Arizona law, plaintiffs must establish actual awareness of ML and RB's fraudulent scheme,
12 not just "reckless disregard of the fraud." Stern, 2010 WL 1250732, at *9. The assertion in
13 the amended complaint that certain inconsistencies would have prompted "a reasonable
14 auditor to ask for [additional documentation]" is insufficient to show scienter. Moreover,
15 even if Mayer Hoffman violated auditing standards by failing to discover evidence of fraud,
16 there is no plausible allegation that gives rise to an actual awareness of securities fraud as
17 opposed to simple negligence. See Karpov v. Insight Enter., Inc., No. CV-09-856, 2010 WL
18 2105448, at *5 (D. Ariz. April 30, 2010) ("Violations of GAAP or GAAS, without more, .
19 . . can never establish scienter.").

20       Plaintiffs' motion to amend by asserting a new claim of aiding and abetting securities
21 fraud against Mayer Hoffman is also denied as futile.

### C. Greenberg

23       In our dismissal order, we concluded that the RB plaintiffs' claims for primary
24 securities fraud under the ASA was insufficiently alleged. The FAC purports to amend the
25 complaint to include *inter alia* additional facts establishing Greenberg's primary liability to
26 the RB investors under A.R.S. § 44-1991(A). Greenberg "takes no position as to whether
27 the motion [to amend] should be granted." Greenberg Response at 1-2. Therefore, plaintiffs'
28 motion to amend the complaint with respect to plaintiffs' claims against Greenberg is

- 7 -

1  granted.

2  **IT IS ORDERED GRANTING IN PART AND DENYING IN PART** plaintiffs'
3  motion to amend the complaint (doc. 216).  The motion is granted with respect to amended
4  claims asserted against Greenberg and Quarles.  The motion is denied as to claims asserted
5  against Mayer Hoffman.

6  In summary, the following claims remain:  (1) Count 1 against Greenberg asserted by
7  ML and RB plaintiffs, (2) Count 1 against Quarles asserted by RB plaintiffs, (3) Count 3
8  against Greenberg asserted by ML and RB plaintiffs, (3) Count 3 against Quarles asserted
9  by ML and RB plaintiffs, and (4) Count 5 against Greenberg asserted by ML plaintiffs.

10  DATED this 18th day of November, 2011.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge