MORGAN, LEWIS & BOCKIUS LLP
ROBERT E. GOODING, JR. (admitted *pro hac vice*)
rgooding@morganlewis.com
SCOTT B. GARNER (admitted *pro hac vice*)
sgarner@morganlewis.com
SHAWN M. KENNEDY (admitted *pro hac vice*)
skennedy@morganlewis.com
5 Park Plaza, Suite 1750
Irvine, CA 92614
Tel: 949.399.7000
Fax: 949.399.7001

STEPTOE & JOHNSON LLP
FRANCIS J. BURKE, JR. (SBN 010570)
fburke@steptoe.com
MICHELLA A. KRAS (SBN 022324)
mkras@steptoe.com
Collier Center
201 East Washington Street
16th Floor
Phoenix, Arizona 85004
Telephone: 602.257.5200
Facsimile: 602.257.5299

Attorneys for Defendant Quarles & Brady LLP

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ROBERT FACCIOLA, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> GREENBERG TRAURIG, LLP, a New York limited liability partnership, *et al.*, <br><br> Defendants. | Case No. 2:10-cv-01025-FJM <br><br> **QUARLES & BRADY LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> [Oral Argument Requested] |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

II. ARGUMENT ............................................................................................................ 2

    A. Plaintiffs Cannot Avoid the Clear Limitations of Section 2003 ................... 2

    B. Standard Chartered Remains Authoritative ..................................................... 5

    C. Section 2003 Applies to Plaintiffs' Aiding and Abetting Claim ................... 7

    D. The ML Investor Plaintiffs' Aiding and Abetting Claim Fails to Meet the Requirements of Section 2003 ................................................................ 9

    E. The RB Investor Plaintiffs' Aiding and Abetting Claim is Duplicative ..... 10

III. CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. Vozack*,
  113 Ariz. 269, 550 P.2d 1070 (1976) .................................................................................. 8

*Burritt v. Nutracea*,
  No. CV-09-00406-PHX-FJM, 2010 U.S.
  Dist. LEXIS 17544 (D. Ariz. Feb. 25, 2010) .................................................................. 4, 6

*Geiler v. Tanner*,
  24 Ariz. App. 266, 537 P.2d 994 (App. 1975) .................................................................... 8

*Grand v. Nacchio*,
  225 Ariz. 171, 236 P.3d 398 (2010) ......................................................................... 6, 7, 11

*Standard Chartered PLC v. PriceWaterhouse*,
  190 Ariz. 6, 945 P.2d 317 (App. 1996) ....................................................................... passim

*State v. Superior Court*,
  123 Ariz. 324, 599 P.2d 777 (1979) ....................................................................... 2, 3, 7, 11

**Statutes**

A.R.S. § 13-2317 ...................................................................................................................... 8

A.R.S. § 44-1841 ...................................................................................................................... 8

A.R.S. § 44-1842 ...................................................................................................................... 8

A.R.S. § 44-1991 .............................................................................................................. passim

A.R.S. § 44-1997 ...................................................................................................................... 5

A.R.S. § 44-2001 .............................................................................................................. passim

A.R.S. § 44-2003 .............................................................................................................. passim

A.R.S. § 44-2082 .................................................................................................................. 4, 5

**Other Authorities**

Richard G. Himelrick, *The Importance of Statutory Text:*
  *From Scienter to Nonstatutory Defenses under Arizona*
  *Securities Law*, 41 Ariz. St. L.J. 49 (Ariz. St. L.J. Spring 2009) .................................... 10

Richard M. Weinroth, *Reformation of the Arizona Securities Act:*
  *A Brief Summary*, 33 AZ Attorney 25 (Aug./Sept. 1996) ................................................. 5

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

In their opposition to Defendant Quarles & Brady LLP's ("Quarles") Motion to Dismiss the First Amended Complaint ("FAC"), Plaintiffs do not even bother to argue that they have adequately alleged Quarles' participation in or inducement of *any* of the sales to the Mortgages Ltd. ("ML") investor plaintiffs. Nor have they alleged Quarles' participation in or inducement of any sales to the Radical Bunny ("RB") investors beyond the $20 million of sales made to the 139 investors who allegedly received a document partially drafted by Quarles. Instead, Plaintiffs posit a view of the Arizona securities laws where private civil liability is available merely upon a showing of a violation of A.R.S. section 44-1991, thereby eliminating the need to show that Quarles participated in or induced any sales for purposes of their aiding and abetting claims.

Plaintiffs' novel position is untenable because two other statutory provisions clearly apply to Section 1991 claims: Section 2001 provides for an express private civil claim for a violation of Section 1991, and Section 2003 provides that a claim under Section 2001 extends only to those who make, participate in or induce the fraudulent sales themselves. A.R.S. §§ 44-2001(A) & 2003(A). As the court in *Standard Chartered PLC v. PriceWaterhouse* found, private civil liability under Arizona's securities laws ***does not*** extend to the larger group of persons who commit a violation of Section 1991, but rather is limited to the ***narrower group*** of persons who also can be deemed to have made, participated in or induced the sales. 190 Ariz. 6, 22, 945 P.2d 317, 333 (App. 1996).

To get out from under these clear authorities, Plaintiffs take their position to the extreme, arguing that (1) Sections 2003 and 2001 effectively have been written out of the law, and (2) the decision in *Standard Chartered* has been legislatively overruled. Not surprisingly, Plaintiffs can point to no case that would support their proposed evisceration of Arizona's securities statutes or the overruling of *Standard Chartered*. In any event, Plaintiffs' argument is dead wrong. Sections 2001 and 2003 remain the sole basis for a private civil suit under the Arizona Securities Act ("ASA"), and, as this Court repeatedly has recognized, *Standard Chartered* is authoritative in interpreting Section 2003's

restrictions on civil liability.

Because Section 2003 remains binding, to assert a claim for aiding and abetting statutory securities fraud, Plaintiffs must allege that Quarles aided and abetted ML's and/or RB's fraud in connection with *sales* to investors. That may be shown in one of two ways, each of which essentially requires the same showing: Plaintiffs must allege either that (1) Quarles aided and abetted the fraudulent sales themselves (*i.e.*, a violation of Section 1991 that could be actionable under Section 2003); or (2) Quarles aided and abetted an underlying violation of Section 1991, *and* that Quarles falls within the narrower range of those that may be liable under Section 2003. Put differently, an aider and abetter of statutory securities fraud only may be held liable under the same conditions as a principal violator – *i.e.*, subject to Section 2003.[1] The Arizona Supreme Court confirmed as much in *State v. Superior Court* when it found that an aider and abetter is held liable "as a principal." 123 Ariz. 324, 331, 599 P.2d 777 (1979).

Here, because Plaintiffs have not alleged that Quarles made, participated in or induced any of the sales to the ML investor plaintiffs, those investors' aiding and abetting claims must be dismissed in their entirety. And because the RB investor plaintiffs' aiding and abetting claims are limited to the same $20 million of sales as to which Quarles supposedly participated by preparing interim disclosure documents for use in those sales, their aiding and abetting claim is entirely duplicative of their existing direct statutory securities fraud claim (*i.e.*, Claim 1). Quarles' motion therefore should be granted.

## II. ARGUMENT

### A. Plaintiffs Cannot Avoid the Clear Limitations of Section 2003.

Try as they might, Plaintiffs cannot get around the clear impact of Section 2003 on a private civil claim for aiding and abetting statutory securities fraud. In recognition of

---

[1] Plaintiffs argue that Quarles' Motion to Dismiss is, in substance, a motion for reconsideration of the Court's order on Plaintiffs' motion for leave to file the FAC. Lead Plaintiffs' Joint Response to Quarles' Motion To Dismiss FAC ("Opp."), Doc. No. 297, p. 1. They are wrong. The central issues raised in Quarles' Motion to Dismiss – the proper bounds of aiding and abetting liability and the impact of Section 2003 on such claims – were neither briefed nor decided in connection with Plaintiffs' motion for leave to amend.

their inability to plead facts showing that Quarles participated in or induced any of the sales at issue in this Motion, Plaintiffs resort to arguing that both Section 2003 and Section 2001 effectively have been written out of the law. Plaintiffs argue that, prior to 1996, the ASA "did not explicitly recognize a private action under [Section 1991]," but six provisions of the ASA were amended in 1996 to "explicitly recognize that [Section 1991] itself creates a private right of action." Opp. at 9. Thus, Plaintiffs argue that, since 1996, there is no continuing need or potential application for Sections 2001 or 2003 because a private plaintiff may sue directly under the "private right of action" now recognized directly under Section 1991. *Id.*

There is no basis for Plaintiffs' outlandish interpretation of the 1996 amendments to the ASA. As an initial matter, Plaintiffs ignore the fact that Section 2001 – ***which explicitly creates a private civil right of action for a violation of Section 1991*** – existed long prior to 1996. As the Arizona Supreme Court stated seventeen years earlier:

> Generally speaking, a purchaser of stock has no cause of action under the [ASA] . . . from one who received none of the consideration and was not a party to the sale. Pursuant to [Section 2003], however, an action under [Section 2001] may be brought against any person . . . who made, participated in or induced the unlawful sale or purchase. . . . This section, therefore, clearly fixes the liability of one who induces the unlawful sale or purchase.

*State v. Super. Ct.*, 123 Ariz. at 331 (citation omitted). The ASA did not recognize – and still does not recognize – a direct, private right of action under Section 1991 because the legislature chose to grant an express private right of action under Section 2001 for a violation of Section 1991. Plaintiffs' argument also ignores the existence of Section 2003, which defines the scope of who may be liable under Section 2001. If Plaintiffs' interpretation were correct, there would be no continuing need for either statutory provision; indeed, both Section 2001(A) and Section 2003(A) would be meaningless.

There is not a shred of support for Plaintiffs' proposition that either statute was gutted by the 1996 amendments to the ASA. To the contrary, this Court has recognized that Section 2003 remains governing authority for the scope of any civil claim under

Section 2001 for a violation of Section 1991.  *See, e.g., Burritt v. Nutracea*, No. CV-09-00406-PHX-FJM, 2010 U.S. Dist. LEXIS 17544, at **28-29 (D. Ariz. Feb. 25, 2010).

Neither is there any merit to Plaintiffs' argument that the 1996 amendments to Sections 44-1991(B), 44-2003(P)(1), and 44-2082(A), (B), (C) & (E) somehow enacted a direct, private right of action under Section 1991 separate and apart from Sections 2001 and 2003.  Opp. at 9.  Plaintiffs attempt to seize on the fact that the amended sections distinguish between actions brought by private individuals – which are referred to as "private" actions "pursuant to" or "arising under" Section 1991 – and actions brought by the Arizona Corporation Commission or Attorney General.  But the fact that those amendments refer to the liability provision of Section 1991 without specifically mentioning the procedural sections under which such a private action must be brought – Sections 2001 and 2003 – does not mean that a private right of action has been created directly under Section 1991.

As enacted in 1996, Section 1991(B) provides that, "[i]n a private action brought pursuant to subsection A," the seller of the security may prove, as an affirmative defense, that some or all of the plaintiff's purported damages resulted from something other than the allegedly fraudulent misstatement or omission.  A.R.S. § 44-1991(B).  Far from establishing or recognizing a direct right of action under Section 1991, this section merely provides that the affirmative defense is available only in a private action, and not in an action by the government.  *See Standard Chartered*, 190 Ariz. at 22 n.6 (finding that the limitation on liability in Section 2003 does not apply to an action by the Attorney General or Corporation Commission, who have "a range of public enforcement measures against 'any person' engaging in a violation of the Act").

As enacted in 1996, Section 2003(P)(1) defines the term "covered person" for the purposes of determining joint and several liability, proportionate liability, contribution claims and bar orders under subsections (B)-(O) of Section 2003.  Subsection (P)(1) provides that a "covered person" is "a defendant in any private action arising under" Sections 1991, 1992 and 1997.  A.R.S. § 44-2003(P)(1).  Nothing in that subsection

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

suggests that the legislature intended to eliminate the application of Sections 2001 and 2003 as the means by which a private party can sue for a violation of Section 1991. Moreover, the reference to Section 1997 is instructive because, unlike Section 1991, Section 1997 explicitly provides for a private right of action according to its terms. *See* A.R.S. § 44-1997(A). Because there can be no argument that the reference in Section 2003(P)(1) somehow creates a private right of action under Section 1997, it cannot be read to create a private right of action under Sections 1991 or 1992 either.

Subsections (A), (B) and (C) of Section 2082 similarly limit their application to a private action "arising under" Sections 1991 or 1992. Those provisions do not recognize or establish a direct private right of action under Section 1991, but merely limit their coverage to actions "arising under" Section 1991 that may be brought pursuant to Section 2001. By comparison, Section 2082(E) provides that the plaintiff in a "private action arising under *this chapter*" – which would include a private action brought under Section 2001 for a violation of Section 1991 – bears the burden of proving loss causation. A.R.S. § 44-2082(E) (emphasis added).

In short, nothing in the statutory provisions cited by Plaintiffs suggests that the legislature intended to expand the scope of private civil securities fraud liability to a mere showing of a violation of Section 1991. Because the legislature chose to amend – and not delete – Section 2003, that statute remains binding on Plaintiffs here. *See* Richard M. Weinroth, *Reformation of the Arizona Securities Act: A Brief Summary*, 33 AZ Attorney 25, 26 (Aug./Sept. 1996) ("No area of the Arizona Act contains more technical revisions than revised Section 44-2003.").

**B.**     ***Standard Chartered* Remains Authoritative.**

Because of its devastating impact on their position, Plaintiffs argue that this Court should ignore *Standard Chartered* because the Arizona legislature "rendered obsolete the part of *Standard Chartered* asserting that [Section 2003] narrows the persons who can be sued for violations of [Section 1991]." Opp. at 8. The reason for Plaintiffs' tortured argument is clear: if Section 2003 in fact limits the scope of liability under Section 2001,

as *Standard Chartered* recognized, Plaintiffs' aiding and abetting claims are subject to the limitations in Section 2003, which Plaintiffs cannot meet.

In *Standard Chartered*, the plaintiff's claim was based upon an alleged violation of Section 1991, but, as a private civil claimant, its claim was brought under Section 2001. 190 Ariz. at 18. And because the defendant was a non-seller, it only could be sued if it participated in or induced the fraudulent sale under Section 2003. *Id.* The court looked to various definitions of "participation" and "inducement" before settling upon the level of involvement required to rise to the level of participation or inducement under Section 2003. *Id.* at 21-22. In so doing, the court looked to the structure of the ASA, expressly recognizing that the legislature ***did not*** provide a private remedy against any person who violated Section 1991: "Sections 44-2001 and 44-2003, however, do not provide a private civil remedy against anyone who makes a material misstatement in connection with a securities transaction. Had the legislature intended so extensive a private remedy, it could simply have done so against any person who violated section 44-1991." *Id.* at 22. Rather, the legislature provided a civil remedy "**only against the narrower range** of persons 'who made, participated in or induced the unlawful sale . . . .'" *Id.* (emphasis added).

As this Court recognized just two years ago, *Standard Chartered* remains good law. *See Burritt*, 2010 U.S. Dist. LEXIS 17544, at *31 (citing *Standard Chartered* to determine the meaning of inducement under Section 2003). The fact, as pointed out by Plaintiffs, that the court in *Grand v. Nacchio*, 225 Ariz. 171, 236 P.3d 398 (2010), noted that the ASA was intended to have a broad, remedial scope does not change the analysis. *See, e.g.*, Opp. at 14 n.8. In fact, consistent with *Standard Chartered*, the *Grand* court recognized the plain meaning of Section 2001 in establishing a private right of action for a violation of Section 1991 and of Section 2003 in providing the scope of liability for a claim under Section 2001:

> Section 44-1991(A)(3) . . . makes it illegal for any person 'directly or indirectly' to '[e]ngage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.' **Section 44-2001(A), in turn, provides a . . . remedy for violations of § 44-1991**. Section 44-2003(A) . . . authoriz[es] an action . . . against 'any person . . . who made,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

participated in or induced the unlawful sale or purchase."

*Id.* at 174 (emphasis added).

### C. Section 2003 Applies to Plaintiffs' Aiding and Abetting Claim.

While Plaintiffs repeatedly cite to *State v. Superior Court*, they do not address that court's significant statement that aiding and abetting liability is based upon holding the aider and abetter liable "***as a principal***." 123 Ariz. at 331 (emphasis added).  Because aiding and abetting liability cannot be stretched beyond the liability of the principal to include those who do not make, participate in or induce the sale, in order to make out a civil claim for aiding and abetting statutory securities fraud, Plaintiffs must allege that Quarles aided and abetted the principal violators' fraudulent sales as a participant or an inducer.  Whether they do so by alleging that (1) Quarles aided and abetted the fraudulent sales themselves (*i.e.*, that Quarles aided and abetted a violation of Section 1991 that is actionable under Sections 2001 and 2003); or (2) Quarles aided and abetted the underlying violation of Section 1991, ***and*** that Quarles falls within the narrower range of those that may be liable under Section 2003, some connection to the fraudulent sales is required.

Plaintiffs erroneously suggest that applying Section 2003 to an aiding and abetting claim somehow conflates primary liability and aiding and abetting liability by requiring that aiders and abetters be both primary violators and persons who act with scienter.  Opp. at 8.  Plaintiffs fail to recognize the difference between the scienter required for a violation of Section 1991 (in some cases, none is required) and the requirement for aiding and abetting liability: that the defendant knowingly renders aid to the primary violation.  It may be appropriate to hold a primary violator strictly liable for securities fraud under some circumstances, but it would not be appropriate to hold an unknowing aider and abetter strictly liable as well.  While it is certainly consistent with the statutory scheme to view aiding and abetting liability as at least partially overlapping with "primary" liability (based upon the inclusion of those who "participate in" sales as potentially liable under Section 2003), it would be consistent with both *Standard Chartered* and *State v. Superior Court* to view them as distinct.  Aiding and abetting liability could involve either (1) the

knowing aid of the fraudulent sale itself (without, for example, being the one who makes the fraudulent misstatement under Section 1991),  or (2) the knowing aid of the primary violator's fraud under Section 1991, together with the aider and abetter's close involvement with the sale itself under Section 2003.[2]

In support of their argument that Section 2003 is irrelevant to an aiding and abetting claim, Plaintiffs cite to cases involving other, distinct concepts such as *respondeat superior*.  Opp. at 10-13.  None of those cases leads to a different result.  Plaintiffs cite *Geiler v. Tanner*, 24 Ariz. App. 266, 537 P.2d 994 (App. 1975), for the proposition that "[a]n employer who has no role in making, inducing, or participating in a sale may still be secondarily liable for securities fraud under respondeat superior."  Opp. at 10.  It is difficult to see how *Geiler* could have any bearing here – Plaintiffs do not attempt to hold RB itself vicariously liable for the actions of RB's principals under "basic agency" principles.  Plaintiffs further argue that, under *Geiler*, a lawyer who provides "active aid" to fraud can be held liable under Section 1991.  Opp. at 11-12.  The attorney in *Geiler*, however, was not merely alleged to have given aid to the seller's fraud.  He was alleged to have ***participated in*** the sale itself – indeed, the "final and most important steps" – first by acting as the escrow agent, then by withdrawing as escrow agent on the pretense that he had inadequate facilities for safe-keeping the parties' stock certificates (which he knew were worthless).  24 Ariz. App. at 269-71.

Similarly, Plaintiffs cite *Barnes v. Vozack*, 113 Ariz. 269, 550 P.2d 1070 (1976), for the proposition that Section 1991 "creates civil liability even if the defendant is not involved in the sale."  Opp. at 12.  Plaintiffs completely miss the point of *Barnes*.  In that case, the defendants were not held liable for violating Section 1991 based upon their involvement in some fraud separate and apart from the sales themselves.  Rather, they were held liable due to the fact that they "indirectly fraudulently sold stock . . . ."

---

[2] Curiously, Plaintiffs not only point to alleged fraud under Section 1991 (the sole basis of their complaint against Quarles), but they also argue that Quarles assisted ML's and RB's registration violations under A.R.S. sections 44-1841 and 1842 and violation of money laundering provisions of A.R.S.  section 13-2317(B). Opp. at 8.  Those allegations are not included in the FAC, and thus cannot defeat Quarles' motion.

113 Ariz. at 274.  The court found that the evidence tying the defendants to the sales was sufficient because they had a prior relationship with the purchaser, had just returned $17,000 to her, and controlled the company which – not coincidentally – returned and sold her exactly $17,000 worth of stock in two separate transactions.  *Id.* at 272-74.  The court did not suggest that a defendant may be held liable under Section 1991 without an intimate involvement with the sales themselves under Section 2003.

### D. The ML Investor Plaintiffs' Aiding and Abetting Claim Fails to Meet the Requirements of Section 2003.

Plaintiffs do not argue – because they cannot – that the ML investor plaintiffs' claims are sufficient under Section 2003.  Thus, they essentially concede that, if Section 2003 and/or *Standard Chartered* still apply following the 1996 amendments, the ML investors have no claim against Quarles.  Plaintiffs make a half-hearted attempt to recast the scant allegations in their complaint vis-à-vis Quarles and the ML investor plaintiffs, arguing that Quarles "worked with Greenberg" to retain funds by preparing a draft POM that never was used and preparing an interim disclosure document for use with RB investors; helped conceal securities violations; and helped ML "stay afloat" by assisting RB with raising money, which in turn provided liquidity to ML, which in turn helped ML conceal its alleged Ponzi scheme.  Opp. at 7.  Despite this attenuated connection, Plaintiffs conclude that Quarles "aided ML's fraud and made it easier for ML to continue selling its securities without disclosing the RB's securities violations that financed ML."  *Id.*[3]

None of those allegations, however, constitutes Quarles' participation in or inducement of *sales* to the ML investors.  Plaintiffs have pleaded absolutely no connection between Quarles and any of the ML investor plaintiffs or, more specifically, any sales by ML to its investors.  It does not avail Plaintiffs to make general allegations about Quarles' supposed assistance with the fraudulent "scheme" to keep ML "afloat."  Without allegations establishing Quarles' participation in or inducement of actual sales to ML

---

[3] Plaintiffs also cite to and attach to their Opposition certain documents and deposition testimony, but none of that material is proper for consideration upon a motion to dismiss.

investors, the ML investor plaintiffs' claims against Quarles fail.[4]

### E. The RB Investor Plaintiffs' Aiding and Abetting Claim is Duplicative.

Plaintiffs also fail to argue that they have pled sufficient facts to show that Quarles either participated in or induced any sales to the RB investor plaintiffs beyond the $20 million of sales to new investors (*i.e.*, those investors who allegedly received interim disclosure documents drafted in part by Quarles) upon which their statutory securities fraud claim is based. Instead, Plaintiffs merely point to their general allegations that Quarles knew of the alleged "scheme" to keep ML "afloat" through continued illegal fundraising by RB. Opp. at 15. Plaintiffs do not offer any reason why the RB investor plaintiffs' aiding and abetting claim based upon the $20 million of sales RB allegedly made using the interim disclosure document is not entirely duplicative of their statutory securities fraud claim based upon those same $20 million of sales.

Plaintiffs take issue with Quarles' additional argument as to why the RB investor plaintiffs' claim is duplicative, suggesting that Quarles' interpretation of Section 2003 as providing for a form of aiding and abetting liability is unwarranted. Opp. at 14. Plaintiffs' position is more than a little curious because their own counsel – whom Plaintiffs have taken to frequently citing in their briefs in this case – argues in one of his law review articles that the wording of Section 2003(A), the legislative goals behind the ASA, the 1996 amendments, and *Standard Chartered*'s definition of "participation" under Section 2003 all "point to the conclusion that ***aiding and abetting is a form of participant liability" under Section 2003***. Richard G. Himelrick, *The Importance of Statutory Text: From Scienter to Nonstatutory Defenses under Arizona Securities Law*, 41 Ariz. St. L.J. 49, 77-80 (Ariz. St. L.J. Spring 2009) (emphasis added). As Plaintiffs' counsel states, "The standard of knowingly providing substantial assistance that provides the common-law basis for aiding-and-abetting liability is also one way to incur participant liability

---

[4]While their reasoning is far from clear, Plaintiffs also argue that Quarles' IT policy of automatically deleting emails from inboxes after 60 days somehow constitutes "planned spoliation" and violates Arizona's ethical rules. Opp. at 6 & n.3. Quarles will fully address Plaintiffs' flawed understanding of both the discovery rules and the requirements of the ethical rules when and if the proper occasion arises.

under [Section 2003]." *Id.* at 80.

Moreover, Plaintiffs mischaracterize Quarles' argument as one involving preemption. Quarles does not argue that the ASA has preempted "common law" aiding and abetting liability – a claim that is not even included in Plaintiffs' FAC – but merely that Section 2003 already provides for a form of aiding and abetting liability by extending liability beyond the seller to those who participate in or induce the fraudulent sale. Neither *Grand* nor *State v. Superior Court* reached this issue.

The legislative history of the ASA does not contradict the idea that Section 2003 already provides for a form of aiding and abetting liability. Plaintiffs quote the statutory note to the 1996 amendments to the ASA: "'Nothing in this act . . . determines whether or in what circumstances aiding and abetting liability exists under Title 44, chapter 12, Arizona Revised Statutes….'" Opp. at 14, 15 n.9. Similarly, Plaintiffs argue that the initial draft of a bill that led to the 1996 amendments "would have eliminated liability for aiding and abetting in civil damage actions," but "[i]n the final bill, this proposal was itself eliminated." *Id.* at 15 n.9. The statutory history thus reveals that there was an unsuccessful proposal to explicitly bar aiding and abetting liability, but the legislature in the end essentially punted on the issue, leaving the then-existing state of the law in place. Because **nothing in the 1996 amendments** determines **whether** or **to what extent** aiding and abetting liability may exist, the legislative history provides no further guidance.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Quarles' Motion should be granted, and Plaintiffs' Third Claim for Aiding and Abetting Statutory Securities Fraud should be dismissed.

Dated: January 6, 2012                                   MORGAN, LEWIS & BOCKIUS LLP

By  /s/ Scott B. Garner
Scott B. Garner
Attorneys for Defendant Quarles &
Brady LLP

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Serap Karaman-Stothers
Paralegal

DB2/ 22880634.7