Andrew S. Friedman, #005425
**Bonnett, Fairbourn, Friedman & Balint, P.C.**
2901 N. Central Avenue. Suite 1000
Phoenix, Arizona 85012
Telephone: (602) 274-1100
Facsimile: (602) 274-1199
afriedman@bffb.com

Attorneys for Plaintiffs Fred C. Hagel and Jacqueline M. Hagel Revocable Living Trust Dated March 15, 1995; Judith A. Baker

Richard G. Himelrick, #004738
J. James Christian, #023614
**Tiffany & Bosco, P.A.**
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Telephone: (602) 255-6000
Facsimile:   (602) 255-0103
rgh@tblaw.com; jjc@tblaw.com

Attorneys for Plaintiffs Robert Facciola; The Robert Maurice Facciola Trust Dated December 2, 1994; Honeylou C. Reznik; The Morris Reznik and Honeylou C. Reznik Trust; Jewel Box Loan Company, Inc.; Jewel Box, Inc.; H-M Investments, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Facciola, et al.,<br><br>                    Plaintiffs,<br><br>vs.<br><br>Greenberg Traurig, LLP, et al.,<br><br>                    Defendants. | No.: 2:10-cv-01025-FJM<br><br>**Lead Plaintiffs' Joint Response to Greenberg's Motion to Dismiss Count One of First Amended Complaint** |

**Table of Contents**

**Page No.**

Table of Authorities ....................................................................................................................ii

    A. Greenberg's Motion Is Untimely .........................................................................1

    B. Greenberg's Motion Is Substantively Meritless......................................................1

    C. Greenberg Has Exhausted Its Dispositive Motions Limit......................................7

**Table of Authorities**

**Page No.**

**Cases**

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) ............................................................................................... 1

*Barnes v. Vozak*,
   113 Ariz. 269, 550 P.2d 1070 (1976) ...................................................................... 2

*Grand v. Nacchio*
   225 Ariz. 171, 236 P.3d 398 (2010) ........................................................................ 2

*Little v. First California Co.*,
   No. Civ. 74-71 Phx, 1977 WL 1055 (D. Ariz., Oct. 17, 1977) ................................ 2

*Standard Chartered PLC v. PriceWaterhouse*,
   190 Ariz. 6, 945 P.2d 317 (Ct. App. 1996) .............................................................. 2

*Strategic Diversity, Inc. v. Alchemix Corp.*
   ___F.3d ___, 2011 WL 6004607 (9th Cir. Dec. 2, 2011) ........................................ 2

**Statutes**

A.R.S. § 44-1991 ......................................................................................................... 2, 3

A.R.S. § 44-2003 ............................................................................................................. 2

Defendant Greenberg Traurig LLP's ("Greenberg") Motion to Dismiss First Amended Complaint (Doc. #299) ("D. Mtn.") requests summary dismissal of *only* the primary liability claim alleged against it by the Radical Bunny ("RB") Lead Plaintiffs in Count One of the First Amended Complaint (Dkt. #290) ("FAC").

### A. Greenberg's Motion Is Untimely

The Motion to Dismiss is in effect a motion for reconsideration of the Court's 11/21/11Order (Doc. #289), *reprinted at Facciola v. Greenberg Traurig*, No. CV-10-1025-PHX-FJM, 2011 WL 5833785, at *3 (D. Ariz. Nov. 21, 2011), where the Court granted RB Lead Plaintiffs leave to file their FAC as against Greenberg, in light of Greenberg's failure to oppose or make any futility argument in connection with the Lead Plaintiffs' motion for leave to amend. Doc. # 289, at 7:23-8:1 (noting further that the FAC purported to amend the pleadings to include additional facts establishing Greenberg's primary liability to the RB investors). Greenberg makes no attempt to explain why it sat on its hands in challenging the sufficiency of the FAC while the other defendants (Quarles & Brady and Mayer Hoffman) did so. Given the tight pre-trial schedule – in a case involving 14 experts, 40 depositions, and a March 13, 2012 discovery cutoff – Greenberg's motion to dismiss should be denied as untimely.

### B. Greenberg's Motion Is Substantively Meritless

Greenberg wrongly contends that the RB Lead Plaintiffs have alleged no actionable primary liability claim against it. To the contrary, RB Lead Plaintiffs have specifically addressed the "insufficient allegations" cited by the Court when initially dismissing the primary liability claims (06/09/11 Order (Doc. # 200), at 8-9), and the FAC now supplies ample detail satisfying the requirement of *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) that there be more than conclusory statements merely reciting the elements of the claim.

Distilled to its essence, Greenberg's argument is that RB Lead Plaintiffs supposedly cannot state an actionable claim against it for primary liability under the Arizona Securities Act ("ASA") absent an allegation that Greenberg drafted a selling

1

document that was "completed or shared with any RB investor." D. Mtn. at 2:5-7. Greenberg cites no Arizona case supporting such an argument, for there is none. To the contrary, the Arizona Supreme Court in *Grand v. Nacchio*, 225 Ariz. 171, 236 P.3d 398 (2010), recognized that A.R.S. § 44-1991 provides a cause of action for its "violations," and described the statute and its remedies as "broad," "sweeping," "remedial measure[s]" that are to be "liberally construed." *Grand,* 225 Ariz. at 174 ¶¶ 12, 16-17, 236 P.3d at 401. Because the statute and its remedies are "sweeping" remedial measures, any concern that extending primary liability to Greenberg would "sweep" too broadly is simply unfounded. *Id.*[1] A.R.S. § 44-2003 provides relief for the full range of misconduct prohibited by Section 1991. *See., e.g.*, *Strategic Diversity, Inc. v. Alchemix Corp.*, ___F.3d ___, 2011 WL 6004607, at *8-9, n. 2 (9th Cir. Dec. 2, 2011) (broadly interpreting the ASA and holding that (1) the ASA does not require a showing of damages for rescission, (2) rescissionary damages are available if rescission fails, and (3) under the ASA whether loss causation applies to rescissionary damages depends on equitable considerations).

Even before the *Grand* decision in 2010, the Arizona Supreme Court had already held that a defendant with no direct involvement in the sale to the plaintiff could be primarily liable for indirectly taking part in a fraudulent scheme. *See Barnes v. Vozak*, 113 Ariz. 269, 274, 550 P.2d 1070, 1075 (1976); *see also Little v. First California Co.*, No. Civ. 74-71 Phx, 1977 WL 1055, at *8 (D. Ariz., Oct. 17, 1977) (Copple, J.) (citing *Barnes* in holding that primary liability under Section 2003 exists when a defendant indirectly "participat[es] in [the] specific act of fraud").

---

[1] As Lead Plaintiffs have noted elsewhere (Doc. #297, at 8-10), the Supreme Court in *Grand II* used the very word—*sweep*—to overrule earlier concerns that the ASA was not meant to reach actors other than immediate sellers. *See, e.g., Standard Chartered PLC v. PriceWaterhouse,* 190 Ariz. 6, 21, 945 P.2d 317, 332 (Ct. App. 1996) (expressing concern that a broad construction of the ASA "might *sweep* within the statute" collateral actors who only acted to foreseeably contribute to or influence a sale) (emphasis added).

2

In its Motion Greenberg myopically focuses on misrepresentation/omission liability under Section 1991(A)(2) – completely ignoring *scheme* liability under Section 1991(A)(1) and (3), which are the sole grounds for primary liability under the ASA actively advanced against it by the RB investors in the FAC.[2] As explained in Lead Plaintiffs' Motion for Leave to Amend (Doc. #216), the FAC alleges that Greenberg and Quarles jointly encouraged, advanced and participated in the scheme by which ML raised millions of dollars through RB's unlawful securities sales. FAC ¶¶359-67, 377, 381-84. The scheme's success depended on collaboration by Greenberg and Quarles: to succeed (and for ML to survive), hundreds of millions of dollars had to be raised through unlawful securities sales to RB investors and funneled to ML. FAC ¶¶355-58. The unlawful securities sales to RB investors were an essential part of the overall scheme because ML lacked the financial capacity to repay the outstanding RB notes and did not have the ability to raise sufficient capital through unlawful sales to its own investors. FAC ¶¶351, 356, 381-82. RB likewise lacked the financial capacity to repay its investors and had told the lawyers it would not rescind its illegal securities offerings. FAC ¶¶320-24, 356. Thus, the existence of both ML and RB was dependent on the scheme to continue illegal sales to RB investors. FAC ¶¶74-75.

The FAC includes new allegations showing the manner in which Greenberg encouraged ML to continue the illegal fund-raising program that ML had begun with RB. FAC ¶¶131-44; *see, e.g.,* FAC ¶138 (new allegations regarding Greenberg's knowledge of the RB program, including near weekly discussions regarding RB); FAC ¶¶140-41 (brainstorming ways to keep the program operating); FAC ¶144 (providing repeated reassurance in 2006 and 2007 to ML's president, Michael Denning, that ML

---

[2] The FAC did not seek to reallege claims on behalf of the RB investors against Greenberg for violating Section 44-1991(A)(2); those claims were reserved solely for appeal. (Doc. # 216, at 11 n.5) To clarify the pleadings against Greenberg, the FAC now includes a distinct sub-count under Count One for the RB investor claims. *Id.*

3

could properly accept the proceeds of RB's securities violations). Greenberg's Robert Kant knew the securities that RB was illegally selling to the RB investors were a source of ongoing funding for ML and that ML continued to issue promissory notes to RB in return for money from RB's investors. FAC ¶147. In furtherance of the alleged fraudulent scheme, Kant even suggested having RB's Tom Hirsch become an employee of ML's in-house brokerage firm or that he obtain a securities license through the ML firm. FAC ¶154.

Indeed, throughout its representation of ML, Greenberg actively participated in the ongoing scheme as Kant supported Scott Coles' search for desperately needed capital by encouraging ML President Denning to have ML (a) create the securities (ML's promissory notes) that RB fractionalized and misrepresented as secured, (b) accept the proceeds of the illegal RB securities sales, and (c) issue a stream of 11 misleading ML POMs that disclosed neither ML's creation of securities for RB nor ML's past and continuing receipt of the illegal proceeds from these tainted securities. FAC ¶¶140-144; 359-363. Kant continually provided false assurances to ML that RB's securities violations were not an ML problem, thereby encouraging and inducing ML to continue soliciting funds raised in unlawful sales to RB's investors. FAC ¶¶144. Kant did so with full knowledge that RB was providing no disclosure documents to the RB investors and was falsely claiming that MLs' notes were collateralized by deeds of trust. FAC ¶¶17-18, 107, 147.

Even after Denning concluded matters were out of control and resigned from ML in early January 2007, Greenberg (Kant) continued to assist in the scheme – orchestrating the cover-up termination of whistleblower Furst while simultaneously creating two new POM's that offered more favorable interest rates for new investors, thus encouraging continued sales and concealing the underlying scheme targeting RB and ML investors. FAC ¶¶241-254, 363. On these facts, Greenberg was hardly a mere collateral actor in RB's sales. Quite the contrary; while accusing RB of securities crimes Kant simultaneously backed ML's quest for more money by encouraging ML to

4

keep accepting RB's tainted funds and issuing the securities (ML-to-RB promissory notes) that RB was fractionalizing to raise money from RB investors to fund ML's insolvent business.

Kant's role in inducing continuing sales to RB investors could scarcely be pleaded any clearer. RB Plaintiffs in the FAC lay out in excruciating detail Greenberg's active assistance in the scheme by which ML facilitated and accepted RB's unlawfully raised funds to sustain the false appearance of financial solvency. All the while Greenberg knew that RB was illegally creating and packaging securities collateralized by ML's promissory notes and continuing to raise funds from RB investors by illegally selling participation interests in these tainted ML notes. *See, e.g.*, FAC ¶¶351-353 (describing August 13, 2007 meeting where $4 million in new money during July 2007 was discussed); FAC ¶¶364 (describing $6.8 million promissory note for new money from RB in August 2007 that was circulated in September to Quarles and Greenberg attorneys). Greenberg was thus acutely aware of the toxic interdependence of ML and RB, the continued unregistered sales of securities by RB to its investors, and of ML's receipt and acceptance of the proceeds of those past and ongoing fund-raising efforts.

Indeed, at the August 13, 2007, "all hands meeting," Greenberg specifically acknowledged RB's continued fundraising for ML, even though it was made clear to all at the meeting (a) that RB's loans to ML had now reached $160 million, (b) that the only "collateral" backing the RB notes was ML's inventory of deeds of trust that was $30 million short of $160 million, and (c) that neither RB nor ML had the financial ability to make an offer of rescission needed to cure the past illegality. FAC ¶¶352-54, 356, 358. Despite this knowledge, Greenberg convinced ML and RB that the illegally funds could still be retained through restructuring RB and preparing new offering materials. FAC ¶¶358, 363. As part of the alleged fraudulent scheme, Greenberg and Quarles jointly worked on a POM and LLC for RB investors. FAC ¶¶359-362, 364-72. By agreement between Greenberg, Quarles, and the firms' clients, the interim RB investors and others who had previously invested were to be rolled into a new LLC

5

when the POM was complete. FAC ¶358. During that meeting Greenberg agreed to ghost-write a POM for RB for use in lieu of a rescission offering. FAC ¶¶358-60, 382-83. Greenberg prepared the offering document without any mention of past illegality or rescission rights. FAC ¶¶284, 363. 370. In September of 2007, Kant highlighted the fraud when he acknowledged to the Quarles' lawyers that any disagreement between the ML and RB principals would result in ML's failure to repay the outstanding notes in cash and potential exposure of RB's ongoing illegal securities sales. FAC ¶361. Ultimately, though, the RB POM and LLC were not used, because RB's fundraising for ML (or, to use Kant's euphemism, its "operating in a questionable manner") continued unabated without it – right up through the day Coles committed suicide in June 2008. FAC ¶¶361-62, 375.

In sum, Kant and Greenberg were anything but remote actors in the continuing fraudulent scheme to sell RB's securities in violation of the ASA. The FAC adds the requisite specific factual allegations showing how Greenberg, acting with scienter, took part in RB and ML's securities fraud by providing advice and working on documents that encouraged RB to sell ML's note participations -- all while specifically encouraging ML to accept the fraud-tainted money. FAC ¶¶359-63. In this way, Greenberg engaged (directly or indirectly) in primary violations under Section 1991(1) and (3) in connection with the fraudulent scheme to sell ML securities to RB investors no less than to ML investors.

Greenberg also tries to minimize the significance of its preparation of the draft RB POM, arguing that "the draft RB POM was intended to and would have brought RB into compliance with the law…." D. Mtn. at 2:7-10. But this argument is specious: the RB POM (like the several ML POM's drafted by Greenberg) *did not* disclose RB's past illegality or ML's laundering of the funds raised thereby. FAC ¶284, 369-70. The ghost-written RB POM could never have been part of a compliant offering without disclosure of RB's past illegal fundraising. Indeed, the only defense expert to address the issue (Lawrence M. Hecker) concedes in his report that "a future private placement

6

memorandum for a restructured [RB] in all likelihood would have had to disclose possible prior securities violations by the [RB] principals and the legal repercussions resulting from those violations."

In short, Greenberg's preparation of the RB POM – itself a step taken in furtherance of the fraudulent scheme – would not by any stretch have "brought RB into compliance with the law" even if had been used.

**C. Greenberg Has Exhausted Its Dispositive Motions Limit**

The Rule 16 Scheduling Order in this case provides:

> 10. All dispositive motions shall be filed no later than **April 13, 2012. A party or parties represented by the same lawyer shall file no more than one motion for summary judgment unless leave of Court is obtained.**

(Doc. #199) ¶10 (emphasis original). The Court, by this order, no doubt intended to preclude successive requests for summary disposition, which is exactly what Greenberg seeks to accomplish through its current Motion. Because Greenberg's Motion should be denied as untimely or meritless or both for the reasons set forth above, Greenberg should now be precluded from filing any further dispositive motions without leave of Court in accordance with this ¶10.[3]

Dated: January  9 , 2012.   BONNETT, FAIRBOURN, FRIEDMAN
                              & BALINT, P.C.

                               s/ *Andrew S. Friedman*
                              Andrew S. Friedman
                              Bonnett, Fairbourn, Friedman
                               & Balint, P.C.
                              2901 N. Central Avenue, Suite 1000
                              Phoenix, AZ  85012
                              *Attorneys for Plaintiffs Fred C. Hagel and Jacqueline M. Hagel Revocable Living Trust Dated March 15, 1995; Judith A. Baker*

---

[3] The same rationale applies to Quarles' bid for summary dismissal of Lead Plaintiffs' secondary liability claims (Doc. #294).

7

| | |
|---|---|
| 1 | TIFFANY & BOSCO, P.A. |
| 2 | s/ *Richard G. Himelrick  with permission* |
| 3 | Richard G. Himelrick<br>J. James Christian |
| 4 | Third Floor Camelback Esplanade II |
| 5 | 2525 E. Camelback Road<br>Phoenix, AZ  85016-4237 |
| 6 | *Attorneys for Plaintiffs Robert Facciola; The Robert Maurice Facciola Trust Dated December 2, 1994; Honeylou C. Reznik; The Morris Reznik and Honeylou C. Reznik Trust; Jewel Box Loan Company, Inc.; Jewel Box, Inc.; H-M Investments, LLC* |

8

**CERTIFICATE OF SERVICE**

I hereby certify that on January   9  , 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                       s/ *Andrew S. Friedman*
                                          Andrew S. Friedman

#15283-1  492704

9