**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Robert Facciola, et al., | ) | No. CV-10-1025-PHX-FJM |
| Plaintiffs, | ) | |
| vs. | ) | **ORDER** |
| Greenberg Traurig LLP, et al., | ) | |
| Defendants. | ) | |

The court has before it Greenberg Traurig, LLP's motion to dismiss count 1 of the amended complaint (doc. 299), the lead plaintiffs' joint response (doc. 302), and Greenberg's reply (doc. 307). We also have before us Quarles & Brady LLP's motion to dismiss the first amended complaint (doc. 294), lead plaintiffs' joint response (doc. 297) and Quarles' reply (doc. 301).

**I. Greenberg Motion to Dismiss**

Greenberg moves to dismiss the Radical Bunny ("RB") plaintiffs' primary liability claim under the Arizona Securities Act ("ASA"), A.R.S. § 44-1991(A). We granted Greenberg's first motion to dismiss the RB plaintiffs' primary liability claim, concluding that the allegations related to Greenberg's involvement in RB securities transactions were insufficient to state a claim under A.R.S. § 44-19991(A). Order (doc. 200). Plaintiffs then filed a first amended complaint ("FAC") asserting new allegations against Greenberg.

1 Greenberg now argues that the FAC does not cure the pleading deficiencies and asks us again
2 to conclude that the RB plaintiffs have failed to state a claim for a primary securities fraud
3 violation against Greenberg.

4 Plaintiffs first argue that Greenberg's motion to dismiss is untimely because
5 Greenberg failed to oppose plaintiffs' motion for leave to amend. The Federal Rules of Civil
6 Procedure, however, do not require a party to oppose a motion to amend instead of filing a
7 motion to dismiss. While judicial efficiency and expediency would have favored a resolution
8 of all pleading issues in connection with plaintiffs' motion to amend, there is nothing in the
9 Rules that prohibits defendant's decision to file a motion to dismiss.

10 The FAC broadly alleges a fraudulent scheme perpetrated by Mortgages Ltd. ("ML")
11 and RB, whereby ML raised millions of dollars through RB's unlawful securities sales to RB
12 investors. ML is alleged to have issued promissory notes to RB in exchange for loans that
13 ML used to operate its business. The ongoing infusion of funds from the securities sales to
14 RB investors was critical to ML's survival because ML was insolvent and continuing to
15 operate only because of its Ponzi scheme. RB syndicated and sold nearly $200 million in
16 pass-through interests in ML notes to RB investors through false representations that the
17 investments were secured by deeds of trust, when in reality there was no security. RB is
18 alleged to have operated as an unlicensed securities dealer for ML in selling nonexempt,
19 unregistered note participations that funded ML's operations. Greenberg, as legal counsel
20 for ML, and Quarles, as legal counsel for RB, are alleged to have jointly encouraged,
21 advanced and participated in the fraudulent scheme.

22 By its express terms, A.R.S. § 44-1991(A) prohibits direct or indirect fraud in
23 connection with the purchase or sale of securities. Section 44-2003 extends the civil remedy
24 in § 44-2001, to the "narrower range of persons 'who made, participated in or induced the
25 unlawful sale.'" See Standard Chartered PLC v. Price Waterhouse, 190 Ariz. 6, 22, 945 P.2d
26 317, 333 (Ct. App. 1996) (quoting A.R.S. § 44-2003(A)).

27 In support of their securities fraud claim against Greenberg, the RB Plaintiffs contend
28 that the FAC includes new allegations demonstrating the manner in which Greenberg

1  indirectly took part in the scheme to sell securities to RB investors. Specifically, plaintiffs
2  assert that Greenberg encouraged ML to continue the illegal fundraising program between
3  ML and RB, FAC ¶¶ 131-44; Greenberg knew of the illegal RB securities sales, FAC ¶ 143;
4  Greenberg's Robert Kant knew that the illegal RB securities sales was a critical source of
5  ongoing funding for ML, FAC ¶ 147; Kant explored alternative ways to keep the ML-RB
6  program operating, FAC ¶¶ 140-41, 358, 363; Greenberg provided assurances to ML's
7  president, Michael Denning, that ML could properly accept the proceeds of RB's securities
8  violations, FAC ¶ 144; Kant suggested that RB's Tom Hirsch become an employee of ML's
9  in-house brokerage firm or that he obtain a securities license through the ML firm, FAC ¶
10 154; Kant continually provided false assurances to ML that RB's securities violations were
11 not an ML problem, thereby encouraging ML to continue to accept funds raised in unlawful
12 sales to RB's investors, FAC ¶ 144.

13        In essence, the RB Plaintiffs argue that because Greenberg directly encouraged and
14 assisted in ML's fraudulent scheme, including the sale of ML securities, combined with the
15 interdependence of the ML and RB schemes, Greenberg also "participated" in RB's
16 securities sales, within the meaning of the ASA. While we recognize that § 44-1991 and its
17 remedies are described as "broad," "sweeping," "remedial measure[s]" that are to be
18 "liberally construed," Grand v. Nacchio ("Grand II"), 225 Ariz. 171, 174, 236 P.3d 398, 401
19 (2010), we believe that the RB Plaintiffs' theory of primary liability against Greenberg would
20 sweep too far. It is not enough to assert that a defendant had some attenuated connection to
21 a fraudulent scheme. To support a claim of primary liability under A.R.S. § 44-1991(A), a
22 plaintiff must show that the defendant "participated in" or "induced" the sale or purchase of
23 securities. See A.R.S. § 44-2003(A). The requisite participation or inducement can have an
24 "indirect" relationship with the sale of securities, see A.R.S. § 44-1991(A), but Greenberg's
25 involvement must have some identifiable connection to the sale of RB securities.

26        Greenberg's alleged involvement in the RB fraudulent scheme through its assistance
27 and encouragement of ML is too attenuated and remote from the sale of RB securities to
28 satisfy the participation or inducement requirements. Although it is alleged that Greenberg

- 3 -

made various efforts to assist RB, none of those efforts are connected, directly or indirectly, to any eventual sale of RB securities.

In so holding, we reject plaintiffs' reliance on Barnes v. Vozack, 113 Ariz. 269, 550 P.2d 1070 (1976), where the Arizona Supreme Court examined liability for indirect fraud. Through various misstatements, a salesman sold stock in Budget Control, Inc. to plaintiff. The salesman was directly liable under § 1991(A). The court also concluded, however, that three additional defendants, who controlled Budget through stock ownership and a management contract, were also primarily liable for violating § 1991(A), although there was no evidence that any of the three defendants personally solicited the plaintiff's investment. The court based its decision on the defendants' control over Budget and the salesman who sold the stock. In Barnes, the "connection" to the securities transaction was defendants' indirect control over the salesman. No similar connection is asserted by RB Plaintiffs against Greenberg.

We grant Greenberg's motion to dismiss the RB Plaintiffs' primary liability claim against Greenberg (doc. 299).

## II. Quarles Motion to Dismiss

In our order on plaintiffs' motion for leave to amend the complaint, we concluded that the RB Plaintiffs sufficiently stated a claim against Quarles for primary liability under A.R.S. § 44-1991(A); that the ML Plaintiffs failed to state a claim against Quarles for primary liability under § 1991(A); and that both the ML and RB Plaintiffs sufficiently pled claims against Quarles for aiding and abetting securities fraud. Order (doc. 289). Quarles now moves to dismiss the aiding and abetting claims by both the ML and RB plaintiffs.

### A. ML Plaintiffs' Aiding and Abetting Claims

To state a claim for aiding and abetting fraud, a plaintiff must plead (1) a primary violation has occurred; (2) defendant's knowledge or duty of inquiry with regard to the primary violation; and (3) the defendant "substantially assist[ed] or encourage[d]" the primary actor's violation. Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons, 201 Ariz. 474, 485, 38 P.3d 12, 23 (2002). In their motion to dismiss, Quarles

- 4 -

focuses solely on the substantial assistance prong, arguing that under Arizona's aiding and abetting law plaintiffs must show that a defendant provided substantial assistance in the fraudulent sale of securities, and not just in the fraudulent scheme. Without citation to authority, Quarles contends that because A.R.S. § 44-2003(A) extends liability under the ASA only to those who "made, participated in or induced" *a fraudulent sale*, aiding and abetting liability must similarly be tied to fraudulent sales. In other words, Quarles argues that the secondary violator—the aider and abettor—must also be a primary violator under § 44-2003. According to Quarles, our conclusion that the ML Plaintiffs failed to adequately plead that Quarles participated in or induced ML sales, forecloses the ML Plaintiffs' aiding and abetting claim as well.

Quarles' argument is contradicted by the Arizona Supreme Court's definition of "substantial assistance" in the context of a claim for aiding and abetting a violation of the ASA. In State v. Superior Court, 123 Ariz. 324, 331, 599 P.2d 777, 784 (1979), overruled on other grounds by State v. Gunnison, 127 Ariz. 110, 618 P.2d 604 (1980), the court defined "substantial assistance" as "a necessary contribution to the underlying [fraudulent] scheme by the person charged." State v. Superior Court "stands as the law currently controlling" secondary liability for aiding and abetting securities fraud under A.R.S. § 44-1991(A). Wojtunik v. Kealy, 394 F. Supp. 2d 1149, 1170 (D. Ariz. 2005). The Arizona Supreme Court recently cited Wojtunik with approval, and reaffirmed the three-part State v. Superior Court test. See Grand II, 225 Ariz. at 177, 236 P.3d at 404. Therefore, the relevant inquiry is whether the plaintiffs have sufficiently pled that Quarles provided a necessary contribution to ML's underlying fraudulent scheme.[1]

The primary statutory securities fraud violation in this case is the fraudulent scheme

---

[1] We note that in Wells Fargo, the Arizona Supreme Court defined the "substantial assistance" prong of the aiding and abetting test as "whether the assistance makes it 'easier' for the violation to occur, not whether the assistance was necessary." 201 Ariz. at 489, 38 P.3d at 27. Rather than resolve the apparent inconsistency, we apply the stricter "necessary contribution" test.

- 5 -

perpetrated by ML and RB. ML sold its own stock and also raised millions of dollars through RB's unlawful securities sales to RB investors. The ongoing infusion of funds by RB investors into ML was critical to ML's survival and continued ability to sell ML securities. Plaintiffs allege that although Quarles knew that RB was continuing to raise money for ML, Quarles declined to withdraw its representation, and instead prepared temporary disclosure documents to be used "right away" to raise more money for ML. These temporary documents did not disclose the past securities violations that exposed ML and RB to regulatory shutdowns and hundreds of millions of dollars in contingent liabilities. FAC ¶ 346. Thus, Quarles is alleged to have provided the advice and assistance needed to allow RB to continue to raise funds for ML, thereby allowing ML to hide its insolvency and to continue the fraudulent sale of ML securities. In this way, Quarles provided a necessary contribution to ML's underlying fraudulent scheme.

We conclude that ML Plaintiffs have sufficiently pled an aiding and abetting securities fraud claim against Quarles.

### B. RB Plaintiffs' Aiding and Abetting Claim

Quarles also moves to dismiss the RB Plaintiffs' claim for aiding and abetting securities fraud, arguing that the common law aiding and abetting claim is duplicative of and therefore subsumed by the state statutory securities fraud claim. Again, Quarles argues that Arizona's securities fraud statutes provide the only form of aiding and abetting liability.

We have already rejected Quarles' argument that plaintiffs' common law aiding and abetting claim should no longer be recognized under Arizona law. In an order dated June 9. 2011, we confirmed that State v. Superior Court remains controlling Arizona law for aiding and abetting liability under the ASA. Order (doc. 200) at 14. Arizona courts have clearly established that a primary violation of the ASA and a common law aiding and abetting violation are two distinct claims. In 2010, the Arizona Supreme Court declined to modify State v. Superior Court and instead reaffirmed the three-part test used for aiding and abetting liability. See Grand II, 225 Ariz. at 177, 236 P.3d at 404.

Quarles now seeks to revise Arizona's aiding and abetting law by adding a fourth

1  element–requiring a defendant's participation in a particular securities sale. The proposed
2  fourth element would improperly conflate secondary liability into a form of primary liability
3  under A.R.S. § 44-2003(A) and is directly contrary to the three-part test recognized in State
4  v. Superior Court. Moreover, in A.R.S. § 44-2005, the Arizona legislature confirmed that
5  "[n]othing in this article shall limit any statutory or common law right of any person in any
6  court for any act involved in the sale of securities," including, presumably, a common law
7  claim for aiding and abetting securities fraud. We deny Quarles' motion to dismiss the RB
8  Plaintiffs' aiding and abetting claim.

### III. Conclusion

**IT IS ORDERED GRANTING** Greenberg's motion to dismiss the RB Plaintiffs' primary statutory securities fraud claim against Greenberg (doc. 299).

**IT IS FURTHER ORDERED DENYING** Quarles' motion to dismiss the ML Plaintiffs and RB Plaintiffs' claims against Quarles for aiding and abetting statutory securities fraud (doc. 294).

DATED this 16th day of March, 2012.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge