**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Robert Facciola, et al., | ) | No. CV-10-1025-PHX-FJM |
| Plaintiffs, | ) | **ORDER** |
| vs. | ) | |
| Greenberg Traurig LLP, et al., | ) | |
| Defendants. | ) | |

**I**.

Plaintiffs filed this putative class action on behalf of individuals who purchased investment products offered by Mortgages, Ltd. ("ML"), a private mortgage lender in the business of making high-interest bridge loans to real estate developers ("ML Plaintiffs"), and Radical Bunny, LLC ("RB"), who sold pass-through interests in the loans made by ML ("RB Plaintiffs"). The proposed class period for both classes is May 16, 2006 through June 3, 2008.

Lead plaintiffs contend that defendants Greenberg Traurig, LLP ("Greenberg"), legal counsel for ML, and Quarles & Brady, LLP ("Quarles"), legal counsel for RB, participated in a fraudulent scheme, whereby RB raised millions of dollars through illegal securities sales in pass-through interests in loans originated by ML in order to fund ML's ongoing operations and hide ML's insolvency. Although RB represented that it sold mortgage-backed securities, the investments were in fact unsecured, the securities were not registered, and the RB

1 principals were not licensed to sell securities—all in violation of Arizona securities law. During the period from September 1, 2005 through June 3, 2008, ML and RB together raised over $900 million from more than 2,000 investors nationwide. Plaintiffs allege that ML eventually adopted a "Ponzi" scheme allowing it to hide its insolvency and remain in business by finding new investors through RB to pay its existing debt. Precipitated by the collapse of the real estate market and ML's inability to continue funding loans, ML experienced financial collapse in 2008. ML CEO Scott Coles committed suicide in June 2008, and ML filed bankruptcy two weeks later. Four months later, RB also filed bankruptcy.

Plaintiffs originally filed this action against the former managers of the two companies, as well as Greenberg, Quarles, and ML's outside auditors ("Accountant Defendants"). Early in the litigation plaintiffs voluntarily dismissed the claims against the ML and RB managers with prejudice (docs. 180, 183), and in an order dated June 9, 2011, we granted the Accountant Defendants' motion to dismiss (doc. 200).

Lead plaintiffs argue that they and members of the proposed classes were defrauded in the Ponzi scheme and that the actions of Greenberg and Quarles helped create a façade of legitimacy, enabling the Ponzi scheme and the ongoing illegal securities sales to continue. Robert Facciola and Honeylou Reznik, on behalf of investors in ML securities, and Fred Hagel and Judith Baker, on behalf of investors in RB securities, seek to certify two classes under A.R.S. § 44-2001(A) for violations of § 44-1991(A)(1) and (3), which makes it unlawful for a person, in connection with the sale or purchase of securities, to do any of the following:

(1) Employ any device, scheme or artifice to defraud.

(3) Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

Based on our prior orders dismissing various claims, what remains in this motion for class certification are the ML Plaintiffs' claims under § 44-1991(A)(1) and (3) against Greenberg, and the RB Plaintiffs' claims under the same provisions against Quarles. Plaintiffs argue that

- 2 -

1  the classwide fraudulent scheme unites all investors by creating a common injury and
2  common statutory violation, thereby supplying the common basis for class certification under
3  Rule 23, Fed. R. Civ. P.

4      We now have before us plaintiffs' motion for class certification (doc. 256), Quarles'
5  response (doc. 261), Greenberg's response (doc. 264), the Accountant Defendants' response
6  (doc. 263)[1], and plaintiffs' replies (doc. 268, 269, 270).

## II.

### A. Standing

9      Greenberg first argues that the named plaintiffs lack standing to pursue claims made
10 pursuant to securities offerings in which they did not invest.  They argue that the proposed
11 class of ML investors purchased over 130 different securities pursuant to varying offering
12 and investment documents, but the named plaintiffs invested in only a handful of the total
13 securities.  Therefore, Greenberg argues that the named plaintiffs lack standing to pursue
14 claims based on the other securities and offerings.

15     Plaintiffs counter that all of the proposed class members were defrauded in the same
16 Ponzi scheme sponsored by the same two companies.  They contend that the fraud on which
17 this case turns, and which unites all proposed class members, is the Ponzi scheme.
18 Therefore, plaintiffs argue that all class members have standing because they suffered a
19 common injury from, and share a common statutory remedy for, the Ponzi scheme.

20     "[S]tanding is gauged by the specific common-law, statutory or constitutional claims
21 that a party presents."  Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S.
22 72, 77, 111 S. Ct. 1700, 1704 (1991).  "[P]laintiffs with a valid securities claim may
23 represent the interests of purchasers of other types of securities in a class action where the
24 alleged harm stems from the same allegedly improper conduct."  In re Juniper Networks, Inc.
25 Sec. Litigation, 264 F.R.D. 584, 594 (N.D. Cal. 2009); see also In re Sepracor Inc., 233

---

[1] We rely on the Accountant Defendants' briefs to the extent they are incorporated by Greenberg and Quarles' arguments.

1  F.R.D. 52, 56 (D. Mass. 2005) (appointing purchaser of options as lead plaintiff for class that
2  included purchasers of all of defendant company's equity securities). "[Courts] often appoint
3  purchasers of one type of securities to represent purchasers of other types of securities of the
4  same issuer where the interests of those purchasers are aligned." In re Juniper Networks, 264
5  F.R.D. at 594.

6  Here, plaintiffs challenge defendants' conduct—participation in a Ponzi scheme—as
7  a violation of A.R.S. § 44-1991(A)(1) and (3). Plaintiffs' injury—lost investment—can be
8  fairly traced to the challenged actions of defendants and their alleged participation in the
9  fraudulent scheme perpetrated by the principals of ML and RB. If plaintiffs prevail on their
10 claim, the injury is likely to be redressed through rescission under A.R.S. § 44-2001(A).
11 Because lead plaintiffs, as well as their proposed class members, suffered the same injury
12 from the same fraudulent scheme, and share a common statutory remedy, we conclude that
13 the lead plaintiffs have standing to assert claims on behalf of the proposed classes regardless
14 of the specific type of security offering they purchased .

### B. Securities Litigation Uniform Standards Act

16 Greenberg also argues that this action is barred by the Securities Litigation Uniform
17 Standards Act ("SLUSA"), 15 U.S.C. § 77p(b), and should be dismissed. Congress enacted
18 the Private Securities Litigation Reform Act ("PSLRA"), Pub. L. 104-67, 109 Stat. 737
19 (1995), to combat "perceived abuses of the class-action vehicle in litigation involving
20 nationally traded securities." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S.
21 71, 81, 126 S. Ct. 1503, 1510 (2006). The PSLRA, among other things, caps damage and
22 attorney's fee awards, and imposes heightened pleading requirements and sanctions for
23 frivolous litigation. In order to avoid the PSLRA restrictions, some plaintiffs began filing
24 securities class actions under state law, often in state court. "To stem this shif[t] from
25 Federal to State courts and prevent certain State private securities class action lawsuits
26 alleging fraud from being used to frustrate the objective of [the PSLRA], Congress enacted
27 SLUSA." Id. at 82, 126 S. Ct. at 1511 (quotations omitted).

28 SLUSA provides that "[n]o covered class action" alleging state law fraud in

- 4 -

1  "connection with the purchase or sale of a covered security" "may be maintained in any State
2  or Federal court." 15 U.S.C. § 78bb(f)(1). "Covered securities" are defined as securities
3  traded on national exchanges or issued by a registered investment company. See 15 U.S.C.
4  §§ 77p(f)(3), 77r(b)(1), (2); see also Kircher v. Putnam Funds Trust, 547 U.S. 633, 637, 126
5  S. Ct. 2145, 2151 (2006). Whether a fraudulent purchase or sale of a security falls within
6  SLUSA depends on whether the fraud alleged "coincide[s] with a securities transaction,"
7  Dabit, 547 U.S. at 85, 126 S. Ct. at 1513, or stated another way, whether there was
8  "deception in connection with the purchase or sale of [a covered] security." Id.

9        Here, the alleged fraud stems from the sale of ML and RB securities, neither of which
10 were traded on a national exchange or issued by a registered investment company.
11 Therefore, they are not "covered securities" within the meaning of SLUSA. Greenberg
12 nevertheless argues that because some named plaintiffs, and presumably putative class
13 members, liquidated funds invested in covered securities in order to purchase ML and RB
14 securities, the alleged fraud in this action was "in connection with the purchase or sale of a
15 covered security," such that the SLUSA preclusion applies. We disagree. Although the
16 Securities Exchange Commission and the courts have ascribed a broad construction of "in
17 connection with a covered security," id., Greenberg has cited no case, and we have found
18 none, that would stretch the language of the securities fraud provisions to encompass this
19 incidental and remote covered securities transaction.

20       Here, the covered securities sales and defendants' alleged fraudulent practices were
21 independent events.  This is a case where after a lawful securities transaction is
22 consummated, the defendant fraudulently steals the proceeds. See SEC v. Zandford, 535
23 U.S. 813, 820-21, 122 S. Ct. 1899, 1903-04 (2002) (stating that the alleged fraud must
24 somehow "coincide[]" with the covered sales). We will not construe "in connection with"
25 so broadly as to "convert every common-law fraud that happens to involve securities into a
26 violation of [federal securities laws]." Id. We conclude that SLUSA does not apply in this
27 case.

28

### III. Class Certification

Plaintiffs seek to certify two classes of plaintiffs—first, a class of ML investors comprised of approximately 975 investors who invested approximately $600 million in ML securities between May 16, 2006 and June 3, 2008; and second, a class of RB investors comprised of approximately 770 investors who invested approximately $197 million in RB securities during the same period. Lead plaintiffs from both classes seek class certification only on their scheme liability claims for statutory rescission under A.R.S. § 44-1991(A)(1) and (3) and § 44-2001(A). To support these claims, lead plaintiffs from both classes must prove (1) the existence of a scheme or fraudulent course of business that violated A.R.S. § 44-1991(A)(1) or (3); and (2) that defendants either participated in or induced the fraudulent sales. See A.R.S. § 44-2003(A).

A party seeking class certification bears the burden of satisfying each of the four requirements of Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality and adequate representation. The party must also establish an appropriate ground for maintaining class actions by satisfying at least one of the three requirements set forth in Rule 23(b). Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1019 (9th Cir. 2011). Class certification is appropriate only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982). Failure to meet any one of the Rule 23 requirements precludes class certification.

### A. Numerosity

Rule 23(a)(1) requires that plaintiffs establish that the putative class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The parties do not dispute that the proposed classes, comprised of approximately 975 ML investors and 770 RB investors, satisfy the numerosity requirement.

### B. Commonality

Commonality exists where there are "questions of law or fact common to the class."

1  Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, plaintiffs must establish
2  that there is "some shared legal issue or a common core of facts." Rodriguez v. Hayes, 591
3  F.3d 1105, 1122 (9th Cir. 2010). Stated differently, the "claims must depend upon a common
4  contention . . . [that is] capable of classwide resolution." Wal-Mart Stores, Inc. v. Dukes,
5  131 S. Ct. 2541, 2551 (2011). "What matters to class certification [is] the capacity of a
6  classwide proceeding to generate common *answers* apt to drive the resolution of the
7  litigation." Id. (emphasis in original, citation omitted).

8  Here, common legal issues include the existence and operation of the underlying
9  Ponzi scheme; defendants' knowledge (or reckless disregard) of the illegality of the securities
10 sales and the insolvency that the scheme concealed; defendants' active participation in the
11 scheme by, for example, authoring false and misleading offering documents that made the
12 scheme possible; defendants' failure to withdraw their offering documents and end their
13 representation; and defendants' continued assistance in allowing their professional credibility
14 and offering documents to be used to perpetuate the scheme. These issues are not unique to
15 any particular member of the proposed classes. Therefore, we conclude that plaintiffs have
16 sufficiently demonstrated the existence of common legal and factual issues in satisfaction of
17 Rule 23(a)(2).

### C. Typicality

19 Under the "typicality" prong of Rule 23(a)(3), plaintiffs must establish that the claims
20 or defenses of the named plaintiffs are typical of the class. The test of typicality is "whether
21 other members have the same or similar injury, whether the action is based on conduct which
22 is not unique to the named plaintiffs, and whether other class members have been injured by
23 the same course of conduct." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir.
24 2011). "Typicality refers to the nature of the claim or defense of the class representative, and
25 not to the specific facts from which it arose." Hanon v. Dataprods. Corp., 976 F.2d 497, 508
26 (9th Cir. 1992). A named plaintiff's motion for class certification should be denied if there
27 is a "danger that absent class members will suffer if their representative is preoccupied with
28 defenses unique to it." Id. (citation omitted). The typicality requirement is "permissive" and

1 requires only that the representative's claims be "reasonably co-extensive with those of
2 absent class members; they need not be substantially identical." Rodriguez, 591 F.3d at 1124
3 (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

4 Here, the claims of all investors in the proposed classes turn on a common scheme
5 premised on the same alleged course of conduct by defendants. Similarly, lead plaintiffs and
6 members of the proposed classes are entitled to the same statutory rescission remedy under
7 the Arizona Securities Act in the event that liability is established. Grand v. Nacchio
8 ("Grand I"), 214 Ariz. 9, 23, 147 P.3d 763, 777 (2006). We conclude that the named
9 plaintiffs' claims are sufficiently typical of the classes as a whole to satisfy Rule 23(a)(3).

### D. Adequacy

11 Rule 23(a)(4), Fed. R. Civ. P., requires that the class representatives "will fairly and
12 adequately protect the interests of the class." The adequacy requirement depends on (1)
13 whether the class representatives and their counsel have any conflicts of interest with other
14 class members; and (2) whether the class representatives and their counsel will prosecute the
15 action vigorously on behalf of the class. Stanton v. Boeing Co., 327 F.3d 938, 957 (9th Cir.
16 2003).

17 Defendants challenge the adequacy requirement on several grounds. First, defendants
18 argue that the proposed class representatives are not adequate because they have engaged in
19 improper claim splitting, by abandoning their claims under § 44-1991(A)(2) and instead
20 seeking to certify claims under § 44-1991(A)(1) and (3) only, to the detriment of the absent
21 class members. It is appropriate, however, to ask to certify the more readily certifiable
22 claims where those claims, once proved, will afford class members full recovery on a
23 classwide basis. There is no rule that requires class certification of every conceivable cause
24 of action. In some instances, opting not to assert certain claims may be an essential part of
25 adequate representation. We agree that lead plaintiffs' decision to focus their claims on
26 fraudulent scheme liability under § 44-1991(A)(1) and (3) promotes rather than diminishes
27 the interests of absent class members. This course would provide the remedy of rescission
28 for full recovery of losses, without requiring individual proof of reliance or causation.

- 8 -

1   Next, Quarles asserts that Fred Hagel was a founding member of RB and a close
2   friend and business partner of RB manager Tom Hirsch, a former defendant in this action
3   who is alleged to have knowingly committed securities fraud in his dealings with RB
4   investors. Quarles claims that because of this relationship, Hagel is subject to unique
5   defenses that destroy typicality and adequacy. Plaintiffs dispute these allegations and instead
6   assert that Hirsch listed Hagel as a founder of RB without Hagel's knowledge or consent.
7   Hagel Depo. at 57-58, 208-10. Hagel testified that he was befriended by Hirsch, who was
8   his CPA, and that because of this relationship, he felt all the more betrayed when RB's
9   misconduct was eventually revealed. Quarles does not argue that Hagel was privy to the
10  Ponzi scheme, to ML's insolvency, or to Quarles' role in that scheme. Nor does Quarles
11  show that Hagel had any conflict of interest that precludes him from vigorously prosecuting
12  the RB investors' class claims. We can find no "unique defense" that would weaken Hagel's
13  claim.

14  Finally, although Quarles challenges the named RB Plaintiffs as inadequate because
15  they both made their original decisions to invest in RB securities before Quarles was retained
16  in early 2007, Quarles also acknowledges that the named RB Plaintiffs made rollover
17  investments after Quarles' engagement. See Quarles' Response at 8. Rollover investments
18  are another form of a securities purchase.

### E.  Rule 23(b)(3)

20  Plaintiffs must not only satisfy the four requirements of Rule 23(a), but must also
21  show that their proposed class action fits within one of the three kinds of class actions listed
22  in Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), which requires that
23  "questions of law or fact common to class members predominate over any questions affecting
24  only individual members, and that a class action is superior to other available methods for
25  fairly and efficiently adjudicating the controversy." Fed. R. Civ. 23(b)(3). Class certification
26  is appropriate where the "proposed classes are sufficiently cohesive to warrant adjudication
27  by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231,
28  2249 (1997). But "[i]f the main issues in a case require the separate adjudication of each

class member's individual claim or defense, a Rule 23(b)(3) action [is] inappropriate." Zinser v. Accufix Research Inst., 253 F.3d 1180, 1189 (9th Cir. 2001) (citation omitted).

### 1. Reliance

Quarles first argues that the proposed class fails the predominance requirement because reliance is an element of a § 44-1991(A) claim and therefore individual investors must prove reliance on a specific misrepresentation or omission in making their investment decisions. Relying on federal securities case law, Quarles argues that to establish a securities fraud claim under the Arizona Securities Act, each plaintiff must show "the dual and independent requirements of transaction causation [reliance] and loss causation [proximate cause]." Quarles Response at 10-11 (citing McGonigle v. Combs, 968 F.2d 810, 821 (9th Cir. 1992)). Although Arizona courts will consider federal courts' interpretation of the federal securities law when interpreting the Arizona Securities Act, the courts will not defer to federal securities case law when doing so fails to "advance the Arizona policy of protecting the public from unscrupulous investment promoters." Siporin v. Carrington, 200 Ariz. 97, 103, 23 P.3d 92, 98 (Ct. App. 2001); see also Eastern Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n, 206 Ariz. 399, 411, 79 P.3d 86, 98 (Ct. App. 2003) (finding federal case law "too restrictive to guard the public interest as directed by our state legislature").

More importantly, however, Quarles' argument is undermined by Rose v. Dobras, 128 Ariz. 209, 214, 624 P.2d 887, 892 (Ct. App. 1981), which held that "reliance upon a misrepresentation is not an element of this antifraud provision of our securities laws." See also Trimble v. Am. Sav. Life Ins. Co., 152 Ariz. 548, 552, 733 P.2d 1131, 1135 (Ct. App. 1986) (holding that reliance is not an element of § 44-1991); Aaron v. Fromkin, 196 Ariz. 224, 227, 994 P.2d 1039, 1042 (Ct. App. 2000) (noting that the Arizona legislature "made the task of proving securities fraud much simpler than proving common-law fraud"). Quarles' reliance on Grand I, 214 Ariz. at 24, 147 P.3d at 778, is misplaced. The language quoted by Quarles, see Quarles Response at 11, is taken out of context from a background discussion explaining loss causation under federal statutory and case law. Reliance under the Arizona Securities Act was not an issue.

We conclude that reliance is not an element of a claim under A.R.S. § 44-1991(A)(1) or (3) and therefore is not an impediment to the predominance requirement.

### 2. Individual Issues

Defendants next argue that because the class members invested at different times, for different periods, with different offerings, based on different knowledge, individualized evidence will predominate common evidence making class certification inappropriate. They contend that because plaintiffs' claims are based on misrepresentations or omissions in the POMs or other offering documents, variations in those documents are relevant.

Liability under A.R.S. § 44-1991(A)(1) and (3), however, is not restricted to isolated misrepresentations or omissions. It may also be predicated on a "scheme" or "practice or course of business which operates . . . as a fraud or deceit." Courts have generally found that actions for securities fraud are best maintained as class actions. See, e.g., Amchem Prods., Inc., 521 U.S. at 625, 117 S. Ct. at 2250 (stating that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud").

We reject Quarles' argument that plaintiffs' "scheme" allegations under § 44-1991(A)(1) and (3) fail because they are based on the same misrepresentations and omissions that would support a claim under § 44-1991(A)(2). Here, the alleged "scheme" encompasses not only Quarles' alleged misrepresentations and omissions, but also its ongoing participation in the scheme and resultant illegal securities sales, notwithstanding its knowledge that RB was operating illegally. Quarles is alleged to have supplied interim disclosure documents that helped RB continue to sell unregistered securities to new investors. It continued to explore ways to restructure RB's fundraising without disclosure of past violations in order to prolong RB's financial viability, and it failed to withdraw as counsel despite its professional obligation to do so. Each of these alleged actions comprises and facilitated the fraudulent scheme.

The Ninth Circuit has adopted a class certification standard that favors class treatment of fraud claims stemming from a "common course of conduct." Blackie v. Barrack, 524 F.2d 891, 902 (9th Cir. 1975). "Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach

- 11 -

1  that the class is united by a common interest in determining whether a defendant's course of
2  conduct is in its broad outlines actionable, which is not defeated by slight differences in class
3  members' positions." Id. In Blackie, the court concluded that common questions of law and
4  fact related to misrepresentations and omissions in financial reports during the class period
5  predominated over individual discrepancies between class members' individual reliance, loss
6  causation, or damages. Id. at 905-06. The court held that "class members may well be united
7  in establishing liability for fraudulently creating an illusion of prosperity and false
8  expectations." Id. at 904 n.19.

9  In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litigation, 140 F.R.D. 425 (D. Ariz.
10 1992), the court found that where the gravamen of the alleged fraud is not limited to specific
11 misrepresentations, but is instead comprised of a "whole roster of deception designed to
12 contrive a false image of [the defrauding company]," the "exact wording of the oral
13 misrepresentations . . . is not the predominant issue. It is the underlying scheme which
14 demands attention. Each plaintiff is similarly situated with respect to it, and it would be folly
15 to force each bond purchaser to prove the nucleus of the alleged fraud again and again." Id.
16 at 431. Where "the complaint alleges a common course of conduct over the entire period,
17 directed against all investors, generally relied upon, and violating common statutory
18 provisions, it sufficiently appears that the questions common to all investors will be relatively
19 substantial." See Harris v. Palm Springs Alpine Estates, 329 F.2d 909, 914 (9th Cir. 1964).

20 Defendants argue that even if this is a "scheme" case under § 44-1991(A)(1) or (3), the
21 scheme must have resulted in material deception, and therefore plaintiffs must show that the
22 defendant induced or participated in the specific purchase to be liable, and that those issues
23 vary across the class. They argue that someone who did not read a POM, or never received
24 a POM, cannot have been "induced" to buy securities by the POM. According to defendants,
25 some of the named plaintiffs and proposed class members have testified that they had never
26 heard of Greenberg or Quarles, let alone understood their role in the alleged scheme.
27 Defendants suggest that an investor's knowledge at the time of an investment decision is
28 central to determining whether that investor was "defrauded" or subject to a "fraud" under

1 either A.R.S. § 44-1991(A)(1) or (A)(3). We disagree.

2 "[I]t is not necessary to show that the statement or omission was material to this
3 particular buyer." Aaron, 196 Ariz. at 227, 994 P.2d at 1042; Trimble, 152 Ariz. at 553, 733
4 P.3d at1136 (holding that "there is no need to investigate whether an omission or
5 misstatement was actually significant to a particular buyer"). Similarly, the Arizona
6 Securities Act does not require investors to show that they acted with due diligence. Trimble,
7 152 Ariz. At 553, 733 P.2d at 1136. Instead, the statute imposes on defendants "an
8 affirmative duty not to mislead potential investors." Id.

9 We conclude that common questions of both law and fact predominate over questions
10 affecting only individual members. Plaintiffs' primary liability claims under the Arizona
11 Securities Act are capable of proof through common evidence of (1) the existence and
12 operation of the underlying Ponzi scheme; (2) defendants' knowledge of the illegality and
13 insolvency that the scheme concealed; (3) defendants' active participation in the scheme by,
14 for example, authoring offering documents that omitted disclosure of the facts that made the
15 scheme possible; (4) defendants' failure to withdraw their offering documents and end their
16 representation; and (5) defendants' continued assistance in allowing their professional
17 credibility to be used to perpetrate the scheme. Related legal questions posed by plaintiffs'
18 statutory claims are also appropriately resolved on a classwide basis. Plaintiffs' evidence of
19 defendants' knowledge of and participation in the scheme is not unique to any particular class
20 member. Thus, we conclude that plaintiffs have satisfied the predominance test.

21 We also conclude that plaintiffs have demonstrated superiority under Rule 23(b)(3).
22 Superiority is demonstrated where "classwide litigation of common issues will reduce
23 litigation costs and promote greater efficiency." Zinser, 253 F.3d at 1190. The prosecution
24 of hundreds of individual investor lawsuits would not be a more preferable or more efficient
25 method of resolving their claims. There is no advantage to be gained in requiring investors
26 to pursue their claims individually, rather than on a classwide basis.

27 We conclude that plaintiffs have satisfied their burden of showing that common
28 questions predominate the litigation and that a class action is the superior method of pursuing

plaintiffs' claims.

### F. Class Period

The joint motion for class certification defines both the ML Plaintiffs class period and the RB Plaintiffs class period as running from May 16, 2006 through June 3, 2008. It is obvious, however, that Quarles cannot be liable for its alleged participation in the RB fraudulent scheme before it began its representation of RB sometime in February 2007. Thus, the class period with respect to the RB claims against Quarles must be no broader than the period of Quarles' representation of RB. The specific date of Quarles' alleged involvement, and therefore the start date of the class period, will be determined based on subsequent briefing or stipulation by the parties.

## IV. Conclusion

**IT IS ORDERED GRANTING** plaintiffs' motion for class certification (doc. 256). Specifically, it is ordered certifying the following classes:

The ML Investor Class consisting of:

All persons who purchased investments sold by Mortgages, Ltd. (or the limited liability companies it managed) during the period from May 16, 2006 through June 3, 2008.

The RB Investor Class consisting of:

All persons who purchased investments sold by Radical Bunny LLC during the period from February 2007 (the specific date to be determined) through June 3, 2008.

Pursuant to Rule 23(c)(1)(B) and Rule 23(g), Fed. R. Civ. P., **IT IS FURTHER ORDERED** that the law firm of Tiffany & Bosco, P.A. is appointed class counsel for the ML Investor Class, and Bonnett, Fairbourn, Friedman & Balint, P.C. is appointed class counsel for the RB Investor Class.

Plaintiffs shall file with the court a proposed form of notice in accordance with Rule 23(c)(2)(B) within 14 days of the entry of this order.

DATED this 19th day of March, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge